20 CV 9784

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SAMUEL FESTINGER,

                    Plaintiff,

      -against-

SNITOW KAMINETSKY ROSNER & SNITOW, LLP;
FRANKLYN H. SNITOW; ELLIOT J. ROSNER;
JUSTICE RACHEL A. ADAMS; CHARNIE
ROSENBAUM; JOHN DOE #1: through #10,  and
JANE  DOE #1 through #10,
                    Defendants.

Civil Action No. CV

COMPLAINT
JURY TRIAL DEMANDED

Plaintiff, SAMUEL FESTINGER complaining of the defendants, alleges as follows:

## NATURE OF THE CASE

1.    The Defendant lawyers, Franklyn Snitow and Elliot J. Rosner, and their client, Charnie Rosenbaum, conspired to file and prosecute a multi-year fraudulent matrimonial lawsuit, against SAMUEL FESTINGER with the primary purpose, to be utilized, as a shield to protect the individual perpetrators who knowingly devised and executed a scheme to defraud businesses, individuals, government and financial institution, out of millions of dollars.

2.    Charnie Rosenbaum has defrauded various taxing authorities the IRS, N.Y. S. Sale Tax, creditors, contractors, various businesses out of millions of dollars. (**Exhibit A**).

3.    The lawyers representing Charnie Rosenbaum knew that the supposed facts they alleged in the lawsuit was/is a fraud it was brought by a fraudster with a history of fraudulent scams, and it was based on an implausible story.

4.      In furtherance of their common illegal aims Franklyn Snitow, Elliot J. Rosner, repeatedly portrayed Rosenbaum as a destitute, penniless plaintiff. Even in the bankruptcy court, the enterprise of Rosenbaum, Snitow and Rosner have again falsely portrayed Rosenbaum as desperate, for the blatantly obvious purpose to distort the court's view from the racketeering scheme being perpetrated by the very people pretending to be offended

## JURISDICTION AND VENUE

5.      This is an action brought pursuant to the Racketeering Influenced Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq*. and pursuant to 42 U.S.C. §§ 1983, 1985, 1986 and 1988; and pursuant to the Fourteenth Amendments to the United States Constitution. Jurisdiction is founded upon 28 U.S. C. §§ 1331, 1343(1-4), and 2202. This court has supplemental jurisdiction over Plaintiffs state law claims under 28 U.S.C. 1367(a)

6.      The Defendants are subject to personal jurisdiction in this State pursuant to 18 U.S.C. § 1965(d), and are also subject to personal jurisdiction in that they either reside in this State, engage in the transaction of business in this State and/or engaged in substantial activities within the State and/or committed a tortious act within this State. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 insofar as this is an action arising under the laws of the United States.

7.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(1) and (2) and (d) in that a substantial part of the events or omissions giving rise to the claims made in this action occurred in this District. In addition, pursuant to 18 U.S.C. § 1965(a), venue is proper in this district as one of the Defendants resides in this district, one of the Defendants acts as an agent for the other Defendants in this district, and all of the

Defendants transact their affairs in this District.

## THE PARTIES

8.    Plaintiff, SAMUEL FESTINGER, residing at 3721 18th Avenue, Brooklyn, NY 11218

9.    Defendant FRANKLYN H. SNITOW, having an address at  805 Third Avenue, 12th Floor New York, New York 10022

10.   Defendant ELLIOT J. ROSNER, having an address at   805 Third Avenue, 12th Floor New York, New York 10022

11.   Defendant SNITOW KAMINETSKY ROSNER & SNITOW, LLP, upon information and belief is an unincorporated entity doing business in the State of New York with its principal place of business located at 805 Third Avenue, 12th Floor New York, New York 10022

12.   Defendant JUSTICE RACHEL A. ADAMS is a person over the age of 18 years and maintains a working address at 360 Adams St., Brooklyn, NY 11201

13.   Defendant CHARNIE ROSENBAUM, residing at 1150 East Fourth Street, Brooklyn, NY 11230

14.   The Defendants JOHN DOE #1 through #10 are fictitious names representing persons of both gender, whose real names and identities are currently unknown to Plaintiff, and who have conducted and participated in, and conspired, confederated and agreed with the Defendants to conduct and participate in the affairs of the Enterprise through a pattern of racketeering activities in violation of 18 U.S.C. § 1962 (c) and (d), as more fully described

below and to injure Plaintiff in his business and property by reason thereof. The Defendants are individuals capable of holding a legal or beneficial interest in property and are therefore "persons" within the meaning of 18 U.S.C. § 1961(3).

15.     Defendant XYZ Corporations #1 through # 10 are corporations, partnerships and other business entities or organizations whose real names and identities are currently unknown to Plaintiff, and who have conducted and participated in, and conspired, confederated and agreed with the Defendants to conduct and participate in the affairs of the Enterprise through a pattern of racketeering activities in violation of 18 U.S.C. § 1962 (c) and (d), as more fully described below and to injure Plaintiff in his business and property by reason thereof. The Defendants are entities capable of holding a legal or beneficial interest in property and are therefore "persons" within the meaning of 18 U.S.C. § 1961(3).

**THE DEFENDANTS CONDUCTED A RICO ENTERPRISE THROUGH A PATTERNOF RACKETEERING ACTIVITY IN FURTHERANCE OF THEIR CONSPIRACY TO VIOLATE 18 U.S.C. § 1962(c). IN VIOLATION OF 18 U.S.C. § 1962(d)**

16.     SNITOW KAMINETSKY ROSNER & SNITOW, LLP, Franklyn Snitow, Elliot J. Rosner, and Charnie Rosenbaum defendants together formed a RICO enterprise for the purposes of 18 U.S.C. § 1961(4), including, without limitation, dirty money obtained through illegal enterprises is being washed through legitimate enterprises to obscure its shady roots. Of using litigation and the judicial system to instigate unlawful arrears and force me to give up my wealth.

17.     Each Defendant has conducted or participated, directly or indirectly, in the management and operation of the affairs of the Enterprise through a "pattern of racketeering activity" through the commission of multiple acts of racketeering, including acts of "mail fraud" in

violation of 18 U.S.C, 1341, "wire fraud" in violation of 18 U.S.C. § 1343, extortion and conspiracy to commit and attempted extortion in violation of 18 U.S.C. §1951.

18.     At all relevant times, SNITOW KAMINETSKY ROSNER & SNITOW, LLP, FRANKLYN SNITOW, ELLIOT J. ROSNER, CHARNIE ROSENBAUM, JOHN DOE #1: through #10, and JANE DOE #1 through # 10, (collectively referred to herein as the "Defendants" or "RICO Defendants") were associated in fact together for the common purpose of engaging in the course of conduct described herein. Defendants formed and conducted an association-in-fact which operated as a RICO "enterprise" (herein after the "Enterprise") within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c) & (d) and which was engaged in, and whose activities affected interstate and foreign commerce. The individuals and entities that associated together to form this association-in-fact enterprise functioned as a continuing unit.

19.     At all relevant times, and from at least January of 2012 to the present time, the Defendants were associated with the Enterprise and conducted or participated, directly or indirectly, in the management and operation of the affairs of the Enterprise through a "pattern of racketeering activity" within the meaning of 18. U.S.C. § 1961(5). The acts constituting the "pattern of racketeering activity" were horizontally related to each other and were connected in their nature and purpose to each other and to other acts of racketeering by virtue of common participants, their relationship to the same Enterprise, a common victim (the Plaintiff), a common method of commission, and the common purpose and common result of defrauding and causing injury to the Plaintiff. The acts constituting the pattern of racketeering activity were vertically related to the Enterprise. The pattern of racketeering

activity engaged in and conducted by the Defendants has been continuous from at least January of 2012 to date.

20.    Moreover, the pattern of racketeering activity committed by the Defendants is open-ended, in that it has no predetermined end date, and is continuous in that the scheme is and was the Defendants' regular way of operating and conducting themselves and/or their ongoing business and thus there exists the threat of continuing long-term racketeering activity.

21.    Each Defendant has conducted or participated, directly or indirectly, in the management and operation of the affairs of the Enterprise through a "pattern of racketeering activity" through the commission of multiple acts of racketeering, including acts of "mail fraud" in violation of 18 U.S.C, 1341, "wire fraud" in violation of 18 U.S.C. § 1343, extortion and conspiracy to commit and attempted extortion in violation of 18 U.S.C. §1951.

22.    At all relevant times, Defendants were associated with the enterprise and agreed and conspired to violate 18. U.S.C. § 1962(c), that is, the Defendants conspired, confederated and agreed together to conduct and participate, directly and indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity, all in violation of 18 U.S.C. § 1962(d).

23.    Plaintiff has suffered substantial injury to his business and property by reason of, and as the result of, the Defendants' commission of the enumerated racketeering acts in furtherance of the Defendants' conspiracy to violate of 18 U.S.C. § 1962(c), all in violation of 18 U.S.C. § 1962(d) and § 1964(c).

**THE DEFENDANTS' SCHEME TO DEFRAUD THE PLAINTIFF AND TO
OBTAIN HIS PROPERTY THROUGH EXTORTION**

24.     The RICO Defendants, acting together in concert and conspiracy, have participated in a continuously running scheme, dating from at least 2012, and lasting to present time, in which, acting jointly and severally, they have, among other acts, made fraudulent property conveyances, arranged for and obtained fraudulent mortgages, committed bank fraud, insurance fraud, bankruptcy fraud, forgery and extortion in order to achieve and conceal their scheme to defraud.

25.     These RICO Defendants have made a career of targeting persons, such as the Plaintiff, which they assess to be potentially vulnerable victims

**FACTS**

26.     CHARNIE ROSENBAUM has transacted business worth tens of millions of dollars during the years 2007-2018 as her NYS sales tax summed up to millions. Attached as **Exhibit B** is a Consolidated Statement of Tax Liabilities from the NYSDTF dated September 24, 2020 stating a ROC [Rack Oil Corporation] tax liability in excess of $3.2 million.

27.     Rack Oil Corporation is a wholly owned corporation, owned by Defendant, Charnie Rosenbaum. **Exhibit C**.

28.     During a NYS Accountability fraud and allegation audit in 2012, Defendant Rosenbaum became extremely concerned that she may become a target in the investigation.

29.     Rosenbaum time after time told me that she assumes that the attorney named Franklyn Snitow will help her to escape from serious trouble.

30.   Rosenbaum repeatedly stated (including, without limitation during year 2012)  that the attorney named Franklyn Snitow has been advising her  in her business dealing, and that she spent many days and many hours in his office getting guidance on her business transactions.

31.   Snitow aided and abetted Rosenbaum to hide her assets and to form alter ego entities with which to hide assets.

32.   On January 29th, 2013, Franklyn Snitow and Elliot Rosner represented Rosenbaum to sue me for divorce.

33.   Throughout the divorce proceedings, Snitow and Rosner advised and guided Rosenbaum to fraudulently form and file Net Worth Statements which depicted Rosenbaum as barely putting bread on the table. All the while, this enterprise of Snitow, Rosner and Rosenbaum knew full well that she hid millions of dollars. Snitow knowingly made dozens upon dozens of grossly misleading statements to the court about Rosenbaum's financial position. This enterprise was engaged in getting me arrested on several occasions for the purpose of applying pressure to get their goal, which is to divest me of my assets. The Rosenbaum, Snitow and Rosner enterprise continues up until today. That's a period of almost ten (10) years.

34.   As the court in *Mayfield v. Asta Funding, Inc*. (S.D.N.Y., 2015) refined

**In part** ("Given this precedent, the Court declines to fashion a judge-made exception to RICO liability for litigation activities. "RICO is to be read broadly" and should be "liberally construed to effectuate its remedial purposes." Sedima, 473 U.S. at 497-98 (citation and internal quotation marks omitted). Courts are not permitted to "carve out" exceptions to RICO where a "fraudulent scheme falls within the scope of the federal mail fraud statute and other elements of RICO are established." Eisen,

974 F.2d at 254. Plaintiffs have adequately alleged mail and wire fraud as predicate acts supporting a RICO claim, and thus this prong of Defendants' motion to dismiss is denied.")

35.   In 2012, Snitow guided Rosenbaum in defrauding Chase Manhattan Bank of a Three Hundred Thousand Dollar ($300,000) Home Equity Line of Credit ("HELOC"). Snitow and Rosner instructed Rosenbaum not to pay the HELOC. Then, in 2014, Snitow guided her to misrepresent her financial standing then negotiated with Chase Manhattan Bank so that Rosenbaum pay approximately Seven Cents ($0.07) on the Dollar to close the HELOC matter (**Exhibits E and E**), thereby defrauding Chase Manhattan Bank of Two Hundred and Seventy-Eight Thousand Dollars ($278,000).

36.   Snitow and Rosner stated in March of 2019 that Rosenbaum has not paid her legal bill since 2013 (Exhibit D-3). In June of 2020, Snitow and Rosner stated that the bill is just short of Five Hundred Thousand Dollars ($500,000) (**Exhibit F**). This is proof positive that Snitow and Rosner had become invested in Rosenbaum and in her fraudulent enterprise and real estate properties.

37.   Essentially, the divorce proceeding was orchestrated by Snitow, Rosner and Rosenbaum as a cover up of flagrant fraudulent activities and a means to further various frauds and be able to keep the millions of defrauded proceeds.

38.   During the years 2006 through 2010, Rosenbaum, among other things, drained the funds of Rack Oil Corporation ("RAC") up until it was no longer reasonably possible to pay for the expensive mortgage construction and furnishings of the marital residence as well as lavish lifestyle. Rosenbaum's draining of RAC's liquidity resulted in huge tax liabilities. $3.2 Million Dollars to NYS Taxing Authority (**Exhibit G**) as well as a backlog of

payments due RAC's vendors over $1.3 Million Dollars.

39.   The above liabilities as well as other such liabilities were repeatedly brought to the attention of The Honorable Rachel A. Adams in the Supreme Court of New York, County of Kings. However, Rosenbaum's attorneys, in the matrimonial lawsuit Defenses herein Franklyn Snitow and Elliot Rosner, willfully and maliciously bombarded the record with false statements about Rosenbaum's inability to put bread on the table for our starving children. Using misrepresentations, Rosenbaum's attorneys, Franklyn Snitow and Elliot Rosner, persuaded Judge Adams to view Rosenbaum as destitute and as simply incapable of paying for anything.

40.   Franklyn Snitow and Elliot Rosner also prevented the court from analyzing various matters that would have divulged Rosenbaum's various frauds. Honorable Rachel A. Adams ignored my many pleas to be heard in general and specifically ignored my many presentations demonstrating Rosenbaum's financial perjuries. Judge Adams thereby deprived my due process on many occasions. Defendants did so for the purpose of furthering their fraudulent scheme, to be utilized as a shield to protect the perpetrators of the fraud on creditors and interested parties.

41.   The goal of the defendants' scheme was and is that the defendants acquire something that the victims must give up whether in the form of tangible assets such as real estate property or Defendants would induce the victims to render services for which they had no intention to pay.

42.   Charnie Rosenbaum and Rosenbaum's attorneys, Franklyn Snitow and Elliot Rosner

willfully and maliciously conned Judge Adams to accept the gross misrepresentations and allowed Rosenbaum to dodge all financial responsibilities. The result being that back taxes, vendor debts and many more obligations were, inter alia, shifted to me.

43. The fraud upon the court that Frank Snitow and Elliot Rosner flooded the state court over an eight (8) year period, then again overflowed to The Honorable Nancy Hershey Lord in the United States Bankruptcy Court, Eastern District of New York, in September and October 2020 (Case No. 20-43271-nhl, Adversary Proceeding No. 20-01103-nhl). There in bankruptcy court, Elliot Rosner continued the fraud upon the court on behalf of Rosenbaum (**Exhibit H**). Snitow and Rosner in collusion with Rosenbaum intended to skew the court's view of the true facts of the cases.

44. Defendant Rosenbaum was employed by the Children's Center for Early Learning ("Children's Center") during the years 2001 through 2014. In that period, Rosenbaum earned, saved and accumulated no less than One Million Dollars ($1,000,000).

45. Rosenbaum's position at the Children's Center terminated suddenly in 2014 due to the audit report by the New York State Office of the State Comptroller, Division of State Government Accountability ("NYS Accountability"). NYS Accountability found that gross reimbursement fraud had taken place (**Exhibit I**). The person in charge of this billing was the defendant, Charnie Rosenbaum. She was Reimbursement Supervisor (**Exhibit J**). For her fraudulent billing, Rosenbaum was very well rewarded. Rosenbaum was successful in generating millions of dollars of wrongfully billed reimbursements.

46. Rosenbaum also owned and operated a laser hair removal clinic known as "Smooth N Silky

LLC" from the year 2007 up until today (**Exhibit K**).

47.    As payment for Rosenbaum's laser services, clients paid her in cash and in checks. Rosenbaum cashed most of the checks at local check cashing services so as to avoid paying taxes. These funds were not deposited into any of Rosenbaum's known bank accounts and was not disclosed on any of her Net Worth Statements.

48.    Laser hair removal is a very lucrative business, which Rosenbaum operated afternoons, evenings and weekends. This generated upwards of Sixty Thousand Dollars ($60,000) annually. Almost all revenue was unreported to the IRS.

49.    Yet, upon filing for divorce on January 29th, 2013, Rosenbaum showed no savings, nor investments on her Net Worth Statement (**Exhibit L**). This was deceptively done over the course of many years with the clear intentions to mislead the IRS and others. And in Rosenbaum's own words, she states "When I get cash I never ever deposit it or I would have to explain it some day." (**Exhibit M**).

50.    Also important is that Rosenbaum has off-shore accounts in Israel and elsewhere. Rosenbaum had for sixteen (16) years lived in Israel, up until 2000, where she maintained bank accounts and investments.

**DEFENDANTS WILLFULLY VIOLATED THE AUTOMATIC BANKRUPTCY STAY AND THE FEDERAL STAY CREATED BY THE FILING OF THE NOTICE OF REMOVAL.**

51.    The instant Federal action is, among other things, for declaratory judgment for prospective relief, and declaratory relief declaring the proceedings in the state court relevant to this

action a nullity, and that Plaintiff herein was being deprived of his constitutional rights, abuse of process and violation of due process.

## RELEVANT FACTS

52. On September 3, 2020,[1] Boaz Gazit (the "Petitioning Creditor") filed an involuntary petition under Chapter 11 of the Bankruptcy Code against Charnie Rosenbaum ("Rosenbaum") and Samuel Festinger ("Festinger"). (**Exhibits N and O**).

53. On September 9, 2020, Samuel Festinger ("Festinger") filed a Notice of Removal (the "Notice of Removal") (Case 1-20-01103-nhl ECF No. 1) with respect to the matrimonial action pending in the Supreme Court of the State of New York, County of Kings, entitled Charnie Rosenbaum v. Samuel Festinger (Index No. 50373/13) (the "Matrimonial Action").

54. On September 9, 2020 a true copy of the aforementioned Notice of Removal was served and noticed electronically, according to covid 19 regulations, upon The Supreme Court of the State of New York, County of Kings, entitled Charnie Rosenbaum v. Samuel Festinger (Index No. 50373/13) (the "Matrimonial Action").

55. On September 9, 2020 a true copy of the aforementioned Notice of Removal was served ana noticed, upon the office of Defendants SNITOW KAMINETSKY ROSNER & SNITOW, LLP.

---

[1] As per the copy of the involuntary petition dated September 3, 2020, the Petitioner initially attempted to file the petition through the Dropbox in US district court on September 3, 2020 Petitioner indeed obtained a STAMPED COPY (BY THE CLERK) and served same on SAMUEL FESTINGER, ("Festinger") on September 3, 2020 but because the US district court was closed all that time, Petitioner refiled on September 9, 2020.

56.   On September 9, 2020, aforementioned Proceeding was removed to the aforesaid Bankruptcy Court under the Federal Bankruptcy Procedures & Rules, by duly filing a Notice of Removal of the said Proceeding with the Bankruptcy Court in Eastern District of New York.

57.   In accordance with the aforesaid removal, the New York State Supreme Court, County of Kings, lost subject matter jurisdiction over any and all matters contained in the said removed Proceeding.

58.   On September 15, 2020, Rosenbaum filed a motion to remand the Matrimonial Action (the "Motion for Remand"), together with an application to shorten notice (ECF Nos. 5, 6).

59.   On September 10, 2020. The Defendants, RANKLYN H. SNITOW, ELLIOT J. ROSNER, acting on behalf of Defendant SNITOW KAMINETSKY ROSNER & SNITOW, LLP, and acting on behalf of their client, CHARNIE ROSENBAUM, were acting without and in absence of any and all subject matter jurisdiction, despite the defendants herein and parties therein were legally stayed from proceeding in any manner in the removed Proceeding that the case had been removed the Federal jurisdiction, and despite The Automatic Bankruptcy Stay, the defendants herein and parties therein illegally appeared and proceeded before JUSTICE RACHEL A. ADAMS TELEPHONICALLY.

60.   At the September 10, 2020. Hearing, MR. ROSNER falsely state that the removed Proceeding was not pending in the Bankruptcy Court, while absurdly stated:
      in **pertinent part** ( hearing Tr. p4 at 8).

"You can't file a removal more than 30 days after the service of the state court action; we're seven years later."

61.   MR. ROSNER further stated:

in <u>pertinent part</u> (hearing Tr. p4. at 22).

"It's a joke and it should be treated as such and this should have zero impact on what is going on this morning."

62.   At said hearing: JUSTICE RACHEL A. ADAMS in furtherance of the aforesaid conspiracy, did again issue further illegal orders in the removed Proceeding, stated: in <u>pertinent part</u> (hearing Tr. p. 12-13 at line 24).

"With regard to that part of the finding that imposed a criminal contempt incarceration for 60 days, that order, on the Court's own motion, is recalled and amended"

63.   At said hearing :JUSTICE RACHEL A. ADAMS further stated:

in <u>pertinent part</u> (hearing Tr. p. 13. at line 5)

"However, as previously discussed on the record, the Court does not have any credible documentation to support the representation made on the record with regard to a bankruptcy and the impact of that bankruptcy on this proceeding."

64.   Thereafter On September 17, 2020 in furtherance of the aforesaid conspiracy, did again issue further illegal orders in the removed Proceeding, JUSTICE RACHEL A. ADAMS issued two orders and separate them that one order was identified and labeled as civil contempt and therefore stayed same pending resolution of the bankruptcy proceeding,

65.   However, the second Order she identified and labeled as a criminal contempt, and therefore, she Commanded the Sheriff to commit Samuel Festinger To The Manhattan Detention Complex.

66.   The aforesaid September 17, 2020 illegal Proceeding and the incorrectly ruling by JUSTICE RACHEL A. ADAMS , not only Violated The Automatic Bankruptcy Stay And The Federal Stay Created By The Filing Of The Notice Of Removal, but Justice Rachel A. Adams ignored the well settled presumption in favor of finding civil contempt

as opposed to criminal contempt .... as the  United States Court Of Appeals For The Second Circuit, clarified, ("Moreover, there is a "presumption in favor of finding civil as opposed to criminal contempt where there is some doubt as to the nature of the contempt." United States v. Wendy, 575 F.2d 1025, 1029 n.13 (2d Cir. 1978).").

67.   See also The United State Supreme Court  in *Int'l Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994) the Court distinguish between civil and criminal contempt "Thus, a contempt sanction is considered civil if it "is remedial, and for the benefit of the complainant. But if it is for criminal contempt the sentence is punitive, to vindicate the authority of the court." Ibid.

## FIRST CAUSE OF ACTION

### (Civil RICO, 28 U.S.C. § 1962(c) & (d))

68.   Against the defendants Snitow Kaminetsky Rosner & Snitow, LLP; Franklyn H. Snitow; Elliot J. Rosner; Charnie Rosenbaum.

69.   Plaintiffs hereby restate, reallege, and incorporate by reference all foregoing paragraphs. Are natural persons, and as such are "persons" within the meaning of 18 U.S.C. § 1961(3)..

70.   Defendants are natural persons and corporate entities, and as such are "persons" within the meaning of 18 U.S.C. § 1961(3).

### The Enterprise

71.   On information and belief, the Snitow Kaminetsky Rosner & Snitow, LLP; Franklyn H. Snitow; Elliot J. Rosner  and Charnie Rosenbaum, Sapphire Investment Group LLC, NJ, ABCR Investments LLC, NJ, and Property Solutions NY LLC, NY Defendants, comprise two distinct groups of persons that together form an enterprise within the meaning of 18

U.S.C. § 1961(4). Each and every defendant is employed by or associated with the enterprise.

72.   On information and belief, each group of defendants, the Snitow Kaminetsky Rosner & Snitow, LLP; Franklyn H. Snitow; Elliot J. Rosner and Charnie Rosenbaum, Sapphire Investment Group LLC, ABCR Investments LLC, and Property Solutions NY LLC Defendants, also qualify as separate and distinct enterprises within the meaning of 18 U.S.C. § 1961 (4). Each and every Snitow Kaminetsky Rosner & Snitow, LLP; Franklyn H. Snitow; Elliot J. Rosner Defendant is employed, by or associated with the Charnie Rosenbaum Sapphire Investment Group LLC, NJ, ABCR Investments LLC, NJ,  and Property Solutions NY LLC, NY, enterprise associated with Snitow Kaminetsky Rosner & Snitow, LLP; Franklyn H. Snitow; Elliot J. Rosner.

73.   On information and belief, the individuals and entities that constitute Snitow Kaminetsky Rosner & Snitow, LLP; Franklyn H. Snitow; Elliot J. Rosner and Charnie Rosenbaum, Sapphire Investment Group LLC, ABCR Investments LLC and Property Solutions NY LLC Defendants, Defendants taken together are an association-in-fact within the meaning of 18 U.S.C. § 1961(4).

74.   The Enterprise has for many, but no fewer than four, years been engaged in, and continues to be engaged in, activities that affect interstate commerce. Defendants' unlawful Enterprise in violation of RICO has been and remains longstanding, continuous and open ended.

**Pattern of Racketeering Activity - Mail and Wire Fraud**

75.     Defendants and the other members of the enterprise, having devised or intending to

devise the scheme or artifice to defaud, and/or for obtaining money or property by means

of false of fraudulent pretenses, representations, or promises, for the purpose of executing

such scheme or artifice or attempting to do so, placed in the United States Postal Service

post office(s) mail matter, summons and complaint, motions, affirmations to be sent or

delivered by the United States Postal Service.

76.     On or about January 29, 2013, Defendants in New York caused the mailing, through the

United States Postal Service post office a summons and complaint to Mr. SAMUEL

FESTINGER, which complaint contained the false assertions detailed elsewhere in this

complaint.

77.     On or about February 4, 2013, Defendants in New York caused the mailing, through the

United States Postal Service post office Motion Contempt and other relief.

78.     On or about July 24, 2013, Defendants in New York caused the mailing, through the

United States Postal Service post office an ORDER TO SHOW CAUSE to Mr.

SAMUEL FESTINGER, which complaint contained the false assertions detailed

elsewhere in this complaint.

**PRAYER FOR RELIEF**

79.     Plaintiff prays that this Honorable Court will grant judgment   against defendants, jointly

and severally, for declaratory relief declaring that the proceedings, orders, judgments, are

null and void, and violated Plaintiffs constitutional and common New York rights and for

monetary and compensatory damages; and any legal fees; and any other relief this Honorable court deems just and proper.

80.   WHEREFORE. Plaintiffs request the following relief jointly and severally as against aforementioned defendants: Actual and/or compensatory damages against all Defendants in an amount to be proven at trial.

81.   Plaintiff herein was directly harmed, by his person and property, including with emotional trauma, caused by the defendants herein through and by their aforementioned acts.

## CAUSES OF ACTION
### Against JUSTICE RACHEL A. ADAMS

82.   Plaintiffs repeat and reallege each and every allegation as more fully set forth hereinbefore as if fully set forth hereinafter.

83.   As a direct result of the acts, omissions, and policies of the defendants, the Plaintiffs were deprived of their rights under the Fourteenth Amendment of the United States Constitution and 42 U.S.C. §1983.

84.   As a direct result of the acts, omissions, and policies of the defendants, the Plaintiffs were deprived of their rights under the Fourteenth Amendment of the United States Constitution and 42 U.S.C. §1986.

85.   As a direct result of the acts, omissions, and policies of the defendants, the Plaintiff was deprived of their rights under the Fourth Amendment of the United States Constitution and 42 U.S.C. §1983.

86.   As a direct result of the acts, omissions, and policies of the defendants, the Plaintiff was deprived of their rights under the Fourth Amendment of the United States Constitution and 42 U.S.C. §1985.

87.   As a direct result of the acts, omissions, and policies of the defendants, the Plaintiff was deprived of his rights under the Fourteenth Amendment of the United States Constitution and under 42 U.S.C. §1988.

88.   As a direct result of the acts, omissions, policies and abuse of process by the defendants, the Plaintiff was deprived of his rights under New York common law.

89.   As a direct result of the acts, omissions, policies and injurious falsehood by the defendants, the Plaintiff was deprived of rights under New York common law

90.   As a direct result of the acts, omissions, policies and civil conspiracy by the defendants, the Plaintiff was deprived of their rights under New York common law.

91.   As a direct result of the acts, omissions, policies by the defendants, the Plaintiff was caused intentional infliction of emotional distress.

92.   As a direct result of the acts, omissions, policies by the defendants, the Plaintiff was caused negligent infliction of emotional distress.

### PRAYER FOR RELIEF

93.   **WHEREFORE,** Plaintiff prays that this Honorable Court will grant judgment against defendants, jointly and severally, for declaratory relief declaring that the proceedings, orders, judgments, generated ordered throughout The Automatic Bankruptcy Stay And The Federal Stay Created By The Filing Of The Notice Of Removal are null and void,

and violated Plaintiffs constitutional and common New York rights; award

compensatory, consequential, exemplary and punitive damages to Plaintiff in amount to

be determined at trial; Plaintiff demands trial by jury on the issues so triable; and any

other relief this Honorable court deems just and proper.

Dated: November 19, 2020

Samuel Festinger
3721 18th Avenue
Brooklyn, NY 11218
(917) 474-5910

# EXHIBIT A

 New York State Department of
**Taxation and Finance**

Date: 01/04/19

**Consolidated Statement of Tax Liabilities**

If you have any questions, please call
(518) 457-5434.

**ROSENBAUM-CHARNIE**

This is a statement of your tax liabilities, including the liability(ies) referred to in the enclosed notice. Amounts calculated to 01/04/19.

Each liability listed below is identified by an Assessment ID. Use the enclosed Payment Document to make payment on these liabilities.

Recent adjustments, credits or payments may not be included on this Statement. Also, a payment may have been applied to multiple assessments.

This Consolidated Statement summarizes your tax liabilities with New York State under this account. If you have ever used more than one taxpayer identification number for tax reporting purposes, you may owe additional New York State tax liabilities.

NOTE: To view the current balance of any unpaid tax bills, access our Web site at www.tax.ny.gov/online.

THE FOLLOWING LIABILITIES HAVE BEEN DETERMINED TO BE DUE. Although not yet subject to collection action they should be paid promptly in order to avoid the accrual of additional penalty and/or interest charges.

| Tax Type | Assessment ID | Tax Period Ended | Tax Amount Due | (+) Interest Amount Due | (+) Penalty Amount Due | (−) Assessment Payments/ Credits | (=) Current Balance Due |
|---|---|---|---|---|---|---|---|
| INCOME | L-051277593-2 | 12/31/07 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| INCOME | L-044502066-5 | 12/31/15 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| INCOME | L-046258594-4 | 12/31/16 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| SALES | L-049220736-9 | 05/31/17 | 48,412.55 | 12,291.69 | 13,555.41 | 0.00 | 74,259.65 |
| SALES | L-049220735-1 | 08/31/17 | 197,221.82 | 43,832.93 | 51,560.87 | 0.00 | 292,615.62 |
| SALES | L-049220734-2 | 11/30/17 | 350,000.00 | 59,966.78 | 79,334.13 | 0.00 | 489,300.88 |
| SALES | L-049220733-3 | 02/28/18 | 1,018,436.03 | 136,640.02 | 199,943.56 | 0.00 | 1,182,019.61 |
| SALES | L-049220732-4 | 05/31/18 | 203,165.12 | 21,103.81 | 35,962.20 | 0.00 | 260,231.13 |
| SALES | L-049220731-5 | 08/31/18 | 26,647.28 | 1,453.65 | 3,709.95 | 0.00 | 31,810.88 |
| | | | | | | TOTAL 0 | 2,800,257.77 |

Keep this statement for your records.

**EXHIBIT B**

8/24/2020

Consolidated Statement of Tax Liabilites

# Department of Taxation and Finance

Support    Contact us

Home

Help

## Consolidated Statement of Tax Liabilities

| Taxpayer ID: ▉▉▉▉▉ | Taxpayer name: RACK OIL CORP. |
|---|---|

Our records indicate you have the following unpaid tax debts:

⊛ - Select to learn more about a particular field

### Amount due - under collection

| Tax type | Assessment ID | Tax period ended | Tax amount assessed ($) | (+) Interest amount assessed ($) | (+) Penalty amount assessed ($) | (-) Assessment payments/credits ($) | (=) Current balance ($) |
|---|---|---|---|---|---|---|---|
| Petro Products Bus | L-049608761-4 | 2019-01-31 | 284.38 | 43.73 | 82.39 | 0.00 | 410.50 |
| Petro Products Bus | L-049504057-6 | 2018-12-31 | 456.65 | 74.44 | 136.86 | 0.00 | 667.95 |
| Petro Products Bus | L-049422990-2 | 2018-11-30 | 329.87 | 57.14 | 98.78 | 0.00 | 485.79 |
| Sales and Use | L-049330558-3 | 2018-11-30 | 0.00 | 635.66 | 3,406.66 | 0.00 | 4,042.32 |
| Petro Products Bus | L-049280919-8 | 2018-10-31 | 473.57 | 86.15 | 141.95 | 0.00 | 701.67 |
| Petro Products Bus | L-049211579-3 | 2018-09-30 | 485.92 | 92.52 | 145.59 | 0.00 | 724.03 |
| Sales and Use | L-048928882-4 | 2018-08-31 | 26,647.28 | 9,414.45 | 8,239.94 | 0.00 | 44,301.67 |
| Petro Products Bus | L-048760745-1 | 2018-07-31 | 116.44 | 24.35 | 34.84 | 0.00 | 175.63 |
| Corporation | L-048701557-8 | 2017-10-31 | 306.00 | 84.83 | 39.78 | 0.00 | 430.61 |
| Corporation | L-048701556-9 | 2017-10-31 | 1,206.00 | 334.45 | 156.78 | 0.00 | 1,697.23 |
| Petro Products Bus | L-048646533-3 | 2018-06-30 | 89.46 | 19.53 | 26.74 | 0.00 | 135.73 |
| Petro Products Bus | L-048597134-2 | 2018-05-31 | 225.78 | 51.34 | 67.57 | 0.00 | 344.69 |
| Petro Products Bus | L-048539176-4 | 2018-04-30 | 624.87 | 147.76 | 187.28 | 0.00 | 959.91 |
| Sales and Use | L-048492185-5 | 2018-05-31 | 203,165.12 | 84,637.75 | 64,405.30 | 0.00 | 352,208.17 |
| Petro Products Bus | L-048349886-6 | 2018-03-31 | 1,106.75 | 272.22 | 331.87 | 0.00 | 1,710.84 |
| Sales and Use | L-048066766-2 | 2018-02-28 | 1,015,436.03 | 463,015.74 | 311,641.52 | 0.00 | 1,790,093.29 |
| Corporation | L-047794966-5 | 2018-02-27 | 50.00 | 0.00 | 0.00 | 0.00 | 50.00 |
| Sales and Use | L-047554021-8 | 2017-11-30 | 350,000.00 | 176,107.68 | 107,334.13 | 0.00 | 633,441.81 |
| Sales and Use | L-047148419-2 | 2017-08-31 | 197,221.82 | 112,122.19 | 61,421.92 | 0.00 | 370,765.93 |
| Sales and Use | L-046779264-8 | 2017-05-31 | 48,412.55 | 29,435.45 | 14,523.65 | 1,434.23 | 90,937.42 |
| | | | | | | **Total:** | **3,294,285.19** |

### Amount due - not yet under collection

| Tax type | Assessment ID | Tax period ended | Tax amount assessed ($) | (+) Interest amount assessed ($) | (+) Penalty amount assessed ($) | (-) Assessment payments/credits ($) | (=) Current balance ($) |
|---|---|---|---|---|---|---|---|
| | | | | | | | 0.00 |
| | | | | | | **Total:** | **0.00** |

9/24/2020 Consolidated Statement of Tax Liabilities

## Estimated amount due - for returns not filed

| Tax type | Assessment ID | Tax period ended | Tax amount assessed ($) | (+) Interest amount assessed ($) | (+) Penalty amount assessed ($) | (-) Assessment payments/credits ($) | (=) Current balance ($) |
|---|---|---|---|---|---|---|---|
| | | | | | | | 0.00 |
| | | | | | | Total: | 0.00 |

## Amount in protest

| Tax type | Assessment ID | Tax period ended | Tax amount assessed ($) | (+) Interest amount assessed ($) | (+) Penalty amount assessed ($) | (-) Assessment payments/credits ($) | (=) Current balance ($) |
|---|---|---|---|---|---|---|---|
| | | | | | | | 0.00 |
| | | | | | | Total: | 0.00 |

## Amount in transit

| Tax type | Assessment ID | Tax period ended | Tax amount assessed ($) | (+) Interest amount assessed ($) | (+) Penalty amount assessed ($) | (-) Assessment payments/credits ($) | (=) Current balance ($) |
|---|---|---|---|---|---|---|---|
| | | | | | | | 0.00 |
| | | | | | | Total: | 0.00 |

## Web survey

Provide feedback about this online service through our Web Survey.

Print

## Instructions

**Amount due - under collection**

Liabilities listed in this section have been turned over to our collections unit. To avoid collection action and additional accruals of penalty and interest you should pay these amounts immediately. Amount due under collection no longer have appeal rights.

**Amount due - not yet under collection**

Liabilities listed in this section are not yet under collection. To avoid these liabilities from being turned over to the collections unit, and accruing additional penalty and interest, you should pay them as soon as possible.

**Estimated amount due - for returns not filed**

We have not received returns or reports for the liabilities in this section. We have estimated the amount due for these returns that have not yet been filed. The amount due will be cancelled once you complete the required return and pay the tax due, plus penalty and interest. If you pay the estimated amount due, you will still be required to file your return.

**Amount in protest**

9/24/2020                            Consolidated Statement of Tax Liabilities

The liabilities in this section are under review. You will be notified of our findings. Where applicable, additional penalty and interest will continue to accrue in accordance with New York State law.

**Amount in transit**
The liabilities in this section are scheduled to be mailed/emailed on a future date.

Accessibility   Disclaimer   Privacy   Security   Copyright   Email/Phishing

# EXHIBIT C

Entity Information

11/18/2020

# NYS Department of State

## Division of Corporations

### Entity Information

The information contained in this database is current through November 17, 2020.

Selected Entity Name: RACK OIL CORP.
Selected Entity Status Information

| | |
|---|---|
| Current Entity Name: | RACK OIL CORP. |
| DOS ID #: | 3439872 |
| Initial DOS Filing Date: | NOVEMBER 20, 2006 |
| County: | KINGS |
| Jurisdiction: | NEW YORK |
| Entity Type: | DOMESTIC BUSINESS CORPORATION |
| Current Entity Status: | ACTIVE |

Selected Entity Address Information

**DOS Process (Address to which DOS will mail process if accepted on behalf of the entity)**
RACK OIL CORP.
1274 49TH ST
STE 99
BROOKLYN, NEW YORK, 11219

**Chief Executive Officer**

CHARNIE ROSENBAUM
1150 EAST 4 STREET
BROOKLYN, NEW YORK, 11230

**Principal Executive Office**

RACK OIL CORP.
1274 49TH ST
SUITE 99
BROOKLYN, NEW YORK, 11219

**Registered Agent**

NONE

This office does not record information regarding the names and addresses
of officers, shareholders or directors of nonprofessional corporations
except the chief executive officer, if provided, which would be listed
above. Professional corporations must include the name(s) and address(es)
of the initial officers, directors, and shareholders in the initial certificate of
incorporation, however this information is not recorded and only available
by viewing the certificate.

**\*Stock Information**

| # of Shares | Type of Stock | $ Value per Share |
|---|---|---|
| 200 | No Par Value | |

\*Stock information is applicable to domestic business corporations.

**Name History**

11/18/2020

Entity Information

| Filing Date | Name Type | Entity Name |
|---|---|---|
| NOV 20, 2006 | Actual | RACK OIL CORP. |

A **Fictitious** name must be used when the **Actual** name of a foreign entity is unavailable for use in New York State. The entity must use the fictitious name when conducting its activities or business in New York State.

NOTE: New York State does not issue organizational identification numbers.

Search Results   New Search

Services/Programs  |  Privacy Policy  |  Accessibility Policy  |  Disclaimer  |  Return to DOS Homepage  |  Contact Us

**EXHIBIT D**

1

1  SUPREME COURT OF THE STATE OF NEW YORK
   COUNTY OF KINGS : CIVIL TERM : PART 5F
2  ----------------------------------------X

3  CHARNIE ROSENBAUM,

4                      Plaintiff,            Index No.
                                             50373/2013
5           -against-

6  SAMUEL FESTINGER,

7                      Defendant.

8  ----------------------------------------X
                      360 Adams Street
9                     Brooklyn, New York
                      March 18, 2019
10

11 BEFORE:   HONORABLE RACHEL AMY ADAMS,

12                      Justice.

13

14 APPEARANCES:

15          SNITOW, KAMINETSKY, ROSNER & SNITOW, LLP
            Attorney for the Plaintiff
16          805 Third Avenue, 12th Floor
            New York, New York  10022
17          BY:  ELLIOT J. ROSNER, ESQ.

18          MARY GRACE CONDELLO, ESQ.
            Attorney for the Defendant
19          1716 86th Street
            Brooklyn, New York  11214
20

21

22

23

24                           Teresa McGrath
                             Senior Court Reporter
25

                    -TMcG-

1      Q      You just testified that you put money in from the

2  401(k) into the business in 2017, correct?

3      A      Then it wasn't in 2017, but I don't recall when I

4  put it in.  Any income or money coming in, part of it was

5  the 401(k).  I don't recall when.  So, it is my mistake.

6      Q      When did you withdraw your monies from the 401(k)?

7      A      I don't recall.

8              MR. ROSNER:  Objection, asked and answered.

9      Q      Did you start withdrawing those 401(k) funds in

10  2015, '16 or '17?

11      A      Almost as soon as I left my job, which was in 2014.

12      Q      How much did you have in the 401(k) in 2014?

13      A      Approximately a hundred thousand.

14      Q      One hundred or 800?

15      A      A hundred thousand, approximately.

16      Q      So, in 2014 did you withdraw the entirety of the

17  401(k) out of that account?

18      A      I didn't withdraw it all at once and I don't recall

19  how much and when.

20      Q      Now, if you can look at Exhibit A of Exhibit 10,

21  net worth statement, are those your 2015 tax returns as

22  Exhibit A in that package?

23      A      Yes.

24      Q      Now, do you see on line 15A IRA distributions,

25  $22,000?

-TMcG-

1     A    Yes.

2     Q    Was that the distribution from a 401(k)?

3     A    Probably.

4     Q    Well, did you have an IRA in 2015?

5     A    Yeah, the 401(k).

6     Q    No, Miss Rosenbaum, listen to the question.   I

7  didn't ask you about a 401(k).

8          Did you have an IRA in 2015 or was it a 401(k)?

9     A    401(k).

10    Q    And did you withdraw 22,000 in 2015?

11    A    I think so.

12    Q    Well, what's set forth here is a true and accurate

13 representation of what you filed with the IRS?

14    A    Yes.

15    Q    So, does it say here you took $22,000 from your

16 retirement benefits?

17    A    I guess so, yes.

18    Q    It's not a guessing game.

19    A    It's here, so the answer is yes.

20    Q    Now, that $22,000, what did you do with that money

21 in 2015?

22    A    I am almost sure I used it to pay off the equity

23 line on my home.

24    Q    What equity line was on the home at that time?

25    A    A $300,000 Chase HELOC.

-TMcG-

1    Q    So, you used $22,000 and paid off a $350,000 HELOC

2  on the home?

3    A    A $300,000.

4    Q    So, 22,000 paid off the entire of the $300,000

5  HELOC, is that your testimony?

6    A    Yes.   The number is not exactly 22.   It was

7  approximately 22.

8    Q    It says 22,000 on your tax return, doesn't it?

9    A    But I don't know if I used all of that or exact

10  number that I paid the Chase equity line with.

11    Q    I don't understand what you mean.

12    A    I pulled out, I pulled out of the 401(k) 22,000 in

13  order to pay off the Chase equity line of credit.

14    Q    So, the 22,000 went to the Chase equity line of

15  credit in 2015?

16    A    I am not sure if it was the full 22.

17    Q    Do you have anything to prove whether or not it was

18  the full 22?

19    A    I have documents at home.

20    Q    Okay.   Then you also had the laser electrolysis

21  business, correct, Smooth N Silky, LLC, that was located at

22  1524 57th Street, correct?

23    A    Yes.

24    Q    What was your rent?

25    A    Five hundred dollars a month.

-TMcG-

Miss Rosenbaum - Cross/Ms. Condello                70

1            MR. ROSNER:  Did you say there are no tax
2    returns?
3            MS. CONDELLO:  For Property Solutions, LLC.
4            THE COURT:  Counsel, what's our next date?
5            MR. ROSNER:  I believe we have three dates in
6    May, your Honor, May 2, 3 and 4, and I have got them for
7    full days.
8            THE COURT:  All right.  So then we are
9    adjourned to May 2.
10           MS. CONDELLO:  Yes.
11           THE COURT:  Thank you.
12           MR. ROSNER:  Thank you, your Honor.
13           THE COURT:  Counsel, you are going to call us
14   just to clarify the exhibits?
15           MS. CONDELLO:  I am sorry?
16           THE COURT:  You are going to check your notes
17   so we can clarify the exhibits?
18           MS. CONDELLO:  I am, Judge.
19           (Case adjourned to May 2, 2019.)
20           *      *      *      *      *
21        Certified to be a true and accurate
22   transcript of the foregoing proceedings.
23
24   Teresa McGrath
     Senior Court Reporter
25

-TMcG-

**EXHIBIT E**



**NYC DEPARTMENT OF FINANCE OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

2014101502137001001E2197

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 4 |
|---|---|

**Document ID:** 2014101502137001   **Document Date:** 10-10-2014   **Preparation Date:** 10-15-2014
**Document Type:** RELEASE
**Document Page Count:** 2

| PRESENTER: | RETURN TO: |
|---|---|
| NATIONWIDE TITLE CLEARING<br>2100 ALT 19 NORTH<br>,<br>PALM HARBOR, FL 34683 | JPMORGAN CHASE BANK, N.A.<br>2100 ALT 19 NORTH<br>,<br>PALM HARBOR, FL 34683 |

**PROPERTY DATA**

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 5495 | 817  Entire Lot | | 1150 EAST 4TH  STREET |

**Property Type:** APARTMENT BUILDING

**CROSS REFERENCE DATA**

CRFN: 2007000133789
☒ Additional  Cross References on Continuation  Page

**PARTIES**

| MORTGAGER/BORROWER: | MORTGAGEE/LENDER: |
|---|---|
| CHARNIE ROSENBAUM<br>1150 EAST 4TH STREET, .<br>BROOKLYN, NY 11230 | JPMORGAN CHASE BANK, N.A.<br>2100 ALT. 19 NORTH, .<br>PALM HARBOR, FL 34683 |

**FEES AND TAXES**

| Mortgage : | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | | $ 0.00 |
| TAXES:  County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 0.00 | | $ 0.00 |
| Spec (Additional): | $ | 0.00 | |  |
| TASF: | $ | 0.00 | |  |
| MTA: | $ | 0.00 | |  |
| NYCTA: | $ | 0.00 | |  |
| Additional MRT: | $ | 0.00 | |  |
| TOTAL: | $ | 0.00 | |  |
| Recording Fee: | $ | 47.00 | |  |
| Affidavit Fee: | $ | 0.00 | |  |

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**

Recorded/Filed         10-22-2014 10:08
City Register File No.(CRFN):
                        2014000351344

*Annette M Hill*

*City Register Official Signature*

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**



2014101502137001001C2317

| RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION) | | PAGE 2 OF 4 |
|---|---|---|
| Document ID: 2014101502137001 | Document Date: 10-10-2014 | Preparation Date: 10-15-2014 |
| Document Type: RELEASE | | |

**CROSS REFERENCE DATA**
CRFN: 2007000134790

Return By Mail To:  -
JPMorgan Chase Bank, N.A.
C/O Nationwide Title Clearing, Inc.
2100 Alt. 19 North
Palm Harbor, FL 34683

Loan #: 100002447022003993

## RELEASE OF MORTGAGE

**KNOW ALL MEN BY THESE PRESENTS,** that **JPMORGAN CHASE BANK, N.A.** having its principal place of business at:

780 Kansas Lane, Suite A
Monroe, LA 71203

the holder of a certain Mortgage executed dated 07/17/2006, made by **CHARNIE ROSENBAUM** (Borrower/s) to **GFI MORTGAGE BANKERS INC.** (Lender) in the principal sum of $300,000.00 and recorded on 03/13/2007 as Document # 2007000134789 in Liber , Page , in the Office of the Clerk of KINGS County, New York, hereby authorizes the Clerk to release the same of record.

See Exhibit attached for Assignments, Modifications etc.

Property is more commonly known as: 1150 EAST 4TH STREET, BROOKLYN, NY 11230.

This Release is solely for the purpose of releasing the real property described above from the lien created by the Mortgage and is not a release of the obligation under the Note as said obligation has not been fully paid.

Dated on ___10 / 10 / 14___ (MM/DD/YYYY)
JPMORGAN CHASE BANK, N.A.

By: _____
Ingrid Whitty
**VICE PRESIDENT**

_____
Ednique Williams
**WITNESS**

STATE OF LOUISIANA
PARISH OF OUACHITA
Before me, on __10 / 10 / 14__ (MM/DD/YYYY), the undersigned, personally appeared Ingrid Whitty as VICE PRESIDENT for JPMORGAN CHASE BANK, N.A., personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that they executed the same in their capacity(ies), and that by their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Ira D. Brown #16206
Notary Public - State of LOUISIANA
Commission expires: LIFETIME

IRA D. BROWN
OUACHITA PARISH, LOUISIANA
LIFETIME COMMISSION
NOTARY ID # 16200

Document Prepared By: E.Lance/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152
Property ID(S/B/L , Block: 5495 Lot: 817
CHAS6 24701376  _0 HELOC      $42.00  T0814100209  [C-1] SPONY1

*D0007843243*

Exhibit

Assignment: GFI MORTGAGE BANKERS INC. TO JPMORGAN CHASE BANK, N.A. DATED 07-17-2006. REC: 03-13-2007 INSTR# 2007000134790



**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

2014101502137001001SEF16

| SUPPORTING DOCUMENT COVER PAGE | PAGE 1 OF 1 |
|---|---|

| Document ID: 2014101502137001 | Document Date: 10-10-2014 | Preparation Date: 10-15-2014 |
|---|---|---|

Document Type: RELEASE

**SUPPORTING DOCUMENTS SUBMITTED:**

Page Count

RELEASE DOCUMENT ANSWERS TO QUESTIONS                                    1

ACRIS Release / Partial Release Information

### New York City Department of Finance
### Office of the City Register
*Automated City Register Information System*
*Release / partial Release Information*

**Is this release being recorded:**

| | | |
|---|---|---|
| O YES | ⊙ NO | **i. Pursuant to an initial condominium offering?** |
| O YES | ⊙ NO | **ii. In connection with a sale of a lot in a subdivision?** |
| O YES | ⊙ NO | **iii. A transfer of the released property in a transaction exempt from federal income tax under Internal Revenue Code §1031?** |
| O YES | ⊙ NO | **If NO to the above, was additional property added to the lien of the mortgage from which the property is to be released as the results of a spreader of additional collateral mortgage recorded against the property being released, with the last twelve months (but no earlier than Jan 17, 2005)?** |

uf

Please print these questions and attach as a Supporting Document.

**EXHIBIT F**

At the Matrimonial Term, Part 5F, of the
Supreme Court of the State of New York,
held in and for the County of Kings, at the
Courthouse thereof, 360 Adams Street,
Brooklyn, New York, on the 10th day of June
2020.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
-------------------------------------------------------- X

CHARNIE ROSENBAUM,

                        Plaintiff,

        -against-

SAMUEL FESTINGER,

                      Defendant.
-------------------------------------------------------- X

Index No. 50373/13
**DECISION AND ORDER**
Mot. Seq. #26

Recitation as required by C.P.L.R. §2219(a) of the papers considered in the review of the motion for contempt:

| Papers | Papers Numbered |
|---|---|
| Plaintiff's order to show cause and exhibits: | 1-20 |
| Defendant's affidavit in opposition and exhibits: | 1-6 |
| February 19, 2020 transcript: | 1-21 |
| Attorney for Child's March 3, 2020 affirmation: | 1-4 |
| Attorney for Child's March 4 and 5, 2020 letters: | 1-2 |

The above post-trial motion for contempt was before this court for oral argument on February 19, 2020. By order dated December 4, 2019 the plaintiff was permitted to "file an order to show cause seeking contempt for defendant's alleged violation of court orders" (see order dated December 4, 2019). The plaintiff's motion dated January 2, 2020 was made returnable on February 19, 2020 at which time the parties and their counsel appeared together with the attorneys for the two subject children (mot. Seq. #26).

Further, the December 4, 2019 order set out in detail the efforts made by the court to direct compliance with prior orders directing the defendant to provide the twenty-nine (29) days

time. Any order of commitment related to criminal and/or civil contempt to serve upon the Sheriff of the City of New York will be issued by this court under separate order.

Defendant is also reminded that the within decision is without prejudice to the Attorneys for the Children's unpaid fees and their respective rights to make the appropriate additional applications to the court.

<u>Counsel Fees</u>

Lastly, plaintiff requests reasonable counsel fees pursuant to DRL §238 in an amount to be fixed by the court and, pursuant to 22 NYCRR §130-1.1 and §130-1.2, awarding plaintiff the costs and imposing sanctions against the defendant for fees and disbursements incurred in connection with this application by reason of the defendant's frivolous and contumacious noncompliance with respect to court orders.

Counsel relies on Judiciary Law §773 which grants the court the power to fine a party who is in contempt of court and where there is no actual loss or injury. The fine may be a sum equal to the costs and expenses of the other party plus an additional $250 for each violation of the orders as penalty for his contemptuous conduct. Counsel argues that the phrase "costs and expenses" properly includes counsel fees. Defendant's failure to comply with court orders forced the instant motion and it should not be plaintiff's burden to shoulder that cost. Therefore, counsel fees are an appropriate remedy.

Plaintiff submits that DRL §238 provides for an award of fees in a proceeding to enforce this court's orders. Her counsel affirms that at a rate of $375 an hour he has expended 8.9 hours in the preparation of the motion and anticipates more billing relative to the appearance, argument and hearing. The fees for the instant motion are $3,337.50 (Exhibit L). Counsel

reiterates that the court has awarded fees in the amount of $17,575 during the pendency of the action, however, none of these fees have been paid, and the plaintiff owes her firm $475,173.60 inclusive of the fees for the instant application.

Defendant and his counsel fail to specifically address the request for counsel fees and sanctions incident to the instant motion for contempt, relying on the argument in opposition that plaintiff's counsel selected his remedy in seeking a money judgment for past awards and therefore the matter is closed.   No legal authority is offered to support this position which the court finds to be without merit. Accordingly, plaintiff's counsel is awarded the sum of $3,337.50 as and for reasonable fees incurred on the enforcement application.  As no hearing is required on the instant application and the trial before the court has concluded, future counsel fees are not anticipated at this time.   Defendant shall pay the within counsel fee award directly to plaintiff's counsel on or before August 17, 2020. Upon failure to pay, plaintiff's counsel may enter judgment on affirmation alone.

This matter is scheduled for an appearance on the trial calendar on September 10, 2020 at 9:30 a.m. subject to the court's Covid-19 protocols in effect at that time to assess the status of the trial transcripts and for further proceedings in accordance with the above decision and order.

This constitutes the decision and order of the court.  Plaintiff's counsel is directed to serve

a copy of the within on defendant's counsel and the Attorneys for Children with notice of entry

within fourteen (14) days of entry in the Office of the Kings County Clerk.

ENTER,

Hon. Rachel A. Adams, J.S.C.

24

**EXHIBIT G**

# Department of Taxation and Finance

Support    Contact us

Home |                                                                              | Help

## Manage Sales Tax Responsible Persons

| Taxpayer ID: ▓▓▓6445 | Taxpayer name: RACK OIL CORP. |

### Responsible Person Summary

Review the responsible persons information we have on record for accuracy.

Update information by selecting the responsible person's name to update that person's information. Select Add Another Person to add a person not displayed below. You can remove a responsible person added in this session by marking the check box to the left of the person's name and selecting Remove. (Note: If a checkbox doesn't appear next to the name of a person you want to delete, click on their name and add a Reason for Responsibility Ending and Date Responsibility Ended.)

To learn more about the sales tax definition of a responsible person, see the Instructions.

**Responsible persons summary**

| | Responsible person | Social security number | Business title | Effective date |
|---|---|---|---|---|
| ☐ | CHARNIE ROSENBAUM | XXX-XX-4735 | | 06/01/2007 – present |
| | SAMUEL FESTINGER | XXX-XX-3965 | | 12/24/2018 – present |

Add Another Person

 **New York State Department of**
**Taxation and Finance**

Date: 01/04/19

## Consolidated Statement of Tax Liabilities

If you have any questions, please call
(816) 487-5434.

 ROSENBAUM-CHARNIE

This is a statement of your tax liabilities, including the liability(ies) referred to in the enclosed notice. Amounts calculated to 01/04/19.

Each liability listed below is identified by an Assessment ID. Use the enclosed Payment Document to make payment on these liabilities.

Recent adjustments, credits or payments may not be included on this Statement. Also, a payment may have been applied to multiple assessments.

This Consolidated Statement summarizes your tax liabilities with New York State under this account. If you have ever used more than one taxpayer identification number for tax reporting purposes, you may owe additional New York State tax liabilities.

NOTE: To view the current balance of any unpaid tax bills, access our Web site at www.tax.ny.gov/online.

THE FOLLOWING LIABILITIES HAVE BEEN DETERMINED TO BE DUE. Although not yet subject to collection action they should be paid promptly in order to avoid the accrual of additional penalty and/or interest charges.

| Tax Type | Assessment ID | Tax Period Ended | Tax Amount Due | (+) Interest Amount Due | (+) Penalty Amount Due | (=) Assessment Payments/ Credits | (=) Current Balance Due |
|---|---|---|---|---|---|---|---|
| INCOME | L-051277593-2 | 12/31/07 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| INCOME | L-044502066-5 | 12/31/15 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| INCOME | L-046258594-4 | 12/31/16 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| SALES | L-049220736-9 | 05/31/17 | 48,412.55 | 12,291.69 | 13,555.41 | 0.00 | 74,259.65 |
| SALES | L-049220735-1 | 08/31/17 | 197,221.82 | 43,833.93 | 51,560.87 | 0.00 | 292,615.62 |
| SALES | L-049220734-2 | 11/30/17 | 350,000.00 | 59,966.75 | 79,334.13 | 0.00 | 489,300.88 |
| SALES | L-049220733-3 | 02/28/18 | 1,015,436.03 | 136,640.02 | 199,943.56 | 0.00 | 1,352,019.61 |
| SALES | L-049220732-4 | 05/31/18 | 203,165.12 | 21,103.81 | 35,962.20 | 0.00 | 260,231.13 |
| SALES | L-049220731-5 | 08/31/18 | 26,647.28 | 1,453.65 | 3,709.95 | 0.00 | 31,810.88 |
| | | | | | | TOTAL # | 2,800,237.77 |

Keep this statement for your records.

**EXHIBIT H**

Page 1

1    UNITED STATES BANKRUPTCY COURT

2    EASTERN DISTRICT OF NEW YORK

3    Case No. 1-20-43272-nhl

4    - - - - - - - - - - - - - - - - - - - - - - - - - x

5    In the Matter of:

6

7    SAMUEL FESTINGER,

8             Debtor.

9    - - - - - - - - - - - - - - - - - - - - - - - - - x

10   Case No. 1-20-43271-nhl

11   - - - - - - - - - - - - - - - - - - - - - - - - - x

12   In the Matter of:

13

14   CHARNIE ROSENBAUM,

15            Debtor.

16   - - - - - - - - - - - - - - - - - - - - - - - - - x

17   Adv. Case No. 1-20-01103-nhl

18   - - - - - - - - - - - - - - - - - - - - - - - - - x

19   ROSENBAUM,

20                Plaintiff,

21            v.

22   FESTINGER,

23                Defendants.

24   - - - - - - - - - - - - - - - - - - - - - - - - - x

25

**Page 2**

```
 1        United States Bankruptcy Court
 2          271-C Cadman Plaza East
 3            Brooklyn, NY 11201
 4
 5          October 1, 2020
 6          2:12 PM
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21   B E F O R E :
22   HON NANCY HERSHEY LORD
23   U.S. BANKRUPTCY JUDGE
24
25   ECRO: UNKNOWN
```

**Page 3**

```
 1   HEARING re 1-20-01103-nhl [7] Order to Schedule a Hearing on
 2   Shortened Notice of the Motion of Charnie Rosenbaum for an
 3   Order for Remand (RE: related document(s) [5] Motion for
 4   Remand of Divorce Action to State Court, in addition to
 5   Motion for Costs/Atty Fees Filed by Stewart J Epstein on
 6   behalf of Charnie Rosenbaum.
 7
 8   HEARING re 1-20-43271-nhl [8] Order Scheduling a Hearing on
 9   Shortened Notice RE: [6] Emergency Motion for Relief from
10   Stay as to Divorce Action Fee Amount $181. Filed by Stewart
11   J Epstein on behalf of Charnie Rosenbaum.
12
13   HEARING re 1-20-43272-nhl [9] Order Scheduling a Hearing on
14   Shortened Notice [5] Motion seeking entry of an order for
15   relief from the automatic stay, nunc pro tunc to the filing
16   date of this proceeding, to allow the divorce action pending
17   between Rosenbaum and debtor Samuel Festinger in the Supreme
18   Court of New York, Kings County .
19
20
21
22
23
24
25   Transcribed by: Sonya Ledanski Hyde
```

**Page 4**

```
 1   A P P E A R A N C E S :
 2
 3   SNITOW KAMINETSKY ROSNER & SNITOW, LLP
 4        Attorneys for Charnie Rosenbaum
 5        805 Third Avenue, 12th Floor
 6        New York, NY 10022
 7
 8   BY: ELLIOT ROSNER (TELEPHONICALLY)
 9
10   KACHAN LAW FIRM
11        Attorneys for Boaz Gazit, Petitioning Creditor
12        3099 Coney Island Avenue, 3rd Floor
13        Brooklyn, NY 11235
14
15   BY: ALLA KACHAN (TELEPHONICALLY)
16
17   SAMUEL FESTINGER, Pro Se Debtor (TELEPHONICALLY)
18
19   CHARNIE ROSENBAUM, Debtor, Plaintiff & Movant
20   (TELEPHONICALLY)
21
22
23
24
25
```

**Page 5**

```
 1              P R O C E E D I N G S
 2        CLERK:  In the matters of Charnie Rosenbaum,
 3   Samuel Festinger, and the adversary proceeding Rosenbaum v.
 4   Festinger.
 5        THE COURT:  Appearances?
 6        MR. ROSNER:  Elliot Rosner, Snitow Kaminetsky
 7   Rosner & Snitow, LLP, for Charnie Rosenbaum who is the
 8   alleged debtor in one proceeding, the plaintiff in the
 9   adversary proceeding, and the movant in the Samuel Festinger
10   proceeding.  Good afternoon, Your Honor.
11        THE COURT:  Good afternoon.
12        MS. KACHAN:  Good afternoon, Your Honor.  Alla
13   Kachan on behalf of the Petitioner Boaz Gazit.
14        THE COURT:  Again, name of the Petitioner?
15        MS. KACHAN:  Boaz Gazit, petitioning creditor.
16        THE COURT:  Okay.  Anybody else?
17        MR. FESTINGER:  Good morning, Your Honor.
18        MS. ROSENBAUM:  Yes.  Charnie Rosenbaum.
19        THE COURT:  Okay.  Anybody else?
20        MR. FESTINGER:  Samuel Festinger, Your Honor.
21   Good afternoon.
22        THE COURT:  Good afternoon.
23        Okay.  A little housekeeping, am I correct in
24   understanding that the notice of removal was filed in the
25   bankruptcy court and not in the district court?
```

## Page 6

1    MR. FESTINGER: Correct. It was in the bankruptcy
2 court.
3    THE COURT: Okay. That's improper. Notice of
4 removal is supposed to be filed in the district court, not
5 the bankruptcy court. And then it gets referred to me.
6 However, it doesn't matter because even if it were done that
7 way, I am going to and will remand back to the state court.
8 The Supreme Court of the United States doesn't want
9 bankruptcy courts or federal courts becoming surrogates
10 courts or matrimonial courts. I believe it is subject to
11 mandatory abstention.
12    And even if it were not subject to mandatory
13 abstention, and I know that Mr. Festinger, you were looking
14 for an attorney, you could resurrect Perry Mason and F. Lee
15 Baily and they could not argue in a way that would persuade
16 me to have the matrimonial action before me. And, again,
17 the Supreme Court of the United States has spoken on that
18 issue. Even if they had not, I believe it is subject to
19 mandatory abstention. Even if it were not, it would be
20 permissive abstention. I am not keeping it. I am remanding
21 this.
22    Again, technically, it was done improperly. It
23 doesn't matter. I am remanding as quickly as I possibly can
24 the matrimonial action. So let's just put that to rest
25 right away. There is nothing anybody can say or do that

## Page 7

1 would change that. Okay. Now that we said that and done
2 that, I am remanding sua sponte, although I think I was
3 asked to remand but I'm not even sure that was on today but
4 -- was it today that --
5    MR. ROSNER: Yes, Your Honor. That motion was on
6 today, as well, but we'll take the result no matter what the
7 procedural --
8    THE COURT: Well, and you weren't going to get
9 that result. This case -- I'm not hearing -- again, I think
10 the Supreme Court of the United States has spoken on this
11 issue. And as I said, again, even if it has not, I believe
12 it is subject to mandatory abstention. Even if it were not,
13 it would be permissive abstention because I am not going to
14 hear the matrimonial action. You're going to go back to
15 matrimonial court.
16    Okay. That being said, is there anything else any
17 of you want with these involuntaries? I assume this was --
18 may have been a means to an end. You're not getting that
19 end. Do we still want to have involuntary cases here?
20    MS. KACHAN: Your Honor, if I may very briefly?
21 Your Honor, the idea here and I'm by no means arguing in
22 front of Your Honor as to keep the matrimonial case or hear
23 the matrimonial --
24    THE COURT: Ms. Kachan? Ms. Kachan, don't -- by
25 all means not arguing. I have rules. You could be Perry

## Page 8

1 Mason, you could be F. Lee Baily, you could be the best
2 lawyer in the world, you could not convince me otherwise if
3 you --
4    MS. KACHAN: I'm not, Your Honor.
5    THE COURT: (Indiscernible).
6    MS. KACHAN: Yeah, I'm not trying to, Your Honor.
7    THE COURT: I'm not sure why --
8    MS. KACHAN: This is a totally different argument.
9    THE COURT: I'm not sure why a petitioning
10 creditor cares about somebody's matrimonial action sitting
11 in the bankruptcy court, but we'll leave it at that. If
12 you've got something to say other than about the
13 matrimonial, I'll hear you.
14    MS. KACHAN: Your Honor, the idea here is that by
15 whatever means if there is property, marital property,
16 divided here, there is not going to be any means to get my
17 client paid. My client has a legitimate claim. There is --
18 you know, there's a lot to this. There's a lot of facts
19 here where, you know, we believe that his services were --
20 the services that he's owed for were obtained in a let's
21 just say not an above-forward way. He was asked to complete
22 the TO holds. He did. He was given promises that he will
23 be paid. We have messages; we have statements. We have
24 written, you know, messages going back and forth --
25    THE COURT: If you want to -- again, if you have a

## Page 9

1 proper involuntary subject to somebody challenging it, okay,
2 that's it. I'm telling you now that this matrimonial action
3 is going back to matrimonial court. If you have a claim,
4 you have a claim against somebody, go chase them. And if
5 you've decided to use the involuntary as a vehicle in order
6 to collect a debt, in order to have assets -- again,
7 assuming that it's not thrown out, then, you know, that's a
8 different issue.
9    But the matrimonial and the division of
10 matrimonial property and custody or whatever issues there
11 are before the family court or matrimonial court, they are
12 staying there. They are not coming here. Done, finished.
13 Now that I've said that, let's see where that leaves us.
14    So let me see what we've got on. Okay. We've got
15 the hearing on short notice on Charnie Rosenbaum's motion
16 remanding. Okay, that's granted. I'm remanding. Okay.
17 That takes care of that.
18    What else have I got? Order scheduling a hearing,
19 emergency motion for relief from stay. It's a divorce
20 action. Okay. So now that I've remanded, this is also your
21 -- this is your motion, Mr. Rosner, to lift the -- your
22 client is the Plaintiff in the matrimonial?
23    MR. ROSNER: That's correct, Your Honor.
24    THE COURT: Okay. So you don't have to lift the
25 stay in her involuntary. You don't have to lift the stay in

3 (Pages 6 - 9)

Page 10

1 her involuntary. You have to lift the stain in Mr.
2 Festinger's involuntary in order to proceed with the
3 matrimonial. And with respect to that, he's asking for time
4 to retain counsel, I believe. Is that right, Mr. Festinger?
5     MR. FESTINGER: Yes, Your Honor. Festinger is
6 requesting that.
7     THE COURT: Okay. And then I have an order
8 scheduling a hearing, the motion seeking to issue an order
9 for relief from the automatic stay nunc pro tunc to allow
10 the divorce proceeding -- oh, this is in the other case,
11 right? Is that right, Mr. Rosner, you did one for each of
12 them?
13     MR. ROSNER: That's correct, Your Honor,
14 especially when we first --
15     THE COURT: You don't --
16     MR. ROSNER: -- moved. They were before different
17 judges when we first moved as a matter of fact.
18     THE COURT: Oh, okay. But you don't -- when
19 you're the -- when the Debtor is the Plaintiff in the
20 underlying matter, the Debtor doesn't need relief from stay.
21 The Debtor needs relief from stay where the Debtor is the
22 defendant in the underlying matter. So sometimes the
23 question will come up on appeal. There was an instance --
24 for instance, if the debtor is the appellant bringing the
25 appeal, that debtor would have to still seek relief from

Page 11

1 stay if on the underlying action the debtor was the
2 plaintiff.
3     So with respect to the -- your own -- the own
4 bankruptcy case which, again, was (indiscernible) sustained
5 or not -- that's not on today, but with respect to your own
6 bankruptcy case, the wife's bankruptcy case, she does not
7 need to get -- she does not need to obtain relief from stay.
8 She just -- there's no stay in effect. You can give me a
9 comfort order because sometimes this distinction is not
10 clear to the state court. So you can give me a comfort
11 order that's -- provide a comfort order to me that declares
12 that there's no stay in effect in her case where she's the
13 Plaintiff in the underlying action.
14     MR. ROSNER: Yes, Your Honor. I think I might do
15 that --
16     THE COURT: To that extent --
17     MR. ROSNER: -- or a piece of that.
18     THE COURT: To that extent, Mr. Festinger is able
19 to -- I would lift the stay so that he's able to defend it
20 unless he doesn't want to do that. But I'm assuming, Mr.
21 Festinger, you want to defend it to the extent that I'm
22 allowing her to proceed.
23     Now with respect to -- so that's for her to
24 proceed. Now with respect to his case, again, with respect
25 to his case, you want to proceed against him. He's the

Page 12

1 defendant. There is still -- so there is a stay. There is
2 a stay as to him. There is not a stay as to her. So you do
3 have to get relief from stay in that involuntary case. And,
4 again, with respect to that, he's looking for an attorney.
5 So I would put that on a short adjournment.
6     MR. ROSNER: Your Honor, if I may be heard briefly
7 on that? The purpose of this action and there were papers
8 submitted by Mr. Gazit's attorney today that really confirm
9 that. The purpose of this action was, to be blunt, to keep
10 Mr. Festinger out of jail for his criminal and civil
11 contempt. And in doing --
12     THE COURT: Well, that's -- the bankruptcy doesn't
13 -- wait a minute, let's talk about what -- and let me look
14 again on 362 because there are certain actions that are not
15 stayed with respect to matrimonial. So we'll go through
16 that right now. There's only a stay to the effect there's a
17 -- there's no stay -- you can't -- there's no stay with
18 respect to criminal actions, you understand?
19     MR. ROSNER: Understood, Your Honor.
20     THE COURT: So there is no stay --
21     MR. ROSNER: But --
22     THE COURT: -- with respect to that.
23     MR. ROSNER: There is no stay with respect to the
24 criminal contempt, correct. But this is a 7.5-year-old
25 divorce case that's post-trial and is going to be prevented

Page 13

1 from being brought to completion, which is part of the
2 purpose of Mr. Festinger causing this action to be brought.
3 In addition --
4     THE COURT: But wait a minute, but I just -- but
5 there's no stay. You don't get the benefit of a stay with
6 respect to what you said he's trying to avoid. There is no
7 -- let's go over 362 together. 362(b), okay. Let me pull
8 it up. Actually, it would be better if I just get -- if I
9 just move and get a book because I have it here. This is
10 pretty basic. Bear with me a second.
11     (Pause)
12     THE COURT: 362(a) tells you what's stayed, and
13 362(b) tells you what's not.
14     (Pause)
15     THE COURT: Okay. So the first one is there is no
16 stay -- 362 doesn't operate as a stay of the commencement or
17 continuation of a criminal action or proceeding against the
18 debtor, period. Also, it doesn't operate as a stay of the
19 commencement or continuation of a civil action or
20 proceeding: for the establishment of paternity, for the
21 establishment or modification of an order for domestic
22 support obligations, concerning child custody or visitation,
23 for the dissolution of a marriage except to the extent that
24 such proceeding seeks to determine the division of property
25 that is property of the estate, or regarding domestic

4 (Pages 10 - 13)

Page 14

1  violence.
2      So you do have an exception there within an
3  exception. So that pretty much everything is not subject to
4  the stay except to the extent that the proceeding seeks to
5  determine the division of property that is property of the
6  estate. As to that, it seems to me, again, where the debtor
7  is the plaintiff, the debtor doesn't have to get relief from
8  stay in her case. But you would need to get relief from
9  stay in the -- Mr. Festinger's case to the extent that the
10  proceeding seeks to determine the division of property that
11  is property of the estate.
12      With me, Mr. Rosner?
13      MR. ROSNER: Absolutely, Your Honor.
14      THE COURT: That's 362(b)(2)(4). Okay, so that's
15  -- so you could have a comfort order on the other things,
16  you know, in case they don't know that but there's no stay
17  as to those things. There's also no stay with respect to
18  the collection of a domestic support obligation from
19  property that is not property of the estate. So we've
20  handled the criminal. We've handled the matrimonial. We've
21  handled the custody. There's no stay of the reporting of
22  overdue support ordered by a parent to any -- okay, we got
23  that one.
24      MR. ROSNER: Your Honor, what I believe is not
25  covered based on a decision last year by Judge Scarcella is

Page 15

1  the enforcement of a domestic support obligation in a case
2  called In re Grinspan where he addressed this issue and he
3  noted that --
4      THE COURT: You're saying -- wait a minute, you're
5  saying covered or not covered? Within the stay or
6  outside --
7      MR. ROSNER: The enforcement of a domestic support
8  obligation which is not accepted under 362(b)(2)(B) as
9  collection. The court from Judge Scarcella's decision in
10  the Grinspan case from last year.
11      THE COURT: And, again, I'm not --
12      MR. FESTINGER: Your Honor --
13      THE COURT: Just a minute. I'm not sure I
14  understand. Enforcement of the domestic support obligation
15  is outside of the stay, you're saying, or is within the stay
16  and you need --
17      MR. ROSNER: Is within the stay. It is not one of
18  the exceptions. It is within the stay and, therefore,
19  relief would be required to proceed on enforcement --
20      THE COURT: Okay. So domestic court obligation --
21      MR. ROSNER: -- for a domestic court obligation.
22      THE COURT: Okay. But, again, because it's the
23  collection of a domestic -- so the collection of the
24  domestic support obligation for property that is not
25  property of the estate. So I'm assuming that would

Page 16

1  have been the enforcement of something that was property of
2  the estate. That may have been the distinction. What's the
3  name of the case, please?
4      MR. ROSNER: In re Grinspan, spelled G-R-I-N-S-P-
5  A-N. The citation is 597 B.R. 725.
6      THE COURT: Okay. So there are things for which
7  you need to seek and have sought today relief from stay in
8  Mr. Festinger's case. He is asking for time to get an
9  attorney, okay. I am -- we are in the middle of the Jewish
10  holidays. I am inclined to give him some time, not a lot of
11  time. It's going to take a little time for this to be
12  remanded in any event.
13      So I will issue, as a result of today, an order of
14  remand. I will, if you give me an order, give you a comfort
15  order just declaring that there's no stay in her case with
16  respect to actions where she's the plaintiff. If you want a
17  comfort order dividing it in half as to those things that
18  are within the exception that relate to Mr. Festinger, it's
19  a question of the law so you can have that or you can wait
20  until we determine those things that are subject to the
21  stay.
22      MR. ROSNER: Well, Your Honor, I suppose that that
23  depends on how much time we're talking about because I think
24  there were papers submitted today by Mr. Gazit's attorney
25  where they acknowledge essentially that there are no real

Page 17

1  claims against Mr. Festinger by Mr. Gazit. The only claims
2  are the same claims (indiscernible) broken down.
3      MS. KACHAN: I'm very sorry. I will interrupt.
4  That's not what the papers say, and please don't
5  mischaracterize what I have filed.
6      THE COURT: Wait a minute. This is not a hearing
7  --
8      MS. KACHAN: If there was an argument --
9      THE COURT: Wait a minute, this is not a hearing
10  on the -- I mean, again, this is not a hearing on the
11  involuntary. The involuntaries were served, right? When is
12  the last day to -- for the respective debtors to answer or
13  move?
14      MR. ROSNER: Well, Your Honor, in the case of Ms.
15  Rosenbaum's proceeding, we have moved to dismiss. We've
16  noticed that for November 4th. I'm not sure about the dates
17  for Mr. Festinger.
18      THE COURT: Okay. You moved to dismiss and when
19  was that noticed to?
20      MR. ROSNER: November 4th.
21      THE COURT: Okay.
22      MR. ROSNER: And we moved for sanctions, as well.
23      THE COURT: Okay. Also November 4th.
24      Ms. Howard, what time?
25      CLERK: 3:30.

5 (Pages 14 - 17)

Page 18

1    THE COURT: Okay. And sanctions. Sanctions on
2 the involuntary?
3    MR. ROSNER: Yes.
4    THE COURT: Correct? Okay. All right. I just --
5 you know, I wrote -- I just wrote a lengthy decision on
6 involuntary sanctions.
7    MR. ROSNER: Your Honor? Your Honor, my papers
8 cite the CNG case heavily.
9    THE COURT: Okay. Well, I hope they also cite
10 Judge Craig's case because I cited Judge Craig's case
11 heavily in my CNG case, and now that she's gone as of
12 yesterday and I cry every time I think about it, I really
13 want you to cite Judge Craig's case, too. Okay.
14    MR. ROSNER: Well, if I would have known, I would
15 have cited her more.
16    THE COURT: Yeah. I miss her already. It's just
17 crazy. Anyway, okay. All right. So that's November 4th.
18 When is the -- if somebody can tell me, tell me -- I assume
19 that would be Ms. Kachan. Ms. Kachan, can you tell me when
20 Mr. Festinger's last day to move or answer is on the
21 involuntary complaint?
22    MS. KACHAN: Your Honor, I'm actually not sure.
23 As Your Honor noticed, I was not the one to file the
24 involuntary and --
25    THE COURT: Okay. I'll go to the docket. We only

Page 19

1 have to look at the --
2    MS. KACHAN: Mr. Gazit did.
3    THE COURT: I only have to look at the docket.
4    MS. KACHAN: I just came on a few days ago.
5    THE COURT: I'm only going to -- I'll look at the
6 docket. It's not hard. I just thought you knew off the top
7 of your head. Hold on.
8    (Pause)
9    THE COURT: Okay. The involuntary summons issued
10 in the Festinger case dated September 9th. So last date to
11 move or answer is October 9th. Wait a minute. No, no,
12 that's wrong. Required to file with the Clerk of the Court
13 a motion or answer to the petition within 20 days -- 21 days
14 after service of the summons. So it's 21 days after service
15 of the summons. It's different, so let me find -- do you
16 know when that service -- did you know when that summons was
17 served? Were you the petitioning creditor in both cases,
18 Ms. Kachan?
19    MS. KACHAN: I represent Mr. Gazit. Yes, he is
20 the petitioner -- petitioning creditor. He filed these --
21    THE COURT: Okay. Do you know when you --
22    MS. KACHAN: -- without counsel, and I came on
23 three days ago.
24    THE COURT: Okay. Do you know when the -- do you
25 know when it was served?

Page 20

1    MS. KACHAN: I do not, Your Honor.
2    MR. ROSNER: Your Honor, we do know that Mr.
3 Festinger was aware of that even before the summons was
4 issued. I don't know what effect that has on his right to
5 his obligation to respond and the timing, but he was aware
6 of it before the summons.
7    THE COURT: Mr. Rosner, you'll learn from me when
8 I ask a straight question that's looking for a factual
9 answer, I don't want you to argue your case. That's for
10 another day. I'm looking for a straight --
11    MR. ROSNER: I apologize, Your Honor.
12    THE COURT: -- answer. Is there an affidavit of
13 service? Yes, I believe so. No, that's your affidavit of
14 service.
15    CLERK: Judge, this is Caitlin. I don't see it on
16 either docket, but I'm looking.
17    THE COURT: So we don't -- if there's no affidavit
18 of service, we don't have a good case. I mean that was CNG,
19 too. Let's see. I don't see an affidavit of service. If
20 it was in fact served, we need an affidavit of service. If
21 it wasn't served, okay, then you need a supplemental summons
22 because the time to serve has passed. Correct?
23    MS. KACHAN: I will follow up, Your Honor.
24    THE COURT: This was September 9th. So you have I
25 believe -- somebody -- Caitlin, pull up CNG. This was an

Page 21

1 issue there, too. Is it seven now or ten or how many days
2 to serve?
3    CLERK: Let me pull up that decision.
4    THE COURT: It's in the rules. The point is if it
5 hasn't been served, it needs a supplemental summons.
6    MS. KACHAN: Understood, Your Honor.
7    THE COURT: And it also means his time has not
8 started to run.
9    So, Ms. Kachan, you should read the decision
10 because I don't take kindly to -- nobody in this district
11 does, actually, take kindly if I have any sense that this
12 was collusive or had an ulterior motive that wasn't, you
13 know, the collection of a legitimate debt.
14    MS. KACHAN: No, Your Honor. It's very much a
15 legitimate debt --
16    THE COURT: That's not bona fide --
17    MS. KACHAN: -- and it's actually not the only
18 claim they have. But I hear you, Your Honor. I'm three
19 days on the case.
20    THE COURT: Well, you only --
21    MS. KACHAN: I pulled together as much as I could.
22    THE COURT: This was only filed with one creditor,
23 right? So they better have -- you know, if they've got 12
24 or more creditors, you need three and then it gets thrown
25 out on that basis.

6 (Pages 18 - 21)

Page 22

1    CLERK:  Judge, this is Caitlin.  So it looks like
2  involuntary summons just requires -- service is required
3  within seven days after its issuance.
4    THE COURT:  Okay.  All right.  So this had to be
5  served by the 16th.  And if it wasn't, you need to get a
6  supplemental summons because -- and if that's the case in
7  both of them, again, we don't have service.  But we do have
8  a motion to dismiss, and so we'll -- we can deal with that
9  on that day.  And we'll certainly deal with the relief --
10  we'll certainly deal -- the stay still went into effect, so
11  we'll certainly deal with the stay.
12    So I'm going to adjourn today to the November 4th
13  day then, if that's all right, Mr. Rosner.  I don't know if
14  there's any point in going earlier, right?
15    MR. ROSNER:  As long as I can submit that comfort
16  order, Your Honor, both on my client's case and on the
17  carveout in Mr. Festinger's case.
18    THE COURT:  Yes.  I mean, again, there's no --
19  well, you're not -- yes, you can -- the point is the comfort
20  order, you just need to state what's in the statute.
21    MR. ROSNER:  I just want to make sure that the
22  judge in the state court has full comfort to proceed.
23    THE COURT:  Okay.  And you can also attach.  It
24  would not be a bad idea for you to attach the statute to the
25  order and they can get that as well.  But, again, they're

Page 23

1  not going to -- they have nothing to lift the stay to
2  because they don't have any action until I send it back.
3    MR. ROSNER:  Understood, Your Honor.
4    THE COURT:  Right?  They have no case.  They have
5  no jurisdiction.  They have no case until I have it back to
6  them, so that happen first.  Okay.  And we have Jewish
7  holidays in any event in between now so it probably makes
8  sense.
9    So November 4th is the date, Mr. Festinger, that
10  I'm going to give you on the adjournment of the motion for
11  relief.  And with respect to the involuntary, again, I don't
12  know if you were served or not served, but if you were
13  served, you have 21 days to respond.  And if you need more
14  time, you have to speak to the petitioning creditor about
15  that, not to me.  So I'm going to adjourn the motion for
16  relief.  I guess in -- again, where you're the plaintiff,
17  you don't need it at all as to anything, so in your case
18  where you're the plaintiff.
19    So I'm going to adjourn the motion for relief as
20  to in the other case until November 4th, so which means that
21  the response has to be in a week before, which a week before
22  is -- Mr. Festinger, is October 28th, which means you've got
23  a little -- you've got a little bit of time to get an
24  attorney, but any response on that motion for relief has go
25  to be in by October 28th.

Page 24

1    MR. ROSNER:  Your Honor, two points --
2    MR. FESTINGER:  Your Honor?
3    MR. ROSNER:  -- two points, briefly, Your Honor.
4  I apologize.  Firstly, I would like just to know that that
5  day should not be pushed back anymore.  My client who hasn't
6  been paid for her children now by Mr. Festinger relies on
7  credit cards, her credit cards have been frozen because of
8  this bankruptcy proceeding against her.  So I would ask
9  certainly that the November 4th date to not get pushed back
10  at all.
11    THE COURT:  But --
12    MR. ROSNER:  The --
13    THE COURT:  Wait a minute.  What --
14    MR. ROSNER:  My client has been living off for the
15  most part credit cards since --
16    THE COURT:  Right.
17    MR. ROSNER:  -- Mr. Festinger owes her
18  significant amounts of money in the divorce action.  Her
19  credit card has been frozen, which we understand to be in
20  connection with this involuntary bankruptcy proceeding
21  against her.
22    THE COURT:  Who froze it?
23    MR. ROSNER:  The credit card company.  She
24  attempted to use it today.  The credit card company told --
25  advised it's frozen.  That's my understanding.  Again, we

Page 25

1  will --
2    THE COURT:  Look into --
3    MR. ROSNER:  -- (indiscernible).
4    THE COURT:  Look into that.
5    MR. ROSNER:  We will look into that.
6    THE COURT:  Okay.
7    MR. ROSNER:  The second point, on today's remand
8  motion, I just want to note that our motion was also seeking
9  pursuant to the statute the payment by Mr. Festinger to my
10  client of just cost and any actual expenses including
11  attorney's fees incurred as a result of the removal.  So we
12  are just asking that --
13    THE COURT:  Well, who did --
14    MR. ROSNER:  -- that relief be --
15    THE COURT:  Wait a minute.  Who did the removal?
16    MR. ROSNER:  Mr. Festinger.
17    THE COURT:  Okay.  And we know -- let me see,
18  where's the -- this is in the adversary.  Let me see.  Hold
19  on a second.  Motion for remand, refiled notice of removal.
20  So, yes, done in the bankruptcy court.  It's supposed to be
21  in the federal court.  Okay.  So let me see who signed it.
22  Mr. Festinger.  What are you looking for?
23    MR. ROSNER:  We are looking for costs and
24  attorney's fees.  There are costs with the motions.  There
25  are attorney's fees incurred --

7 (Pages 22 - 25)

Page 26

1    THE COURT: All right. File --
2    MR. ROSNER: -- (indiscernible) with this motion.
3    THE COURT: Okay. File -- yes, and you may be
4 very well entitled to them. Why don't you -- but file
5 the -- file an affidavit and an application for your fees.
6 Give me time sheets with an application for your -- for the
7 fees incurred. And not on the motion for relief, now.
8 Separate them out.
9    MR. ROSNER: Only remand; yes, Your Honor.
10 Absolutely.
11    THE COURT: Only remand. And I will take that up
12 on November 4th and rule on that on November 4th. So --
13    MR. ROSNER: Okay. Thank you, Your Honor.
14    THE COURT: -- you should serve it -- you should
15 serve it on Mr. Festinger or if he has an attorney by then
16 on the attorney, as well -- he should have an attorney by
17 then -- so that they can respond. So why don't you serve it
18 -- can you serve it in, let's see, can you serve it by
19 the -- October 19th?
20    MR. ROSNER: That's fine, Your Honor.
21    THE COURT: Okay. So you're going to file and
22 serve a supplement seeking attorney's fees and costs and
23 whatever the statute allows you to do. You're going to
24 serve it on October 19th. The return date will be November
25 4th. They'll have until the 28th to respond.

Page 27

1    MR. ROSNER: Okay.
2    THE COURT: Mr. Festinger, are you taking notes?
3    MR. FESTINGER: Yes, Your Honor. I'm taking
4 notes. I'm also noting that Mr. Rosner seems to be arguing
5 his case very well while I don't have an attorney. I think
6 --
7    THE COURT: No, nobody's arguing anything.
8 Nobody's arguing anything. The only thing I ruled on today
9 is on remand, and I told you that you could bring me from
10 anywhere -- I'm telling you the Supreme Court has ruled on
11 this issue, and even if they hadn't, I would do mandatory
12 abstention. And even if that wasn't available to me, I
13 would do permissive abstention. I am not hearing your
14 matrimonial action. And no lawyer in the world that you can
15 bring in would convince me otherwise, so you don't need a
16 lawyer for that. And he didn't even need to argue. So
17 that's nothing to do with needing a lawyer. That's number
18 one.
19    Number two, the only thing I determined today was
20 what the statute says, and that is where Charnie Rosenbaum
21 is the Plaintiff, she does not have to seek relief from stay
22 in her own bankruptcy case as to anything where she's the
23 Plaintiff. As in a case where she is bringing an action
24 against somebody who has an involuntary against it or him or
25 her, there needs to be a relief from stay but only as to

Page 28

1 those things where there is a stay.
2    There are certain things that are not stayed.
3 362(b) tells us that. As to those things, he's entitled to
4 a comfort order so the state court understands the statute
5 because sometimes this is where -- you know, this is --
6 matrimonial is in the state court's playground, and this is
7 my playground. So sometimes we need to tell them what's
8 going on in our playground. So -- but so I have not ruled
9 on anything that is subject of dispute today for which you
10 would need an attorney. I've preserved your rights on all
11 of that. Are we clear?
12    MR. FESTINGER: Yes, Your Honor. I understand. I
13 am sure that some of the items in the comfort order that
14 he's seeking against me or from my case are items that are
15 somewhat based on --
16    THE COURT: No, they're going to follow the text
17 of the statute or I won't sign it or I'll change it.
18 They're going to follow the text of the statute. So you
19 don't have a thing to worry about with me as the judge.
20 They're going to follow the statute. I am not going to --
21 can't give you a stay where there is no stay.
22    MR. FESTINGER: (Indiscernible).
23    THE COURT: Congress has set forth where there's a
24 stay and where there isn't a stay. And I thought I was very
25 clear when we said the section that says the exception

Page 29

1 within the exception for the dissolution of a marriage
2 except to the extent that such proceeding seeks to determine
3 the division of property that is property of the estate. So
4 that part of it is subject to the stay.
5    And Mr. Rosner pointed out to me something else
6 that's subject to the stay based upon Judge Scarcella's
7 decision. So those things are subject to the stay.
8 Generally speaking, if it's about, you know, money, not with
9 children and custody, because this statute is as protective
10 of custody and child support as anything in the world. I
11 mean every single section of the statute that would touch
12 upon it makes clear that it's hands off when it comes to
13 child custody and child support custody issues.
14    When it comes to divvying up property that's
15 property of the estate, when it comes to divvying up the
16 gelt on the question of what used to be called -- now it's
17 called spousal support, used to be called alimony in my
18 day -- or whatever it's called, maintenance, alimony,
19 whatever it is, that kind of stuff, that is subject to the
20 stay. That's as a general rule the way the statute works.
21 Am I clear enough? Okay.
22    MR. FESTINGER: Yes, Your Honor.
23    THE COURT: So I'm going to see everybody again on
24 November 4th.
25    Ms. Kachan, if these -- if the involuntaries --

8 (Pages 26 - 29)

Page 30

1  and is this -- is your client was the creditor the sole
2  creditor in both of the involuntaries -- sole petitioning
3  creditor in both involuntaries?
4      MS. KACHAN: He was the sole petitioning creditor,
5  yes.
6      THE COURT: Okay. So you need to see if -- it
7  doesn't really even matter that they made the motion to
8  dismiss. You need to see if they were served. If they were
9  served within the right amount of time, you need file an
10  affidavit of service. If they weren't, criminal summons.
11  Okay.
12      MS. KACHAN: I understand, Your Honor.
13      THE COURT: All right. And the reason --
14      MS. KACHAN: Your Honor, that's why we were --
15      THE COURT: And the reason we have the stay relief
16  is is because --
17      MS. KACHAN: -- seeking a brief adjournment
18  because I needed to see what was going on. We were just
19  literally a few days I was retained.
20      THE COURT: Okay. So on November 4th, we're going
21  to be taking up whatever stay relief is within the stay.
22  We're going to be taking up the --
23      CLERK: Judge, that's in the Festinger matter?
24      THE COURT: Both -- well, both matters because in
25  the voluntary Rosenbaum case, Mr. Rosner is the one who

Page 31

1  moved to dismiss and sanctions. That's returnable November
2  4th. Mr. Festinger in Mr. Festinger's case hasn't yet
3  responded or moved with respect to the involuntary brought
4  against him. I don't know if he is -- I don't know if his
5  time is going to be up 21 days from the date it was -- I
6  don't know when it was served. So I guess he needs to be in
7  touch with Ms. Kachan because if he needs additional time to
8  answer or move because it was properly served, then he'll do
9  that, Mr. Festinger. If it wasn't properly served, your
10  time doesn't begun to run yet. I don't know that because
11  there's no affidavit of service on file. Is that clear?
12      UNIDENTIFIED SPEAKER: Yes.
13      THE COURT: Okay.
14      CLERK: And, Judge, I just wanted to make sure so
15  we're only adjourning the lift stay as to Festinger? And
16  the Rosenbaum matter we're going to get a comfort order?
17      THE COURT: Hold on. Let me go -- let me open it
18  up because I had closed it. Let me go through it with you.
19  Bear with me.
20      (Pause)
21      THE COURT: Okay. So Rosenbaum v. Festinger on
22  that remand motion, that remand is granted. Again, I didn't
23  even need a motion, but that's -- so that's granted.
24      And then with respect to --
25      CLERK: And, Judge, we'll be issuing an order for

Page 32

1  that? This is Caitlin. I just wanted to confirm that's our
2  order.
3      THE COURT: Yes. We'll issue an order. We'll --
4      CLERK: Okay.
5      THE COURT: -- we'll issue our order. And the
6  motion to dismiss in Charnie Rosenbaum is returnable on the
7  4th. So that's being adjourned -- that motion for relief --
8  the motion for relief in the -- wait a minute, the motion
9  for relief in the Charnie Rosenbaum case -- let me just open
10  this up. Hold on.
11      (Pause)
12      THE COURT: In Charnie Rosenbaum, you sought a
13  motion for relief from stay in your own -- in her own case,
14  correct?
15      MR. ROSNER: That's correct, Your Honor. And
16  we'll submit a comfort order on that.
17      THE COURT: There is no stay where she is the
18  Plaintiff. Okay, so that also isn't going over. The motion
19  for relief in the Samuel Festinger case is going over to the
20  other date. And, again, Mr. Rosner can file, again, an
21  order that only would say what things are not subject to the
22  stay because that's in the statute. But other than that,
23  that's being heard on the 4th. So that's the only thing
24  that is going over to the 4th. That's correct.
25      CLERK: Okay.

Page 33

1      THE COURT: Okay. I can't -- by the way, folks, I
2  can't -- Supreme Court of the United States also says we
3  shouldn't use the word nunc pro -- well, we shouldn't do
4  things nunc pro tunc. So you can find another way of saying
5  it. But in any event, as I said, I don't know that it
6  matters much because when it was removed, there was nothing
7  during that time that the state court could have done until
8  the state court gets it back.
9      Any questions?
10      (No response)
11      THE COURT: Okay. All right. Okay. Where do
12  these folks -- is this a Brooklyn -- everyone live in
13  Brooklyn?
14      MR. ROSNER: Yes, that's correct, Your Honor.
15      THE COURT: Oh, okay. So do you guys know where
16  my CNG case -- does that restaurant still exist? I don't
17  even know. That case was dismissed, but that was the -- it
18  was a Mexican -- a kosher Mexican restaurant. It wasn't
19  called CNG. What was it called, Caitlin?
20      CLERK: I wish Ally was still here. Let me
21  just -- it's right in the decision.
22      THE COURT: Anyways, it was the subject of the
23  case was a kosher Mexican restaurant, so Mr. Rosner probably
24  knows. He read the -- he studied the decision, right?
25      MR. ROSNER: I did, and I happen to be familiar

9 (Pages 30 - 33)

Page 34

1  with some of the lawyers, as well.

2      THE COURT:  Oh, okay.  And maybe the restaurant

3  itself -- I don't know if it still exists.  Who knows what

4  exists anymore now anyway in the world.

5      All right.  I'm going to let everybody go.  Do I

6  have anything on between now and November 4th on these

7  matters for any other reason?

8      MR. ROSNER:  Not that I'm aware of, Your Honor.

9      THE COURT:  Okay.  I'll see everybody on November

10  -- or see everybody, talk to everybody, same dial-in number.

11  Okay?

12      MS. KACHAN:  What time on November 4th, Your

13  Honor?

14      THE COURT:  I think everything is on for 3:30, Ms.

15  Howard?

16      CLERK:  Yes, Judge.

17      THE COURT:  Yeah.  And how much time do we have?

18  Let's just check that out.  May have to move some stuff.

19      CLERK:  Yeah, not a whole lot.

20      THE COURT:  Well, let's see.  All right.  Well,

21  we're going to have to -- we'll move -- let's move the

22  Northfield stuff.  Okay.  I don't know what we've got

23  (indiscernible) on with Ms. Kachan.  Yeah, let's move the --

24  it'll be the last -- so right now it's the last thing on on

25  the 3:30.  Let's move the stuff at 4:00 and close out the

Page 35

1  afternoon, okay?

2      CLERK:  Okay.

3      THE COURT:  Okay, everybody.  Be well.

4      MS. KACHAN:  Thank you, Your Honor.

5      MR. ROSNER:  Thank you for your time, Your Honor.

6      THE COURT:  Thank you.  Bye.

7      (Whereupon these proceedings were concluded)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 36

1      C E R T I F I C A T I O N

2

3      I, Sonya Ledanski Hyde, certified that the foregoing

4  transcript is a true and accurate record of the proceedings.

5

6

7

8  Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20  Veritext Legal Solutions

21  330 Old Country Road

22  Suite 300

23  Mineola, NY 11501

24

25  Date:  October 6, 2020

# EXHIBIT I



**New York State Office of the State Comptroller**
Thomas P. DiNapoli

Division of State Government Accountability

# Compliance With the Reimbursable Cost Manual

# State Education Department Children's Center for Early Learning



Report 2014-S-20                                    December 2014

# Executive Summary

## Purpose
To determine whether the expenses reported on the Consolidated Fiscal Reports (CFRs) of the Children's Center for Early Learning (Center) were calculated properly, documented adequately, and allowable pursuant to the State Education Department's (SED) Reimbursable Cost Manual (Manual). Our audit primarily covered the two fiscal years ended June 30, 2009. In addition, we examined selected costs from fiscal years 2005-06 and 2006-07.

## Background
The Center provides special education services to New York City-based children between three and five years of age. Pursuant to New York State Education Law, special education providers, such as the Center, are reimbursed for their services using tuition rates established by SED based on the financial information reported on their annual CFRs. For the three fiscal years ended June 30, 2009, the Center claimed approximately $10.7 million in reimbursable expenses for the programs we audited (Programs). According to SED, the Center's special education operations ended on May 5, 2014.

## Key Findings
We identified $797,438 in reported costs that should not have been reimbursed, as follows:
- $741,942 in salary and related personal service expenses for costs chargeable to Center affiliates; for time not worked; and for other undocumented personal service costs.
- $55,496 in non-personal service costs that were either undocumented; not properly allocated between programs; or not Program-appropriate. Such costs include fees for undocumented professional services, income tax penalties, food purchases, and office-related expenses.
- The Center made interest-free loans to related parties using Program monies.

## Key Recommendations
To the State Education Department:
- Review the disallowances addressed in our report and adjust the Center's CFRs and tuition reimbursement rates for the audit scope period as appropriate.
- Work with Center officials to help ensure that only allowable costs are included on any of their CFRs prepared after our scope period.
- Direct Center officials to disclose all "less-than-arm's-length" transactions on any CFRs prepared after the scope period and prior to ceasing operations.

To the Children's Center for Early Learning:
- Ensure that costs reported on any CFRs prepared after the scope period comply with Manual requirements.

## Other Related Audits/Reports of Interest
Bilingual SEIT and Preschool, Inc.: Compliance With the Reimbursable Cost Manual (2011-S-13)
Special Education Associates, Inc.: Compliance With the Reimbursable Cost Manual (2010-S-31)

**State of New York**
**Office of the State Comptroller**

**Division of State Government Accountability**

December 29, 2014

Dr. John B. King, Jr.
Commissioner
State Education Department
89 Washington Avenue (Room 125)
Albany, NY 12234

Mr. Thomas Gelb
Executive Director
Children's Center For Early Learning
83 Marlborough Road
Brooklyn, NY 11226

Dear Dr. King and Mr. Gelb:

The Office of the State Comptroller is committed to helping State agencies, public authorities and local government agencies manage government resources efficiently and effectively and, by so doing, providing accountability for tax dollars spent to support government operations. The Comptroller oversees the fiscal affairs of State agencies, public authorities and local government agencies, as well as their compliance with relevant statutes and their observance of good business practices. The fiscal oversight is accomplished, in part, through our audits, which identify opportunities for improving operations. Audits can also identify strategies for reducing costs and strengthening controls that are intended to safeguard assets.

Following is a report of our audit of the State Education Department and the Children's Center for Early Learning entitled *Compliance With the Reimbursable Cost Manual*. This audit was performed pursuant to the State Comptroller's authority as set forth in Article V, Section 1 of the State Constitution and Article II, Section 8 of the State Finance Law.

This audit's results and recommendations are resources for you to use in effectively managing your operations and in meeting the expectations of taxpayers. If you have any questions about this report, please feel free to contact us.

Respectfully submitted,

*Office of the State Comptroller*
*Division of State Government Accountability*

2011-S-21

# Table of Contents

| | |
|---|---|
| Background | 4 |
| Audit Findings and Recommendations | 5 |
| Personal Service Costs | 5 |
| Non-Personal Service Costs | 6 |
| Other Matter | 7 |
| Recommendations | 7 |
| Audit Scope and Methodology | 8 |
| Authority | 9 |
| Reporting Requirements | 9 |
| Contributors to This Report | 10 |
| Exhibit | 11 |
| Notes to Exhibit | 12 |
| Agency Comments - State Education Department | 13 |
| Agency Comments - Children's Center for Early Learning | 15 |
| State Comptroller's Comments | 22 |

**State Government Accountability Contact Information:**
Audit Director: Frank Patone
Phone: (212) 417-5200
Email: StateGovernmentAccountability@osc.state.ny.us
Address:
Office of the State Comptroller
Division of State Government Accountability
110 State Street, 11th Floor
Albany, NY 12236

This report is also available on our website at: www.osc.state.ny.us

# Background

The Children's Center for Early Learning (Center) is a not-for-profit organization located in Brooklyn, New York, that is licensed to provide special education services to New York City-based children between three and five years of age. The Center's special education services include a full-day Center-based program, a half-day Center-based program, and a home-based Special Education Itinerant Teacher (SEIT) program. Center officials informed the State Education Department (SED) that they would be ceasing Center operations on May 5, 2014.

The New York City Department of Education (DoE) has paid the Center for its services using tuition rates established by SED. SED in turn periodically reimbursed the DoE for its statutory share (59.5 percent) of the tuition paid to the Center. SED periodically revises its tuition rates for special education providers based on the financial information reported on their annual Consolidated Fiscal Reports (CFRs). SED has issued a Reimbursable Cost Manual (Manual) to provide guidance to special education providers on the eligibility of reimbursable costs, the documentation necessary to support these costs, and cost allocation requirements for expenses relating to multiple programs and/or affiliates. For the three fiscal years ended June 30, 2009, the Center reported approximately $10.7 million in Program-related costs.

One of the Center's affiliates, the Children's Center for Early Intervention (CCEI), operates at the same Brooklyn location. CCEI is a for-profit organization approved by the New York State Department of Health to provide early intervention services to children from birth to age three. In addition to sharing facility space, the Center's Executive Director and certain other Center employees also work for CCEI. In addition, the Center's Executive Director is the spouse of the Director of Clinical Programs at CCEI. Collectively, the Center and CCEI are known as the "Children's Center."

Manhattan Children's Center (MCC), also located in New York City, is another Center affiliate. MCC began operations in 2007 as a non-profit private school chartered by the New York State Board of Regents to educate children between 3 and 12 years of age who have been diagnosed with autism spectrum disorder. The Center's Executive Director is a founder and current President of MCC. His spouse is also one of MCC's founders and is on its Faculty Advisory Board. Some Center employees also work for MCC.

**EXHIBIT J**

# GMail

## Rcv-1299: Charnie Birnhack - FW: HI

Wed, May 6, 2010 at 9:13 AM

roger- thanx for being the best husband and stepdad anyone can ever ask for the emotional support you have given shlomy is priceless

Charnie Festinger, Reimbursment Supervisor

The Children's Center for Early Intervention

83 Marlborough Road

Brooklyn, NY 11226

Tel: 718.284.3110 ,ext 203

Fax:718.679.9281

This transmission and any attachments may contain confidential and privileged information for the use of the designated recipients named above. If you are not the intended recipient, you are hereby notified that you have received this communication in error and that any review, disclosure, dissemination, distribution or copying of it or its contents is prohibited. If you have received this communication in error, please destroy it and notify us immediately by email.

--------- Forwarded message ----------
From: Shlomy <shlomoros@hotmail.com>
Date: Mon, Nov 16, 2009 at 4:44 PM
Subject: Fwd: HI
To: Ta Festinger <futurenergy@gmail.com>

# EXHIBIT K



Services    News    Government    Local

# NYS Department of State
## Division of Corporations
## Entity Information
### The information contained in this database is current through November 10, 2020.

Selected Entity Name: SMOOTH N SILKY LLC

**Selected Entity Status Information**

Current Entity Name: SMOOTH N SILKY LLC
DOS ID #: 3570658
Initial DOS Filing Date: SEPTEMBER 20, 2007
County: KINGS
Jurisdiction: NEW YORK
Entity Type: DOMESTIC LIMITED LIABILITY COMPANY
Current Entity Status: ACTIVE

**Selected Entity Address Information**

DOS Process (Address to which DOS will mail process if accepted on behalf of the entity)
SMOOTH N SILKY LLC
1150 EAST 4TH STREET
BROOKLYN, NEW YORK, 11230
Registered Agent
NONE

This office does not require or maintain information regarding the names and addresses of members or managers of nonprofessional limited liability companies. Professional limited liability companies must include the name(s) and address(es) of the original members, however this information is not recorded and only available by viewing the certificate.

| *Stock Information | | | Name History | | |
|---|---|---|---|---|---|
| # of Shares | Type of Stock | $ Value per Share | Filing Date | Name Type | Entity Name |
| | No Information Available | | SEP 20, 2007 | Actual | SMOOTH N SILKY LLC |

*Stock information is applicable to domestic business corporations.

A Fictitious name must be used when the Actual name of a fore
New York State. The entity must use the fictitious name when co
in New York State.

NOTE: New York State does not issue organizational identification numbers.

Search Results | New Search

# EXHIBIT L

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
- - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

CHARNIE ROSENBAUM,                                    :         Index No.: 50373/2013

                          Plaintiff,                  :

                    -against-                         :         **STATEMENT OF NET WORTH**
                                                                        **(D.R.L. §236)**

SAMUEL FESTINGER, A/K/A ROGER HESS,                   :
A/K/A ALAN GOLD, A/K/A JACOB FESTINGER,                         Date of Commencement
A/K/A WILLIAM GOODMAN, A/K/A                          :         of Action: January 29, 2013
ANDY LIPTON,
                          Defendant.                  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

*(Complete all items, marking "NONE", "INAPPLICABLE" and "UNKNOWN", if appropriate)*

STATE OF NEW YORK              )
                              )ss.:
COUNTY OF KINGS                )

       CHARNIE ROSENBAUM, the Plaintiff herein, an Orthodox Jew prohibited from swearing, affirms that the following is an accurate statement as of March 25, 2013 of my net worth (assets of whatsoever kind and nature and wherever situated minus liabilities), statement of income from all sources and statement of assets transferred of whatsoever kind and nature and wherever situated:

I.    **FAMILY DATA:**

    (a)    Husband's age and date of birth:    60 years old - ███████, 1952
    (b)    Wife's age and date of birth:    47 years old - ██████, 1965
    (c)    Date married:    ███████, 2001
    (d)    Date *separated/divorced*:
    (e)    Number of dependant children under 21 years:  2
    (f)    Names, ages and dates of birth of children:
            D███ F████ - 10 years old - ████████, 2003
            B████ F██████ - 8 years old - ███████, 2004

    (g)    Custody of children: _____Husband   __X__Wife
    (h)    Minor children of prior marriage: _____Husband   _____Wife
    (i)    *Husband/Wife paying/receiving* $_____ as alimony/maintenance
        and/or $_____ in child support in connection with prior marriage
    (j)    Custody of children of prior marriage:
        Name:_____
        Address:_____
        Name:_____
        Address:_____

    (k)    Is marital residence occupied by Husband _____   Wife __X_____
        Both _____

    (l)    Husband's present address:

|  | Wife's present address: | 1150 East 4th Street<br>Brooklyn, New York 11230 |
|---|---|---|
| (m) | Occupation of Husband: | Business owner - Home heating oil; car rental, leasing, sale, entrepreneur |
|  | Occupation of Wife: | Executive Assistant/Small Business Owner |
| (n) | Husband's employer: | Self-employed - 793 McDonald Avenue, Brooklyn, New York 11218 |
| (o) | Wife's employer: | The Children's Center - 83 Marlborough Road, Brooklyn, New York 11226 |
| (p) | Education, training & skills: (Include dates of attainment of degrees, etc.) | |
|  | Husband: | BA in Accounting - 1973 |
|  | Wife: | High School Graduate - 1983 |
| (q) | Husband's health: | Alcohol addiction |
| (r) | Wife's health: | Excellent |
| (s) | Children's health: | Excellent |

**II.** **EXPENSES:** *(You may elect to list all expenses on a weekly basis or all expenses on a monthly basis; however, you must be consistent. If any items are paid on a monthly basis, divide by 4.3 to obtain weekly payments; if any items are paid on a weekly basis, multiply by 4.3 to obtain monthly payment. Attach additional sheet, if needed. Items included under "Other" should be listed separately with separate dollar amounts.)*

Expenses listed _____ weekly __X__ monthly

**(a)** **Housing** -
1. Rent:
2. Mortgage and amortization:                $6,350 + 1300 home equity[1]
3. Real estate taxes:
4. Condominium charges:
5. Cooperative apartment maintenance:

**Total: Housing   $7651**

**(b)** **Utilities**
1. Fuel oil:
2. Gas:            $260
3. Electricity:    $850
4. Telephone:      $127
5. Water:          $176

---

[1] Defendant stopped making mortgage payments in July 2010.

2

Total:  Utilities __$1,413_____

(c)   **Food**
      1. Groceries:              $895
      2. School Lunches:
      3. Lunches at work:        $53
      4. Dining out:             $275.15
      5. Liquor/alcohol:
      6. Home entertainment:
      7. Other: Vitamins - $20.00

      Total:  Food __$1213.15_____

(d)   **Clothing**
      1. Husband:
      2. Wife:        $185
      3. Children:    $172
      4. Other:

      Total:  Clothing __$357_____

(e)   **Laundry**
      1. Laundry at home:    $10
      2. Dry cleaning:       $25
      3. Other:

      Total:  Laundry ____$35_____

(f)   **Insurance**
      1. Life:                        Policies cancelled by husband
      2. Homeowner's/tenant's:
      3. Fire, theft and liability:   $320
      4. Automotive:                  $105
      5. Umbrella policy:
      6. Medical plan:                $162 - wife / $18 - Child Health Plus
      7. Dental plan:
      8. Optical plan:
      9. Disability:
      10. Worker's Compensation:
      11. Other:

      Total:  Insurance __$605_____

(g)   **Unreimbursed medical**
      1. Medical
      2. Dental              $108
      3. Optical
      4. Pharmaceutical      $75
      5. Surgical, nursing, hospital:
      6. Other:

      Total:  Unreimbursed medical__$183_____

(h)    **Household maintenance**
    1. Repairs:    $50
    2. Furniture, furnishings, housewares:
    3. Cleaning supplies:    $40
    4. Appliances, including maintenance:    $25
    5. Painting:
    6. Sanitation/carting:
    7. Gardening/landscaping:    $110
    8. Snow removal:    $40
    9. Extermination:
    10. Other: Security System    $45

    **Total: Household maintenance    $310**

(i)    **Household help:**
    1. Babysitter:
    2. Domestic(housekeeper, maid, etc.) . $387
    3. Other:

    **Total: Household help   $387**

(j)    **Automotive**

    Year: 2007 _____ Make: _Dodge Caravan_ Personal: _____ Business: _____
    Year: _____ Make: _____ Personal: _____ Business: _____

    1. Payments:
    2. Gas and oil:    $156
    3. Repairs:    $30
    4. Carwash:    $12.50
    5. Registration and license:
    6. Parking and tolls:    $10
    7. Other:    $105

    **Total: Automotive   $313.50**

(k)    **Educational**
    1. Nursery and pre-school:
    2. Primary and secondary:    $1200 ($700 - Dovid, $500 - Ester)
    3. College:
    4. Post-graduate:
    5. Religious instruction:
    6. School transportation:    $140
    7. School supplies/books:    $20
    8. Tutoring:
    9. School events:
    10. Other:    Staff tips    $50

    **Total: Educational   $1,410**

(l) **Recreational**

| | |
|---|---|
| 1. Summer camp: | Approximately $230/month ($1400 - Dovid + $1350 - Ester = $2,750/12 = 230) |
| 2. Vacations: | $6000/yearly /12 = $500 monthly |
| 3. Movies: | $45.20 |
| 4. Theatre, ballet, etc.: | |
| 5. Video rentals: | |
| 6. Tapes, CD's, etc.: | |
| 7. Cable television: | |
| 8. Team sports: | $140 (Dovid - karate) |
| 9. Country club/pool club: | $50 |
| 10. Health club: | |
| 11. Sporting goods: | |
| 12. Hobbies: | |
| 13. Music/dance lessons: | |
| 14. Sports lessons: | |
| 15. Birthday parties: | |
| 16. Other: Holidays (Chanukah, Purim), Wedding gifts - $2,000 (yearly; $167 monthly) | |

Total:  Recreational   $1,132.20

(m) **Income taxes**
1. Federal:
2. State:
3. City:
4. Social Security and Medicare:

Total:  Income taxes _____

(n) **Miscellaneous**

| | |
|---|---|
| 1. Beauty parlor/barber/wigs: | $135 |
| 2. Beauty aides/cosmetics, drug items: | $123.89 |
| 3. Cigarettes/tobacco: | |
| 4. Books, magazines, newspapers: | $28 |
| 5. Children's allowances: | |
| 6. Gifts: | $75 |
| 7. Charitable contributions: | 10% of earnings |
| 8. Religious organization dues: | $16 |
| 9. Union and organizations dues: | |
| 10. Commutation and transportation: | $20 |
| 11. Veterinarian/pet expenses: | |
| 12. Child support payments (prior marriage): | |
| 13. Alimony and maintenance payments (prior marriage): | |
| 14. Loan payments: | $500 |
| 15. Unreimbursed business expenses: | |

Total:  Miscellaneous  $897.89

(o) **Other**

| | |
|---|---|
| 1. Therapy: | $300 |
| 2. Post Office Box: | $22.70 |
| 3. Safe Deposit Box: | $25 |

5

4. Starbucks          $30

Total:  Other  $377.70

## TOTAL EXPENSES:  $16,285.44

III.  **GROSS INCOME:** *(State source of income and annual amount. Attach additional sheet, if needed).*

                           See attached 2012 tax return.

(a)  **Salary or wages:** *(State whether income has changed during the year preceding date of this affidavit _____. If so, set forth name and address of all employers during preceding year and average weekly wage paid by each. Indicate overtime earnings separately. Attach previous year's W-2 or income tax return.)*

(b)  Weekly deductions:
    1. Federal tax:
    2. New York State tax:
    3. Local tax:
    4. Social Security tax:
    5. Medicare:
    6. Other payroll deductions *(specify)*:

(c)  Social Security number ███████-4735

(d)  Number and names of dependants claimed:

(e)  Bonus, commissions, fringe benefits *(use of auto, memberships, etc.)*:

(f)  Partnerships, royalties, sale of assets *(income and installment payments)*:

(g)  Dividends and interest *(state whether taxable or not)*:

(h)  Real estate *(income only)*:

(i)  Trust, profit sharing and annuities *(principle distribution and income)*:

(j)  Pension *(income only)*:

(k)  Awards, prizes, grants *(state whether taxable)*:

(l)  Bequests, legacies and gifts:

(m)  Income from all other sources *(including alimony, maintenance or child support from prior marriage)*:

(n)  Tax preference items:
    1. Long term capital gain deduction:
    2. Depreciation, amortization or depletion
    3. Stock options - excess of fair market value over amount paid

(o)  If any child or other member of your household is employed, set forth name and that person's annual income:

(p)  Social Security:

(q)  Disability benefits:

(r)  Public assistance:

(s)  Other:

## TOTAL INCOME: _____

IV.  **ASSETS:** *(If any assets is held jointly with spouse or another, so state, and set forth your respective shares. Attach additional sheets, if needed.)*

6

## A.   CASH ACCOUNTS

**Cash**
1.1     a. Location:
        b. Source of funds:
        c. Amount:

        **Total Cash** _____

**Checking Accounts**
2.1     a. Financial institution:        Apple Bank
        b. Account number:               ████4694
        c. Title holder:                 Charnie Rosenbaum
        d. Date opened:                  1999
        e. Source of funds:              Salary, other
        f. Balance:                      $1300

2.2     a. Financial institution:        TD Bank
        b. Account number:               ████3241
        c. Title holder:                 Charnie Rosenbaum – Smooth-n-Silky
        d. Date opened:                  2008
        e. Source of funds:              Business
        f. Balance:                      $1500

        **Total Checking  $2800** _____

**Savings accounts** *(including individual, joint, totten trust, certificates of deposit, treasury notes)*:

3.1     a. Financial institution:        Union Central Retirement Plan (401k)
        b. Account number:               Plan ████841
        c. Title holder:                 Charnie Rosenbaum
        d. Type of account:              401k
        e. Date opened:                  January 1, 2005
        f. Source of funds:              Salary
        g. Balance:                      $66,378.75

        **Total Savings   $66,378.75**

**Security deposits, earnest money, etc.**
4.1     a. Location:
        b. Title owner:
        c. Type of deposit:
        d. Source of funds:
        e. Date of deposit:
        f. Amount:

        **Total Security Deposits, etc.** _____

7

Other
5.1     a. Location:
          b. Title owner:
          c. Type of account:
          d. Source of funds:
          e. Date of deposit:
          f. Amount:

5.2     a. Location:
          b. Title owner:
          c. Type of account:
          d. Source of funds:
          e. Date of deposit:
          f. Amount:

          **Total Other** _____

# **TOTAL CASH ACCOUNTS:** _____

**B.**      **SECURITIES**

Bonds, notes, mortgages
1.1     a. Description of security:
          b. Title holder:
          c. Location:
          d. Date of acquisition:
          e. Original price or value:
          f. Source of funds to acquire:
          g. Current value:

          **Total Bonds, notes, etc.** _____

Stocks, options and commodity contracts

2.1     a. Description of security:
          b. Title holder:
          c. Location:
          d. Date of acquisition:
          e. Original price or value:
          f. Source of funds to acquire:
          g. Current value:

          **Total Stocks, options, etc.** _____

2.2     a. Description of security:
          b. Title holder:
          c. Location:
          d. Date of acquisition:
          e. Original price or value:
          f. Source of funds to acquire:

g. Current value:

**Total Stocks, options, etc.** _____

Broker margin accounts

3.1    a. Name and address of broker:
       b. Title holder:
       c. Date account opened:
       d. Original value of account:
       e. Source of funds:
       f. Current value:

**Total Broker margin accounts** _____

## TOTAL VALUE OF SECURITIES: _____

C.    Loans to Others and Accounts Receivable

1.1    a. Debtor's name and address:
       b. Original amount of loan or debt:
       c. Source of funds from which loan made or origin of debt:
       d. Date of payment(s) due:
       e. Current amount due:

**Total Loans and accounts receivable** _____

1.2    a. Debtor's name and address:
       b. Original amount of loan or debt:
       c. Source of funds from which loan made or origin of debt:
       d. Date of payment(s) due:
       e. Current amount due:

**Total Loans and accounts receivable** _____

D.    Value of Interest in Any Business

1.1    a. Name and address of business:    Smooth-n-Silky
                                     1524 57th Street
                                       Brooklyn, New York 11219
       b. Type of business:    Limited Liability Company
       c. Your capital contribution:
       d. Your percentage of interest:    100%
       e. Date of acquisition:    July, 2008
       f. Original price or value:    $140,000 (equipment)
       g. Source of funds to acquire:    Loans & family members
       h. Method of valuation
       i. Other relevant information:
       j. Current net worth of business:    $25,000

**Total Value of Business Interest** ___$25,000___

9

E.   Cash Surrender Value of Life Insurance

1.1   a. Insurer's name and address:
      b. Name of insured:
      c. Policy number:
      d. Face amount of policy:
      e. Policy owner:
      f. Date of acquisition:
      g. Source of funding to acquire:
      h. Current cash surrender value:

      **Total Value of Life Insurance** _____

F.   Vehicles *(automobiles, boat, plane, truck, camper, etc.)*

1.1   a. Description:          Dodge Caravan minivan - 2007
      b. Title owner:          Charnie Rosenbaum
      c. Date of acquisition:  2009
      d. Original price:       $3,500
      e. Source of funds to acquire:   Geico Insurance check for previous crashed car
      f. Amount of current lien unpaid:
      g. Current fair market value:    $3,000

      **Total Value of Vehicles** ____$3,000_____

G.   Real Estate *(including real property, leaseholds, life estates, etc. at market value - do not deduct any mortgage)*

1.1   a. Description:          One family house (marital residence)
      b. Title owner:          Charnie Rosenbaum
      c. Date of acquisition:  February, 2005
      d. Original price:       $700
      e. Source of funds to acquire:   Personal savings & mortgage
      f. Amount of mortgage or lien unpaid:  $1,179,000.00
      g. Estimated current market value:     $2,000,000.00

      **Total Value of Real Estate** __$2,000,000 (equity of $821,000)__

H.   Vested Interest in Trusts *(pension, profit sharing, legacies, deferred compensation and others)*

1.1   a. Description of trust:
      b. Location of assets:
      c. Title owner:
      d. Date of acquisition:
      e. Original investment:
      f. Source of funds:
      g. Amount of unpaid liens:
      h. Current value:

      **Total Vested Interest in Trusts** _____

10

I.    Contingent Interests *(stock options, interests subject to life estates, prospective inheritances, etc.)*

1.1    a. Description:
      b. Location:
      c. Date of vesting:
      d. Title owner:
      e. Date of acquisition:
      f. Original price of value:
      g. Source of funds to acquire:
      h. Method of valuation:
      i. Current value:

**Total Contingent Interests** _____

J.    Household Furnishings

1.1    a. Description:        Assorted
      b. Location:
      c. Title owner:
      d. Original price:
      e. Source of funds to acquire:
      f. Amount of lien unpaid:
      g. Current value:

**Total Household Furnishings** _$20,000_____

K.    Jewelry, Art, Antiques, Precious Objects Gold and Precious Metals *(only if valued at more than $500)*

1.1    a. Description:
      b. Location:
      c. Title owner:
      d. Original price or value:
      e. Source of funds to acquire:
      f. Amount of lien unpaid:
      g. Current value:

**Total Jewelry, etc.** _____

L.    Other *(e.g., tax shelter investments, collections, judgments, causes of action, patents, trademarks, copyrights, and any other asset not hereinabove itemized)*

1.1    a. Description:
      b. Location:
      c. Title owner:
      d. Original price or value:
      e. Source of funds to acquire:
      f. Amount of lien unpaid:
      g. Current value:

**Total Other** _____

11

**TOTAL ASSETS:  $2,117,178.75  (prior to deducting mortgage)**

V.    **LIABILITIES**

A.    Accounts Payable

1.1   a. Name and address of creditor:          Union Central
      b. Debtor:                                 Charnie Rosenbaum
      c. Amount of original debt:                $14,000
      d. Date of incurring debt:                 July 2008
      e. Purpose:                                To establish business
      f. Monthly or other periodic payment:      $135
      g. Amount of current debt:                 $2,761.78

1.2   a. Name and address of creditor:          Family members
      b. Debtor:                                 Charnie Rosenbaum
      c. Amount of original debt:                $42,540
      d. Date of incurring debt:                 November 2011
      e. Purpose:                                Adult children's weddings (children from
                                                 Wife's previous marriage)
      f. Monthly or other periodic payment:      Approx. $500
      g. Amount of current debt:                 $36,540

      **Total Accounts Payable _____**

B.    Notes Payable

1.1   a. Name and address of note holder:
      b. Debtor:
      c. Amount of original debt:
      d. Date of incurring debt:
      e. Purpose:
      f. Monthly or other periodic payment:
      g. Amount of current debt:

      **Total Notes Payable _____**

C.    Installment Accounts Payable *(security agreements, chattel mortgages)*

1.1   a. Name and address of creditor:
      b. Debtor:
      c. Amount of original debt:
      d. Date of incurring debt:
      e. Purpose:
      f. Monthly or other periodic payment:
      g. Amount of current debt:

**Total Installment Accounts** _____

D.   Brokers' Margin Accounts

1.1   a. Name and address of broker:
      b. Amount of original debt:
      c. Date of incurring debt:
      d. Purpose:
      e. Monthly or other periodic payment:
      f. Amount of current debt:

**Total Brokers' Margin Accounts** _____

E.   Mortgages Payable on Real Estate

1.1   a. Name and address of mortgagee:       Bank of America (Ocwen)
                                              POB 5170
                                              Simi Valley, California 93062
      b. Address of property mortgaged:        1150 East 4th Street
                                              Brooklyn, New York 11230
      c. Mortgagor(s):                         Charnie Rosenbaum
      d. Original debt:                        $850,000
      e. Date of incurring debt:
      f. Monthly or other periodic payment:    Has not been paid since July 2010
      g. Maturity date:                        2023
      h. Amount of current debt:               $860,195.59

1.2   a. Name and address of mortgagee:       Chase - Home Equity
                                              POB 78035
      b. Address of property mortgaged:        1150 East 4th Street
                                              Brooklyn, New York 11230
      c. Mortgagor(s):                         Charnie Rosenbaum
      d. Original debt:                        $300,000
      e. Date of incurring debt:
      f. Monthly or other periodic payment:    Has not been paid since July 2010
      g. Maturity date:
      h. Amount of current debt:               $303,710.13

**Total Mortgages Payable  $1,163,905.72** _____

F.   Taxes Payable

1.1   a. Description of tax:
      b. Amount of tax:
      c. Date due:

**Total Taxes Payable** _____

13

G.     Loans on Life Insurance Policies

1.1    a. Name and address of insurer:
       b. Amount of loan:
       c. Date incurred:
       d. Purpose:
       e. Name of borrower:
       f. Monthly or other periodic payment:
       g. Amount of current debt:

       **Total Life Insurance Loan** _____

H.     Other Liabilities

1.1    a. Description:
       b. Name and address of creditor:
       c. Debtor:
       d. Original amount of debt:
       e. Date incurred:
       f. Purpose:
       g. Monthly or other periodic payment:
       h. Amount of current debt:

       **Total Other Liabilities** _____

       **TOTAL LIABILITIES:   $1,203,207.50**


# NET WORTH

TOTAL ASSETS:           $2,117,178.75

TOTAL LIABILITIES:        (minus)
                          $1,203,207.50

NET WORTH:               $913,971.25


VI.    **ASSETS TRANSFERRED:** *(List all assets transferred in any manner during the preceding three years, or length of the marriage, whichever is shorter [transfers in the routine course of business which resulted in an exchange of assets of substantially equivalent value need not be specifically disclosed where such assets are otherwise identified in the statement of net worth.])*

| Description of Property | To Whom Transferred and Relationship to Transferee | Date of Transfer | Value |
|---|---|---|---|

| | | | |
|---|---|---|---|

**VII.   SUPPORT REQUIREMENTS:**

(a) Deponent is at present receiving $0.00 per *month*, and prior to separation *(received)* $_____ _____ per *(month)* to cover expenses for

These payments are being made *(voluntarily) (pursuant to court order or judgment) (pursuant to separation agreement)*, and there are *(no)* arrears outstanding *(in the sum of* $_____ *to date)*.

(b) Deponent requests for support of the children $7,450 per month.

(c) Deponent requests for support of self $ 11,867 per month.

(d) The day of the month on which payment should be made is the 1ˢᵗ .

**VIII.   COUNSEL FEE REQUIREMENTS:**

(a) Deponent requests for counsel fee and disbursements the sum of $50,000.
(b) Deponent has paid counsel the sum of $15,000 and has agreed with counsel concerning fees as follows: See attached retainer.

(c) There is a retainer agreement or written agreement relating to payment of legal fees. *(A copy of any such agreement must be annexed.)*

**IX.   ACCOUNTANT AND APPRAISAL FEES REQUIREMENTS:**

(a) Deponent requests for accountants' fees and disbursements the sum of $_____. *(Include the basis for fee, e.g., hourly rate, flat rate)*

(b) Deponent requests for appraisal fees and disbursements the sum of $_____. *(Include the basis for fee, e.g., hourly rate, flat rate)*

(c) Deponent requires the services of an accountant for the following reasons:

(d) Deponent requires the services of an appraiser for the following reasons:

X.     OTHER DATA CONCERNING THE FINANCIAL CIRCUMSTANCES OF THE
       PARTIES THAT SHOULD BE BROUGHT TO THE ATTENTION OF THE COURT
       ARE:

       The forgoing statements have been carefully read by the undersigned who states that they are true
and correct.

                                                    _____
                                                    CHARNIE ROSENBAUM

Affirmed to before me on
this 25ᵗʰ day of March 2013

_____
      Notary Public

ELLIOT J. ROSNER
Notary Public, State of New York
No. 02RO5252079
Qualified in New York County
Commission Expires November 28, 20___

16

## ATTORNEY CERTIFICATION

I, FRANKLYN H. SNITOW, HEREBY CERTIFY, under penalty of perjury and as an Officer of the Court, that to the best of my knowledge, information and belief, formed after an inquiry reasonable under the circumstances, that the information contained in the annexed Statement of Net Worth is not frivolous as that term is defined in Section 130-1.1(c) of the Rules of the Chief Administrator.

Dated: March 25, 2013
      New York, New York

_____
FRANKLYN H. SNITOW

17

| Form **1040** | Department of the Treasury — Internal Revenue Service   (99) | | | |
|---|---|---|---|---|

Form **1040**  Department of the Treasury — Internal Revenue Service   (99)
**U.S. Individual Income Tax Return**  **2012**  OMB No. 1545-0074  IRS Use Only — Do not write or staple in this space.

For the year Jan 1 - Dec 31, 2012, or other tax year beginning _____, 2012, ending _____, 20_____   **See separate instructions.**

| Your first name and initial | Last name | Your social security number |
|---|---|---|
| CHARNIE | ROSENBAUM | ███-██-4735 |

If a joint return, spouse's first name and initial   Last name   Spouse's social security number

Home address (number and street). If you have a P.O. box, see instructions.   Apartment no.

1150 E. 4TH ST

City, town or post office, state, and ZIP code. If you have a foreign address, also complete spaces below (see instructions).

BROOKLYN, NY 11230

Foreign country name   Foreign province/state/county   Foreign postal code

▲ Make sure the SSN(s) above and on line 6c are correct.

**Presidential Election Campaign**
Check here if you, or your spouse if filing jointly, want $3 to go to this fund? Checking a box below will not change your tax or refund.  ☐ You  ☐ Spouse

**Filing Status**
Check only one box.

1 ☐ Single
2 ☐ Married filing jointly (even if only one had income)
3 ☐ Married filing separately. Enter spouse's SSN above & full name here. ▶
4 ☒ Head of household (with qualifying person). (See instructions.) If the qualifying person is a child but not your dependent, enter this child's name here. ▶
5 ☐ Qualifying widow(er) with dependent child

**Exemptions**

6a ☒ Yourself. If someone can claim you as a dependent, do not check box 6a..........
b ☐ Spouse ............................................................

Boxes checked on 6a and 6b ........ **1**

| c Dependents: | | (2) Dependent's social security number | (3) Dependent's relationship to you | (4) ✓ if child under age 17 qualifying for child tax cr (see instrs) |
|---|---|---|---|---|
| **(1) First name** | **Last name** | | | |
| D████ F███████ | | ███-██-6972 | Son | ☒ |
| E███ . F███████ | | ███-██-2663 | Daughter | ☒ |

No. of children on 6c who:
• lived with you ....... **2**
• did not live with you due to divorce or separation (see instrs) ...
Dependents on 6c not entered above ...

If more than four dependents, see instructions and check here .. ☐

Add numbers on lines above ▶ **3**

d Total number of exemptions claimed..................................................

| **Income** | | | | |
|---|---|---|---|---|
| Attach Form(s) W-2 here. Also attach Forms W-2G and 1099-R if tax was withheld. | 7 Wages, salaries, tips, etc. Attach Form(s) W-2................................. | **7** | 42,539. |
| | 8a Taxable interest. Attach Schedule B if required............................. | **8a** | |
| | b Tax-exempt interest. Do not include on line 8a ............. 8b | | |
| | 9a Ordinary dividends. Attach Schedule B if required............................ | **9a** | |
| | b Qualified dividends .................... 9b | | |
| | 10 Taxable refunds, credits, or offsets of state and local income taxes................. | **10** | |
| | 11 Alimony received............................................................. | **11** | |
| If you did not get a W-2, see instructions. | 12 Business income or (loss). Attach Schedule C or C-EZ......................... | **12** | −4,580. |
| | 13 Capital gain or (loss). Att Sch D if reqd. If not reqd, ck here ........ ▶ ☐ | **13** | |
| | 14 Other gains or (losses). Attach Form 4797.................................. | **14** | |
| | 15a IRA distributions............ 15a | b Taxable amount.......... | **15b** | |
| | 16a Pensions and annuities....... 16a | b Taxable amount.......... | **16b** | |
| Enclose, but do not attach, any payment. Also, please use Form 1040-V. | 17 Rental real estate, royalties, partnerships, S corporations, trusts, etc. Attach Schedule E. | **17** | |
| | 18 Farm income or (loss). Attach Schedule F.................................... | **18** | |
| | 19 Unemployment compensation.................................................. | **19** | |
| | 20a Social security benefits......... 20a | b Taxable amount.......... | **20b** | |
| | 21 Other income _____ | **21** | |
| | 22 Combine the amounts in the far right column for lines 7 through 21. This is your **total income**............. ▶ | **22** | 37,959. |
| **Adjusted Gross Income** | 23 Educator expenses..................................... 23 | | |
| | 24 Certain business expenses of reservists, performing artists, and fee-basis government officials. Attach Form 2106 or 2106-EZ.......... 24 | | |
| | 25 Health savings account deduction. Attach Form 8889 ....... 25 | | |
| | 26 Moving expenses. Attach Form 3903........................ 26 | | |
| | 27 Deductible part of self-employment tax. Attach Schedule SE ....... 27 | | |
| | 28 Self-employed SEP, SIMPLE, and qualified plans........... 28 | | |
| | 29 Self-employed health insurance deduction.................. 29 | | |
| | 30 Penalty on early withdrawal of savings.................... 30 | | |
| | 31a Alimony paid b Recipient's SSN ▶ _____ 31a | | |
| | 32 IRA deduction........................................... 32 | | |
| | 33 Student loan interest deduction........................... 33 | | |
| | 34 Tuition and fees. Attach Form 8917........................ 34 | | |
| | 35 Domestic production activities deduction. Attach Form 8903. 35 | | |
| | 36 Add lines 23 through 35.................................................... | **36** | 0. |
| | 37 Subtract line 36 from line 22. This is your **adjusted gross income** ................. ▶ | **37** | 37,959. |

BAA  For Disclosure, Privacy Act, and Paperwork Reduction Act Notice, see separate instructions.   FDIA0112L  01/11/13   Form 1040 (2012)

Form 1040 (2012)   CHARNIE ROSENBAUM                              ████-4735   Page **2**

| | Tax and Credits | | | | |
|---|---|---|---|---|---|
| | 38 | Amount from line 37 (adjusted gross income) .......................... | **38** | 37,959. |

| | | | | |
|---|---|---|---|---|
| **Standard Deduction for —** <br>• People who check any box on line 39a or 39b or who can be claimed as a dependent, see instructions. <br>• All others: <br>Single or Married filing separately, $5,950 <br>Married filing jointly or Qualifying widow(er), $11,900 <br>Head of household, $8,700 | 39a Check if: ☐ You were born before January 2, 1948, ☐ Blind. Total boxes ☐ Spouse was born before January 2, 1948, ☐ Blind. checked. ▶ 39a | | |
| | b If your spouse itemizes on a separate return or you were a dual-status alien, check here .. ▶ 39b | | |
| | 40 Itemized deductions (from Schedule A) or your standard deduction (see left margin).......... | **40** | 8,700. |
| | 41 Subtract line 40 from line 38 ........................................ | **41** | 29,259. |
| | 42 Exemptions. Multiply $3,800 by the number on line 6d............... | **42** | 11,400. |
| | 43 Taxable income. Subtract line 42 from line 41. If line 42 is more than line 41, enter -0-. | **43** | 17,859. |
| | 44 Tax (see instrs). Check if any from: a ☐ Form(s) 8814   c ☐ 962 election  b ☐ Form 4972...................................... | **44** | 2,061. |
| | 45 Alternative minimum tax (see instructions). Attach Form 6251.......... | **45** | 0. |
| | 46 Add lines 44 and 45 ............................................. ▶ | **46** | 2,061. |

| | 47 Foreign tax credit. Attach Form 1116 if required ........... | 47 | | | |
|---|---|---|---|---|---|
| | 48 Credit for child and dependent care expenses. Attach Form 2441 ... | 48 | | | |
| | 49 Education credits from Form 8863, line 19 ............. | 49 | | | |
| | 50 Retirement savings contributions credit. Attach Form 8880 ... | 50 | 200. | | |
| | 51 Child tax credit. Attach Schedule 8812, if required......... | 51 | 1,861. | | |
| | 52 Residential energy credits. Attach Form 5695............. | 52 | | | |
| | 53 Other crs from Form: a ☐ 3800 b ☐ 8801 c ☐ | 53 | | | |
| | 54 Add lines 47 through 53. These are your total credits.................... | | | **54** | 2,061. |
| | 55 Subtract line 54 from line 46. If line 54 is more than line 46, enter -0-............ ▶ | | | **55** | 0. |

| **Other Taxes** | | | | |
|---|---|---|---|---|
| | 56 Self-employment tax. Attach Schedule SE............................. | | **56** | |
| | 57 Unreported social security and Medicare tax from Form: a ☐ 4137 b ☐ 8919.... | | **57** | |
| | 58 Additional tax on IRAs, other qualified retirement plans, etc. Attach Form 5329 if required.... | | **58** | |
| | 59a Household employment taxes from Schedule H................. | | **59a** | |
| | b First-time homebuyer credit repayment. Attach Form 5405 if required............. | | **59b** | |
| | 60 Other taxes. Enter code(s) from instructions — — — — — — — — — — — ▶ | | **60** | |
| | 61 Add lines 55-60. This is your total tax.......................... ▶ | | **61** | 0. |

| **Payments** <br>If you have a qualifying child, attach Schedule EIC. | | | | |
|---|---|---|---|---|
| | 62 Federal income tax withheld from Forms W-2 and 1099 ..... | 62 | 3,331. | |
| | 63 2012 estimated tax payments and amount applied from 2011 return........ | 63 | | |
| | 64a Earned income credit (EIC).............. | 64a | 838. | |
| | b Nontaxable combat pay election..... | 64b | | |
| | 65 Additional child tax credit. Attach Schedule 8812 ........... | 65 | 139. | |
| | 66 American opportunity credit from Form 8863, line 8......... | 66 | | |
| | 67 Reserved ...................................... | 67 | | |
| | 68 Amount paid with request for extension to file................. | 68 | | |
| | 69 Excess social security and tier 1 RRTA tax withheld......... | 69 | | |
| | 70 Credit for federal tax on fuels. Attach Form 4136......... | 70 | | |
| | 71 Credits from Form: a ☐ 2439 b ☐ Reserved c ☐ 8801 d ☐ 8885. | 71 | | |
| | 72 Add lns 62, 63, 64a, & 65-71. These are your total pmts................ ▶ | | | **72** | 4,308. |

| **Refund** <br>Direct deposit? See instructions. | | | | |
|---|---|---|---|---|
| | 73 If line 72 is more than line 61, subtract line 61 from line 72. This is the amount you overpaid.......... | | **73** | 4,308. |
| | 74a Amount of line 73 you want refunded to you. If Form 8888 is attached, check here . ▶ ☐ | | **74a** | 4,308. |
| | ▶ b Routing number ....... ██████0584   ▶ c Type: ☒ Checking ☐ Savings | | | |
| | ▶ d Account number ....... █████4694 | | | |
| | 75 Amount of line 73 you want applied to your 2013 estimated tax ......... ▶ 75 | | | |

| **Amount You Owe** | | | | |
|---|---|---|---|---|
| | 76 Amount you owe. Subtract line 72 from line 61. For details on how to pay see instructions ........ ▶ | | **76** | |
| | 77 Estimated tax penalty (see instructions)................... | 77 | | |

| **Third Party Designee** | | | | |
|---|---|---|---|---|
| | Do you want to allow another person to discuss this return with the IRS (see instructions)?.......... ☒ Yes. Complete below. ☐ No | | | |
| | Designee's name ▶ Y. E. GROSS   Phone no. ▶ 718 972-1002   Personal identification number (PIN) ▶ 11252 | | | |

**Sign Here**
Joint return? See instructions.
Keep a copy for your records.

Under penalties of perjury, I declare that I have examined this return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

| Your signature ▶ | Date | Your occupation <br>EXECUTIVE ASSISTAN | Daytime phone number |
|---|---|---|---|
| Spouse's signature. If a joint return, both must sign. ▶ | Date | Spouse's occupation | |

**Paid Preparer Use Only**

| Print/Type preparer's name <br>Y. E. GROSS | Preparer's signature <br>Y. E. GROSS | Date | Check ☒ if self-employed | PTIN <br>█████2034 |
|---|---|---|---|---|
| Firm's name ▶ Y. E. Gross, CPA | | | Firm's EIN ▶ ██████0608 | |
| Firm's address ▶ 1164 58TH ST <br>BROOKLYN, NY 11219 | | | Phone no. (718) 972-1002 | |

FDIA0112L  01/11/13                                    Form **1040** (2012)

| SCHEDULE C<br>(Form 1040) | **Profit or Loss From Business**<br>(Sole Proprietorship) | | OMB No. 1545-0074 |
|---|---|---|---|
| Department of the Treasury<br>Internal Revenue Service (99) | ►For information on Schedule C and its instructions, go to *www.irs.gov/schedulec*.<br>►Attach to Form 1040, 1040NR, or 1041; partnerships generally must file Form 1065. | | **2012**<br>Attachment<br>Sequence No. **09** |

**Name of proprietor**
CHARNIE ROSENBAUM

**Social security number (SSN)**
▓▓▓-4735

**A** Principal business or profession, including product or service (see instructions)
LASER ELECTROLYSIS

**B** Enter code from instructions
► 812190

**C** Business name. If no separate business name, leave blank.
SMOOTH & SILKY LLC

**D** Employer ID number (EIN), (see instrs)
▓▓▓1127

**E** Business address (including suite or room no.) ►1524 57TH ST
City, town or post office, state, and ZIP code   BROOKLYN, NY 11219

**F** Accounting method: (1) [X] Cash  (2) [ ] Accrual  (3) [ ] Other (specify) ►

**G** Did you 'materially participate' in the operation of this business during 2012? If 'No,' see instructions for limit on losses. [X] Yes [ ] No

**H** If you started or acquired this business during 2012, check here ............................................................. ► [ ]

**I** Did you make any payments in 2012 that would require you to file Form(s) 1099? (see instructions) .................. [ ] Yes [X] No

**J** If 'Yes,' did you or will you file all required Forms 1099? ........................................................... [ ] Yes [ ] No

**Part I   Income**

| | | | |
|---|---|---|---|
| 1 | Gross receipts or sales. See instructions for line 1 and check the box if this income was reported to you<br>on Form W-2 and the 'Statutory employee' box on that form was checked ............................ ► [ ] | **1** | 24,525. |
| 2 | Returns and allowances (see instructions) ........................................................... | **2** | |
| 3 | Subtract line 2 from line 1 ...................................................................... | **3** | 24,525. |
| 4 | Cost of goods sold (from line 42) ................................................................ | **4** | |
| 5 | Gross profit. Subtract line 4 from line 3 ........................................................ | **5** | 24,525. |
| 6 | Other income, including federal and state gasoline or fuel tax credit or refund<br>(see instructions) .............................................................................. | **6** | |
| 7 | Gross income. Add lines 5 and 6 ............................................................... ► | **7** | 24,525. |

**Part II   Expenses. Enter expenses for business use of your home only on line 30.**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 8 | Advertising ................. | **8** | 6,012. | 18 | Office expense (see instructions) ....... | **18** | |
| 9 | Car and truck expenses<br>(see instructions) ............. | **9** | | 19 | Pension and profit-sharing plans ....... | **19** | |
| 10 | Commissions and fees ......... | **10** | | 20 | Rent or lease (see instructions): | | |
| 11 | Contract labor<br>(see instructions) ............. | **11** | | a | Vehicles, machinery, and equipment .... | **20a** | |
| 12 | Depletion ................... | **12** | | b | Other business property .............. | **20b** | 6,000. |
| 13 | Depreciation and section<br>179 expense deduction<br>(not included in Part III)<br>(see instructions) ............. | **13** | 10,341. | 21 | Repairs and maintenance ............. | **21** | 2,385. |
| | | | | 22 | Supplies (not included in Part III) ...... | **22** | 450. |
| | | | | 23 | Taxes and licenses .................. | **23** | |
| 14 | Employee benefit programs<br>(other than on line 19) ....... | **14** | | 24 | Travel, meals, and entertainment: | | |
| | | | | a | Travel ............................. | **24a** | 1,875. |
| 15 | Insurance (other than health) .. | **15** | 1,211. | b | Deductible meals and entertainment<br>(see instructions) .................. | **24b** | |
| 16 | Interest: | | | 25 | Utilities ........................... | **25** | 732. |
| a | Mortgage (paid to banks, etc.) ... | **16a** | | 26 | Wages (less employment credits) ...... | **26** | |
| b | Other ..................... | **16b** | | 27a | Other expenses (from line 48) ......... | **27a** | 99. |
| 17 | Legal & professional services .. | **17** | | b | Reserved for future use ............. | **27b** | |
| 28 | Total expenses before expenses for business use of home. Add lines 8 through 27a ..................... ► | | | | | **28** | 29,105. |
| 29 | Tentative profit or (loss). Subtract line 28 from line 7 ...................................................... | | | | | **29** | -4,580. |
| 30 | Expenses for business use of your home. Attach Form 8829. Do not report such expenses elsewhere ...... | | | | | **30** | |
| 31 | Net profit or (loss). Subtract line 30 from line 29.<br>● If a profit, enter on both Form 1040, line 12 (or Form 1040NR, line 13) and on<br>Schedule SE, line 2. If you checked the box on line 1, see instructions). Estates<br>and trusts, enter on Form 1041, line 3.<br>● If a loss, you must go to line 32. | | | | | **31** | -4,580. |

| | |
|---|---|
| 32 If you have a loss, check the box that describes your investment in this activity (see instructions).<br><br>● If you checked 32a, enter the loss on both Form 1040, line 12, (or Form 1040NR, line 13) and on<br>Schedule SE, line 2. (If you checked the box on line 1, see the instructions for line 31.) Estates and<br>trusts, enter on Form 1041, line 3.<br>● If you checked 32b, you must attach Form 6198. Your loss may be limited. | **32a** [X] All investment is<br>at risk.<br>**32b** [ ] Some investment<br>is not at risk. |

**BAA   For Paperwork Reduction Act Notice, see your tax return instructions.**         FDIZ0112L   01/03/13                Schedule C (Form 1040) 2012

Schedule C (Form 1040) 2012 CHARNIE ROSENBAUM                                    ▓▓▓▓▓-4735          Page 2

**Part III  Cost of Goods Sold** (see instructions)

33  Method(s) used to value closing inventory:  a ☐ Cost  b ☐ Lower of cost or market  c ☐ Other (attach explanation)

34  Was there any change in determining quantities, costs, or valuations between opening and closing inventory?
    If 'Yes,' attach explanation.................................................................................... ☐ Yes ☐ No

| | | |
|---|---|---|
| 35  Inventory at beginning of year. If different from last year's closing inventory, attach explanation............................. | 35 | |
| 36  Purchases less cost of items withdrawn for personal use............................... | 36 | |
| 37  Cost of labor. Do not include any amounts paid to yourself.......................... | 37 | |
| 38  Materials and supplies........................................................... | 38 | |
| 39  Other costs.................................................................... | 39 | |
| 40  Add lines 35 through 39........................................................ | 40 | |
| 41  Inventory at end of year........................................................ | 41 | |
| 42  Cost of goods sold. Subtract line 41 from line 40. Enter the result here and on line 4............ | 42 | |

**Part IV  Information on Your Vehicle.** Complete this part only if you are claiming car or truck expenses on line 9 and are not required to file Form 4562 for this business. See the instructions for line 13 to find out if you must file Form 4562.

43  When did you place your vehicle in service for business purposes? (month, day, year)  ▶ _____

44  Of the total number of miles you drove your vehicle during 2012, enter the number of miles you used your vehicle for:

   a Business _____  b Commuting (see instructions) _____  c Other _____

45  Was your vehicle available for personal use during off-duty hours?....................................... ☐ Yes ☐ No

46  Do you (or your spouse) have another vehicle available for personal use?................................. ☐ Yes ☐ No

47a Do you have evidence to support your deduction?....................................................... ☐ Yes ☐ No

   b If 'Yes,' is the evidence written?.................................................................. ☐ Yes ☐ No

**Part V  Other Expenses.** List below business expenses not included on lines 8-26 or line 30.

| | |
|---|---|
| Bank Charges | 99. |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| 48  Total other expenses. Enter here and on line 2/a............................ | 48  99. |

Schedule C (Form 1040) 2012

FDIZ0112L  01/03/13

| SCHEDULE EIC<br>(Form 1040A or 1040)<br><br>Department of the Treasury<br>Internal Revenue Service   (99) | **Earned Income Credit**<br>Qualifying Child Information<br>▶ *Complete and attach to Form 1040A or 1040 only if you have a qualifying child.*<br>▶ *Information about Schedule EIC (Form 1040A or 1040) and its instructions is at www.irs.gov/form1040.* | OMB No. 1545-0074<br><br>**2012**<br>Attachment<br>Sequence No.  **43** |

Name(s) shown on return

CHARNIE ROSENBAUM

Your social security number

████-4735

**Before you begin:**
- See the instructions for Form 1040A, lines 38a and 38b, or Form 1040, lines 64a and 64b, to make sure that (a) you can take the EIC and (b) you have a qualifying child.
- Be sure the child's name on line 1 and social security number (SSN) on line 2 agree with the child's social security card. Otherwise, at the time we process your return, we may reduce or disallow your EIC. If the name or SSN on the child's social security card is not correct, call the Social Security Administration at 1-800-772-1213.

**CAUTION!**
- If you take the EIC even though you are not eligible, you may not be allowed to take the credit for up to 10 years. See the instructions for details.
- It will take us longer to process your return and issue your refund if you do not fill in all lines that apply for each qualifying child.

| Qualifying Child Information | Child 1 | Child 2 | Child 3 |
|---|---|---|---|
| **1  Child's name**<br>If you have more than three qualifying children, you only have to list three to get the maximum credit . . . . . . . . . . . . . . . . . . . . . | First name    Last name<br><br>E████ . F████ | First name    Last name<br><br>D████ F████ | First name    Last name |
| **2  Child's SSN**<br>The child must have an SSN as defined in the instructions for Form 1040A, lines 38a and 38b, or Form 1040, lines 64a and 64b, unless the child was born and died in 2012. If your child was born and died in 2012 and did not have an SSN, enter 'Died' on this line and attach a copy of the child's birth certificate, death certificate, or hospital medical records. | ████-2663 | ████-6972 | |
| **3  Child's year of birth** | Year  **2004**<br>*If born after 1993 and the child was younger than you (or your spouse, if filing jointly), skip lines 4a and 4b; go to line 5.* | Year  **2003**<br>*If born after 1993 and the child was younger than you (or your spouse, if filing jointly), skip lines 4a and 4b; go to line 5.* | Year<br>*If born after 1993 and the child was younger than you (or your spouse, if filing jointly), skip lines 4a and 4b; go to line 5.* |
| **4a** Was the child under age 24 at the end of 2012, a student, and younger than you (or your spouse, if filing jointly)? . . . . . . . . . . . . . . . | ☐ Yes.   ☐ No.<br>Go to     Go to line 4b.<br>line 5. | ☐ Yes.   ☐ No.<br>Go to     Go to line 4b.<br>line 5. | ☐ Yes.   ☐ No.<br>Go to     Go to line 4b.<br>line 5. |
| **b** Was the child permanently and totally disabled during any part of 2012? . . . . . . . . . . | ☐ Yes.   ☐ No.<br>Go to     The child is not a<br>line 5.    qualifying child. | ☐ Yes.   ☐ No.<br>Go to     The child is not a<br>line 5.    qualifying child. | ☐ Yes.   ☐ No.<br>Go to     The child is not a<br>line 5.    qualifying child. |
| **5  Child's relationship to you**<br>(for example, son, daughter, grandchild, niece, nephew, foster child, etc) . . . . . . . . . . . | Daughter | Son | |
| **6  Number of months child lived with you in the United States during 2012**<br>• If the child lived with you for more than half of 2012 but less than 7 months, enter '7'.<br>• If the child was born or died in 2012 and your home was the child's home for more than half the time he or she was alive during 2012, enter '12' . . . . . . . . . . . . . . . | __12__ months<br>*Do not enter more than 12 months.* | __12__ months<br>*Do not enter more than 12 months.* | ____ months<br>*Do not enter more than 12 months.* |

**BAA  For Paperwork Reduction Act Notice, see your tax return instructions.**          Schedule EIC (Form 1040A or 1040) 2012

FDIA7401L  10/31/12

| SCHEDULE 8812<br>(Form 1040A or 1040) | **Child Tax Credit** | OMB No. 1545-0074 |
|---|---|---|
| Department of the Treasury<br>Internal Revenue Service   (99) | ► Attach to Form 1040, Form 1040A, or Form 1040NR.<br>► Information about Schedule 8812 and its separate instructions is at *www.irs.gov/form1040* | **2012**<br>Attachment<br>Sequence No.  **47** |

Name(s) shown on return

CHARNIE ROSENBAUM

Your social security number
-4735

## Part I   Filers Who Have Certain Child Dependent(s) with an ITIN (Individual Taxpayer Identification Number)

**CAUTION!** Complete this part only for each dependent who has an ITIN and for whom you are claiming the child tax credit.
If your dependent does not qualify for the credit, you cannot include that dependent in the calculation of this credit.

Answer the following questions for each dependent listed on Form 1040, line 6c; Form 1040A, line 6c; or Form 1040NR, line 7c, who has an ITIN (Individual Taxpayer Identification Number) and that you indicated qualified for the child tax credit by checking column (4) for that dependent.

**A**  For the first dependent identified with an ITIN and listed as a qualifying child for the child tax credit, did this child meet the substantial presence test? See separate instructions.

☐ Yes    ☐ No

**B**  For the second dependent identified with an ITIN and listed as a qualifying child for the child tax credit, did this child meet the substantial presence test? See separate instructions.

☐ Yes    ☐ No

**C**  For the third dependent identified with an ITIN and listed as a qualifying child for the child tax credit, did this child meet the substantial presence test? See separate instructions.

☐ Yes    ☐ No

**D**  For the fourth dependent identified with an ITIN and listed as a qualifying child for the child tax credit, did this child meet the substantial presence test? See separate instructions.

☐ Yes    ☐ No

**Note.** If you have more than four dependents identified with an ITIN and listed as a qualifying child for the child tax credit, see the instructions and check here ............................................................. ► ☐

## Part II   Additional Child Tax Credit Filers

| | | |
|---|---|---|
| **1**  **1040 filers:**   Enter the amount from line 6 of your Child Tax Credit Worksheet (see the Instructions for Form 1040, line 51).<br> **1040A filers:**   Enter the amount from line 6 of your Child Tax Credit Worksheet (see the Instructions for Form 1040A, line 33).<br> **1040NR filers:**   Enter the amount from line 6 of your Child Tax Credit Worksheet (see the Instructions for Form 1040NR, line 48).<br><br>If you used Pub 972, enter the amount from line 8 of the Child Tax Credit Worksheet in the publication. | **1** | 2,000. |
| **2**  Enter the amount from Form 1040, line 51, Form 1040A, line 33, or Form 1040NR, line 48 ............... | **2** | 1,861. |
| **3**  Subtract line 2 from line 1. If zero, **stop**; you cannot take this credit ............................. | **3** | 139. |

| | | | |
|---|---|---|---|
| **4a** Earned income (see separate instructions) ............................. | **4a** | 37,959. | |
| **b** Nontaxable combat pay (see separate instrs) ...... | **4b** | | |
| **5**  Is the amount on line 4a more than $3,000?<br>☐ **No.** Leave line 5 blank and enter -0- on line 6.<br>☒ **Yes.** Subtract $3,000 from the amount on line 4a. Enter the result ......... | **5** | 34,959. | |
| **6**  Multiply the amount on line 5 by 15% (.15) and enter the result ................................... | **6** | 5,244. | |

**Next.** Do you have three or more qualifying children?

☒ **No.** If line 6 is zero, **stop**; you cannot take this credit. Otherwise, skip Part III and enter the smaller of line 3 or line 6 on line 13.

☐ **Yes.** If line 6 is equal to or more than line 3, skip Part III and enter the amount from line 3 on line 13. Otherwise, go to line 7.

BAA   For Paperwork Reduction Act Notice, see your tax return instructions.   FDIA3001L  11/19/12          Schedule 8812 (Form 1040A or 1040) 2012

Schedule 8812 (Form 1040A or 1040) 2012 CHARNIE ROSENBAUM

▆▆▆-4735   Page 2

## Part III  Certain Filers Who Have Three or More Qualifying Children



| | | |
|---|---|---|
| 7 | Withheld social security and Medicare taxes from Form(s) W-2, boxes 4 and 6. If married filing jointly, include your spouse's amounts with yours. If you worked for a railroad, see separate instructions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 7 |
| 8 | **1040 filers:**    Enter the total of the amounts from Form 1040, lines 27 and 57, plus any taxes that you identified using code 'UT' and entered on line 60. | 8 |
| | **1040A filers:**   Enter -0-. | |
| | **1040NR filers:**  Enter the total of the amounts from Form 1040NR, lines 27 and 55, plus any taxes that you identified using code 'UT' and entered on line 59. | |
| 9 | Add lines 7 and 8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 9 |
| 10 | **1040 filers:**    Enter the total of the amounts from Form 1040, lines 64a and 69. | |
| | **1040A filers:**   Enter the total of the amount from Form 1040A, line 38a, plus any excess social security and tier 1 RRTA taxes withheld that you entered to the left of line 41 (see separate instructions). | 10 |
| | **1040NR filers:**  Enter the amount from Form 1040NR, line 65. | |
| 11 | Subtract line 10 from line 9. If zero or less, enter -0- . . . . . . . . . . . . . . . . . . . . . . . | 11 |
| 12 | Enter the **larger** of line 6 or line 11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 12 |
| | Next, enter the **smaller** of line 3 or line 12 on line 13. | |

## Part IV  Additional Child Tax Credit

| | | |
|---|---|---|
| 13 | This is your additional child tax credit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 13 | 139. |

Enter this amount on
Form 1040, line 65,
Form 1040A, line 39, or
Form 1040NR, line 63.

FDIA3001L  11/19/12                    Schedule 8812 (Form 1040A or 1040) 2012

Form **8867**

Department of the Treasury
Internal Revenue Service

## Paid Preparer's Earned Income Credit Checklist

► To be completed by preparer and filed with Form 1040, 1040A, or 1040EZ.
► Information about Form 8867 and its separate instructions is at *www.irs.gov/form8867.*

OMB No. 1545-1629

**2012**

Attachment
Sequence No. **177**

Taxpayer name(s) shown on return

CHARNIE ROSENBAUM

Taxpayer's social security number

[redacted]-4735

For the definitions of the following terms, see **Pub 596.**

● Investment Income  ● Qualifying Child  ● Earned Income  ● Full-time Student

**Part I  All Taxpayers**

| | | | |
|---|---|---|---|
| 1 | Enter preparer's name and PTIN  ► Y. E. GROSS _____ [redacted]2034 _____ | | |
| 2 | Is the taxpayer's filing status married filing separately?...................................................... | ☐ Yes | ☒ No |
| | ► If you checked 'Yes' on line 2, **stop;** the taxpayer **cannot** take the EIC. Otherwise, continue. | | |
| 3 | Does the taxpayer (and the taxpayer's spouse if filing jointly) have a social security number (SSN) that allows him or her to work or is valid for EIC purposes? See the instructions before answering.............................. | ☒ Yes | ☐ No |
| | ► If you checked 'No' on line 3, **stop;** the taxpayer **cannot** take the EIC. Otherwise, continue. | | |
| 4 | Is the taxpayer filing Form 2555 or Form 2555-EZ (relating to the exclusion of foreign earned income)?.......... | ☐ Yes | ☒ No |
| | ► If you checked 'Yes' on line 4, **stop;** the taxpayer **cannot** take the EIC. Otherwise, continue. | | |
| 5a | Was the taxpayer a nonresident alien for any part of 2012?.................................................... | ☐ Yes | ☒ No |
| | ► If you checked 'Yes' on line 5a, go to line 5b. Otherwise, skip line 5b and go to line 6. | | |
| b | Is the taxpayer's filing status married filing jointly?........................................................ | ☐ Yes | ☐ No |
| | ► If you checked 'Yes' on line 5a and 'No' on line 5b, stop; the taxpayer cannot take the EIC. Otherwise, continue. | | |
| 6 | Is the taxpayer's **investment income** more than $3,200? See Rule 6 in Pub 596 before answering.............. | ☐ Yes | ☒ No |
| | ► If you checked 'Yes' on line 6, **stop;** the taxpayer **cannot** take the EIC. Otherwise, continue. | | |
| 7 | Could the taxpayer, or the taxpayer's spouse if filing jointly, be a **qualifying child** of another person for 2012? If the taxpayer's filing status is married filing jointly, check 'No.' Otherwise, see Rule 10 (Rule 13 if the taxpayer does not have a qualifying child) in Pub 596 before answering.......................................................... | ☐ Yes | ☒ No |
| | ► If you checked 'Yes' on line 7, **stop;** the taxpayer **cannot** take the EIC. Otherwise, go to Part II or Part III, whichever applies. | | |

**BAA  For Paperwork Reduction Act Notice, see instructions.**

Form **8867** (2012)

Form 8867 (2012)    CHARNIE ROSENBAUM                               ████-4735    Page 2

| **Part III**  Taxpayers With a Child | Child 1 | Child 2 | Child 3 |
|---|---|---|---|
| **Caution.** If there is more than one child, complete lines 8 through 14 for one child before going to the next column. | | | |
| **8** Child's name ........................................... | E██████. | D█████ | |
| **9** Is the child the taxpayer's son, daughter, stepchild, foster child, brother, sister, stepbrother, stepsister, half brother, half sister, or a descendant of any of them? .................................... | ☒ Yes  ☐ No | ☒ Yes  ☐ No | ☐ Yes  ☐ No |
| **10** Is either of the following true?<br>• The child is unmarried, or<br>• The child is married, can be claimed as the taxpayer's dependent, and is not filing a joint return (or is filing it only as a claim for refund). ............................................................ | ☒ Yes  ☐ No | ☒ Yes  ☐ No | ☐ Yes  ☐ No |
| **11** Did the child live with the taxpayer in the United States for over half of the year? See the instructions before answering. ............... | ☒ Yes  ☐ No | ☒ Yes  ☐ No | ☐ Yes  ☐ No |
| **12** Was the child (at the end of 2012) —<br>• Under age 19 and younger than the taxpayer (or the taxpayer's spouse if the taxpayer files jointly),<br>• Under age 24, a full-time student, and younger than the taxpayer (or the taxpayer's spouse if the taxpayer files jointly), or<br>• Any age and permanently and totally disabled? .................... | ☒ Yes  ☐ No | ☒ Yes  ☐ No | ☐ Yes  ☐ No |
| ► If you checked 'Yes' on lines 9, 10, 11, and 12, the child is the taxpayer's qualifying child; go to line 13a. If you checked 'No' on line 9, 10, 11, or 12, the child is not the taxpayer's qualifying child; see the instructions for line 12. | | | |
| **13a** Could any other person check 'Yes' on lines 9, 10, 11, and 12 for the child? ............................................................ | ☐ Yes  ☒ No | ☐ Yes  ☒ No | ☐ Yes  ☐ No |
| ► If you checked 'No' on line 13a, go to line 14. Otherwise, go to line 13b. | | | |
| **b** Enter the child's relationship to the other person(s) ............... | | | |
| **c** Under the tiebreaker rules, is the child treated as the taxpayer's qualifying child? See the instructions before answering. ........... | ☐ Yes  ☐ No<br>☐ Don't know | ☐ Yes  ☐ No<br>☐ Don't know | ☐ Yes  ☐ No<br>☐ Don't know |
| ► If you checked 'Yes' on line 13c, go to line 14. If you checked 'No,' the taxpayer **cannot** take the EIC based on this child and cannot take the EIC for taxpayers who do not have a qualifying child. If there is more than one child, see the **Note** at the bottom of this page. If you checked 'Don't know,' explain to the taxpayer that, under the tiebreaker rules, the taxpayer's EIC and other tax benefits may be disallowed. Then, if the taxpayer wants to take the EIC based on this child, complete lines 14 and 15. If not, and there are no other qualifying children, the taxpayer cannot take the EIC, including the EIC for taxpayers without a qualifying child; do not complete Part III. If there is more than one child, see the **Note** at the bottom of this page. | | | |
| **14** Does the qualifying child have an SSN that allows him or her to work or is valid for EIC purposes? See the instructions before answering. ............................................................ | ☒ Yes  ☐ No | ☒ Yes  ☐ No | ☐ Yes  ☐ No |
| ► If you checked 'No' on line 14, the taxpayer **cannot** take the EIC based on this child and cannot take the EIC available to taxpayers without a qualifying child. If there is more than one child, see the **Note** at the bottom of this page. If you checked 'Yes' on line 14, continue. | | | |
| **15** Are the taxpayer's **earned income** and adjusted gross income each less than the limit that applies to the taxpayer for 2012? See Pub 596 for the limit. ............................................................ | | | ☒ Yes  ☐ No |
| ► If you checked 'No' on line 15, stop; the taxpayer cannot take the EIC. If you checked 'Yes' on line 15, the taxpayer can take the EIC. Complete Schedule EIC and attach it to the taxpayer's return. If there are two or three qualifying children with valid SSNs, list them on Schedule EIC in the same order as they are listed here. If the taxpayer's EIC was reduced or disallowed for a year after 1996, see Pub 596 to see if **Form 8862** must be filed. Go to line 20. | | | |
| **Note.** If you checked 'No' on line 13c or 14 but there is more than one child, complete lines 8 through 14 for the other child(ren) (but for no more than three qualifying children). Also do this if you checked 'Don't know' on line 13c and the taxpayer is not taking the EIC based on this child. | | | |

BAA                              FDIA4312L  09/11/12                      Form 8867 (2012)

Case 1:20-cv-09784-PGG   Document 1   Filed 11/20/20   Page 100 of 123

Form 8867 (2012)   CHARNIE ROSENBAUM                        -4735        Page 3

**Part III   Taxpayers Without a Qualifying Child**

16  Was the taxpayer's main home, and the main home of the taxpayer's spouse if filing jointly, in the United States for more than half the year? (Military personnel on extended active duty outside the United States are considered to be living in the United States during that duty period. See Pub 596.)..........................................   ☐ Yes  ☐ No

   ► If you checked 'No' on line 16, stop; the taxpayer **cannot** take the EIC. Otherwise, continue.

17  Was the taxpayer, or the taxpayer's spouse if filing jointly, at least age 25 but under age 65 at the end of 2012? See the instructions before answering.   ☐ Yes  ☐ No

   ► If you checked 'No' on line 17, stop; the taxpayer **cannot** take the EIC. Otherwise, continue.

18  Is the taxpayer, or the taxpayer's spouse if filing jointly, eligible to be claimed as a dependent on anyone else's federal income tax return for 2012? If the taxpayer's filing status is married filing jointly, check 'No,'............   ☐ Yes  ☐ No

   ► If you checked 'Yes' on line 18, stop; the taxpayer **cannot** take the EIC. Otherwise, continue.

19  Are the taxpayer's earned income and adjusted gross income each less than the limit that applies to the taxpayer for 2012? See Pub 596 for the limit...........................   ☐ Yes  ☐ No

   ► If you checked 'No' on line 19, stop; the taxpayer **cannot** take the EIC. If you checked 'Yes' on line 19, the taxpayer can take the EIC. If the taxpayer's EIC was reduced or disallowed for a year after 1996, see Pub 596 to find out if Form 8862 must be filed. Go to line 20.

**Part IV   Due Diligence Requirements**

20  Did you complete Form 8867 based on information provided by the taxpayer or reasonably obtained by you?.....   ☒ Yes  ☐ No

21  Did you complete the EIC worksheet found in the Form 1040, 1040A, or 1040EZ instructions (or your own worksheet that provides the same information as the 1040, 1040A, or 1040EZ worksheet)?...................   ☒ Yes  ☐ No

22  If any qualifying child was not the taxpayer's son or daughter, did you ask why the parents were not claiming the child and document the answer?........................   ☐ Yes  ☐ No  ☒ Does not apply

23  If the answer to question 13a is 'Yes' (indicating that the child lived for more than half the year with someone else who could claim the child for the EIC), did you explain the tiebreaker rules and possible consequences of another person claiming your client's qualifying child?........................   ☐ Yes  ☐ No  ☒ Does not apply

24  Did you ask this taxpayer any additional questions that are necessary to meet your knowledge requirement? See the instructions before answering.   ☐ Yes  ☐ No  ☒ Does not apply

   To comply with the EIC knowledge requirement, you must not know or have reason to know that any information used to determine the taxpayer's eligibility for, and the amount of, the EIC is incorrect. You may not ignore the implications of information furnished to or known by you, and you must make reasonable inquiries if the information furnished appears to be incorrect, inconsistent, or incomplete. At the time you make these inquiries, you must document in your files the inquiries you made and the taxpayer's responses.

25  Did you document the additional questions you asked and your client's answers?...........................   ☐ Yes  ☐ No  ☒ Does not apply

BAA

FDIA4312L  09/11/12                                Form 8867 (2012)

Form 8867 (2012)    CHARNIE ROSENBAUM                                    -4735          Page 4

**26** Which documents below, if any, did you rely on to determine EIC eligibility for the qualifying child(ren) listed on Schedule EIC? Check all that apply. Keep a copy of any documents you relied on. See the instructions before answering. If there is no qualifying child, check box a. If there is no disabled child, check box o.

**Residency of Qualifying Child(ren)**

| | | | |
|---|---|---|---|
| ☐ a | No qualifying child | ☐ i | Place of worship statement |
| ☐ b | School records or statement | ☐ j | Indian tribal official statement |
| ☐ c | Landlord or property management statement | ☐ k | Employer statement |
| ☐ d | Health care provider statement | ☐ l | Other (specify) ▼ |
| ☒ e | Medical records | | |
| ☐ f | Child care provider records | | |
| ☐ g | Placement agency statement | | |
| ☐ h | Social service records or statement | ☐ m | Did not rely on any documents, but made notes in file |
| | | ☐ n | Did not rely on any documents |

**Disability of Qualifying Child(ren)**

| | | | |
|---|---|---|---|
| ☒ o | No disabled child | ☐ s | Other (specify) ▼ |
| ☐ p | Doctor statement | | |
| ☐ q | Other health care provider statement | | |
| ☐ r | Social services agency or program statement | ☐ t | Did not rely on any documents, but made notes in file |
| | | ☐ u | Did not rely on any documents |

**27** If a Schedule C is included with this return, which documents or other information, if any, did you rely on to confirm the existence of the business and to figure the amount of Schedule C income and expenses reported on the return? Check all that apply. Keep a copy of any documents you relied on. See the instructions before answering. If there is no Schedule C, check box a.

**Documents or Other Information**

| | | | |
|---|---|---|---|
| ☐ a | No Schedule C | ☐ h | Bank statements |
| ☐ b | Business license | ☐ i | Reconstruction of income and expenses |
| ☐ c | Forms 1099 | ☐ j | Other (specify) ▼ |
| ☐ d | Records of gross receipts provided by taxpayer | | |
| ☐ e | Taxpayer summary of income | | |
| ☐ f | Records of expenses provided by taxpayer | ☐ k | Did not rely on any documents, but made notes in file |
| ☐ g | Taxpayer summary of expenses | ☒ l | Did not rely on any documents |

► You have complied with all the due diligence requirements if you:

1 Completed the actions described on lines 20 and 21 and checked 'Yes' on those lines,
2 Completed the actions described on lines 22, 23, 24, and 25 (if they apply) and checked 'Yes' (or 'Does not apply') on those lines,
3 Submit Form 8867 in the manner required, and
4 Keep all five of the following records for 3 years from the latest of the dates specified in the instructions under *Document Retention*:

   a Form 8857, Paid Preparer's Earned Income Credit Checklist,
   b The EIC worksheet(s) or your own worksheet(s),
   c Copies of any taxpayer documents you relied on to determine eligibility for or amount of EIC,
   d A record of how, when, and from whom the information used to prepare the form and worksheet(s) was obtained, and
   e A record of any additional questions you asked and your client's answers.

► If you checked 'No' on line 20, 21, 22, 23, 24, or 25, you have not complied with all the due diligence requirements and may have to pay a $500 penalty for each failure to comply.

BAA                                    FDIAA312L  09/11/12                              Form 8867 (2012)

Form **8880**

Department of the Treasury
Internal Revenue Service

**Credit for Qualified Retirement Savings Contributions**

► Attach to Form 1040, Form 1040A, or Form 1040NR.
► Information about Form 8880 and its instructions is at *www.irs.gov/form8880.*

OMB No. 1545-0074

**2012**

Attachment
Sequence No. 54

Name(s) shown on return

CHARNIE ROSENBAUM

Your social security number

▇▇-4735

**CAUTION! You cannot take this credit if either of the following applies.**

- The amount on Form 1040, line 38; Form 1040A, line 22; or Form 1040NR, line 37 is more than $28,750 ($43,125 if head of household; $57,500 if married filing jointly).

- The person(s) who made the qualified contribution or elective deferral (a) was born after January 1, 1995, (b) is claimed as a dependent on someone else's 2012 tax return, or (c) was a student (see instructions).

| | | | (a) You | | (b) Your spouse |
|---|---|---|---|---|---|
| 1 | Traditional and Roth IRA contributions for 2012. **Do not include** rollover contributions.................................. | 1 | | | |
| 2 | Elective deferrals to a 401(k) or other qualified employer plan, voluntary employee contributions, and 501(c)(18)(D) plan contributions for 2012 (see instructions)......................................... | 2 | 6,600. | | |
| 3 | Add lines 1 and 2................................ | 3 | 6,600. | | |
| 4 | Certain distributions received after 2009 and before the due date (including extensions) of your 2012 tax return (see instructions). If married filing jointly, include **both** spouses' amounts in **both** columns. See instructions for an exception .................................. | 4 | | | |
| 5 | Subtract line 4 from line 3. If zero or less, enter -0-................ | 5 | 6,600. | | |
| 6 | In each column, enter the **smaller** of line 5 or $2,000 .................. | 6 | 2,000. | | |
| 7 | Add the amounts on line 6. If zero, **stop;** you cannot take this credit................................... | 7 | | | 2,000. |
| 8 | Enter the amount from Form 1040, line 38*; Form 1040A, line 22; or Form 1040NR, line 37................................... | 8 | 37,959. | | |

9  Enter the applicable decimal amount shown below:

| If line 8 is — | | And your filing status is — | | | | |
|---|---|---|---|---|---|---|
| Over— | But not over — | Married filing jointly | Head of household | Single, Married filing separately, or Qualifying widow(er) | | |
| | | Enter on line 9 — | | | | |
| ... | $17,250 | .5 | .5 | .5 | | |
| $17,250 | $18,750 | .5 | .5 | .2 | | |
| $18,750 | $25,875 | .5 | .5 | .1 | 9 | X       0.1 |
| $25,875 | $28,125 | .5 | .2 | .1 | | |
| $28,125 | $28,750 | .5 | .1 | .1 | | |
| $28,750 | $34,500 | .5 | .1 | .0 | | |
| $34,500 | $37,500 | .2 | .1 | .0 | | |
| $37,500 | $43,125 | .1 | .1 | .0 | | |
| $43,125 | $57,500 | .1 | .0 | .0 | | |
| $57,500 | ... | .0 | .0 | .0 | | |

**Note:** *If line 9 is zero, stop; you cannot take this credit.*

| | | | | |
|---|---|---|---|---|
| 10 | Multiply line 7 by line 9............................... | | 10 | 200. |
| 11 | Enter the amount from Form 1040, line 46; Form 1040A, line 28; or Form 1040NR, line 44................................... | 11 | 2,061. | |
| 12 | 1040 filers: Enter the total of your credits from lines 47 through 49, and Schedule R, line 22.<br><br>1040A filers: Enter the total of your credits from lines 29 through 31.<br>1040NR filers: Enter the total of your credits from lines 45 and 46. | 12 | | |
| 13 | Subtract line 12 from line 11. If zero, **stop;** you cannot take this credit................................... | | 13 | 2,061. |
| 14 | **Credit for qualified retirement savings contributions.** Enter the **smaller** of line 10 or line 13 here and on Form 1040, line 50; or Form 1040A, line 32; or Form 1040NR, line 47 .................................. | | 14 | 200. |

*See Publication 590 for the amount to enter if you are filing Form 2555, 2555-EZ, or 4563 or you are excluding income from Puerto Rico.

BAA  **For Paperwork Reduction Act Notice, see your tax return instructions.**         FDIA9501L 01/10/13         Form **8880** (2012)

LAW OFFICES OF

## SNITOW KANFER HOLTZER & MILLUS, LLP

575 LEXINGTON AVENUE
NEW YORK, NEW YORK 10022-6102

TELEPHONE: (212) 317-8500
FACSIMILE: (212) 317-1308
WWW.SKHMLAW.COM

FRANKLYN H. SNITOW
STEWART J. EPSTEIN
MARK M. HOLTZER
KENNETH A. KANFER
PAUL F. MILLUS
DANIEL I. KAMINETSKY
ALISON M. TRAINOR
VIRGINIA K. TRUNKES
ALAN V. KLEIN
ELLIOT J. ROSNER

December 19, 2012

Ms. Charnie Festinger
1150 East 4th Street
Brooklyn, New York 11230

## RETAINER AGREEMENT

Re:   Festinger v. Festinger

Dear Ms. Festinger:

This letter will serve to confirm that you have retained our law firm to represent you in the above referenced matrimonial action involving your husband, Samuel.

The retainer fee is $15,000, receipt of which is hereby acknowledged. The initial retainer shall be applied against the hourly rates currently charged for professional services which are:

$600 per hour for Franklyn H. Snitow
$475 per hour for all other partners
$300 – $375 per hour for associate attorneys
$100 per hour for law clerks and paralegals

The retainer is paid for legal services and is utilized for immediate representation. Any modification of the rates set forth above shall be in a written agreement signed by all parties.

You will receive a billing statement (whether or not money is owed or credited) no less than once every 60 days and payment of additional fees owed, as and if incurred, is due within 30 days of said billing. Fees owed at the completion of the litigation shall be payable in full at the conclusion of the litigation. In the event a trial or hearing is necessitated, an up front payment based upon the estimated length of the trial or hearing shall be due and owing prior to the commencement of the trial or hearing.

SNITOW KANFER HOLTZER & MILLUS, LLP

Ms. Charnie Festinger
December 19, 2012
Page Two

       You understand that any time charges which you believe to be incorrect or in error which are reflected on the itemized bill must be brought to my attention, in writing, within thirty (30) days of receipt of the bill or the charges will be deemed correct. Payment shall be due within thirty (30) days from the time you receive the attorney's bill. In the event of a default in payment under this agreement, you agree to pay all collection costs reasonably incurred in the collection of the balance due, including reasonable attorney's fees which shall be fifteen (15%) per cent of the outstanding balance.

       In the event that any bill remains unpaid beyond a thirty (30) day period, you agree that my firm may withdraw its representation. In the event that an action is pending, and absent your consent, an application must be made to the Court for such withdrawal, where the fee is unpaid for the period set forth above, you acknowledge that in connection with any such withdrawal application, that the account delinquency shall be good cause for withdrawal.

       Under such circumstances I reserve my right to seek a charging lien from the Court. I may also seek a security interest in property owned by you, however, same may only be obtained upon Court approval and on notice to the other parties or counsel to the within litigation. In the event of a dispute as to monies owed or in the event of the withdrawal or discharge of the attorney, your file must be returned within 30 days, even if a balance is owed to counsel.

       You are advised that if, in the judgment of this firm, we decide that there has been an irretrievable breakdown in the attorney-client relationship, or a material breach of the terms of this Retainer Agreement, we may decide to make application to the court in which your action is pending to be relieved as your attorneys. In such event, you will be provided with notice of the application and an opportunity to be heard.

       You shall have the right to cancel this agreement at any time and the attorneys' fees shall be compared up to the last date of representation.

       Should a dispute arise concerning the attorney's fee, you may seek arbitration, which is binding upon both you and me; and I shall provide information concerning fee arbitration in the event of such dispute or upon the client's request.

       The services to be rendered terminate upon judgment of divorce and do not include appeals or any other actions or proceedings or out of pocket disbursements. Such disbursements include, without limitation, such items as court filing fees, process service, steno typists for depositions, accountants, appraisers, expert witnesses, detectives and the like, travel

SNITOW KANFER HOLTZER & MILLUS, LLP

Ms. Charnie Festinger
December 19, 2012
Page Three

expenses, photostats services, secretarial overtime, word processing, couriers, postage, etc.
Actual disbursements in excess of $275.00 will not be incurred without your prior knowledge,
consent and approval and in any event will be promptly billed to you as part of your monthly
statement.

You have the right to be provided with copies of all correspondence and legal
documents relating to the case and to be present at Court conferences, if permissible, and to be
kept apprised of the status of the case.

The minimum time charge for attorney activity shall be twelve minutes or .2.  In
the case of phone calls, the attorney will not charge any time for calls unless the attorney actually
speaks to the intended party.  There will be no attorney charge for time spent in discussion of the
bills and invoices received by you.

You understand that because of the nature of the attorney's practice, telephone
calls may not be immediately returned, and that you may schedule an appointment to meet with
the attorney to discuss the matter more fully.

You specifically acknowledge that no representations have been made to you,
express or implied, concerning the outcome of the litigation between you and your spouse.  You
further acknowledge that my firm has not guaranteed and cannot guarantee the success of any
action taken by the firm on your behalf during such litigation with respect to any matter therein,
including without limitation issues of spousal and/or child support, custody and/or visitation,
exclusive occupancy of the marital premises, equitable distribution of marital assets, the
declaration of separate property, counsel fees and/or a trial.

You acknowledge that you were provided with and read the Statement of Client's
Rights and Responsibilities, a copy of which is attached to this Retainer Agreement.

We have informed you that pursuant to court rule, we are required, as your
attorneys, to certify court papers submitted by you which contain statements of fact, and
specifically to certify that we have no knowledge that the substance of the submission is false.
Accordingly, you agree to provide us with complete and accurate information which forms the
basis of court papers and to certify in writing to us, prior to the time the papers are actually
submitted to the court, the accuracy of the court submissions which we prepare on your behalf,
and which you shall review and sign.

3

SNITOW KANFER HOLTZER & MILLUS, LLP

Ms. Charnie Festinger
December 19, 2012
Page Four

You have read and understand this agreement and received a signed copy of same.

Receipt Acknowledged:

SNITOW KANFER HOLTZER
   & MILLUS, LLP

By: _Franklyn H S_____      _Charnie Rosenbaum_
     Franklyn H. Snitow                         Client's Printed Name

Date: _Dec 19, 2012_____      _____
                                             Client's Signature

4

## STATEMENT OF CLIENT'S
## RIGHTS AND RESPONSIBILITIES

You are being provided with this document to inform you of what you, as a client, are entitled to by law or by custom.  To help prevent any misunderstanding between you and your attorney, please read this document carefully.

If you ever have any questions about these rights or about the way your case is being handled, do not hesitate to ask your attorney. He or she should be readily available to represent your best interests and keep you informed about your case.

An attorney may not refuse to represent you on the basis of race, creed, color, sex, sexual orientation, age, national origin or disability.

You are entitled to an attorney who will be capable of handling your case; show you courtesy and consideration at all times; represent you zealously; and preserve your confidences and secrets that are revealed in the course of the relationship.

You are entitled to a written retainer agreement which must set forth, in plain language, the nature of the relationship and the details of the fee arrangement.  At your request, and before you sign the agreement, you are entitled to have your attorney clarify in writing any of its terms or include additional provisions.

You are entitled to fully understand the proposed rates and retainer fee before you sign a retainer agreement, as in any other contract.

You may refuse to enter into any fee arrangement that you find to be unsatisfactory.

Your attorney may not request a retainer fee that is non-refundable.  That is, should you discharge your attorney, or should your attorney withdraw from the case, before the retainer is used up, he or she is entitled to be paid for the time spent on your case and any expenses, but must return the balance of the retainer to you.

You are entitled to know the approximate number of attorneys and other legal staff members who will be working on your case at any given time and what you will be charged for the services of each.

You are entitled to know, in advance, how you will be asked to pay legal fees and expenses and how the retainer, if any, will be spent.

Client's Initials _____

At your request, and after your attorney has had a reasonable opportunity to investigate your case, you are entitled to be given an estimate of approximate future costs of your case.

You are entitled to receive a written, itemized bill on a regular basis, at least every sixty (60) days.

You are expected to review the itemized bills sent by counsel and to raise any objections or errors in a timely manner. Time spent in discussion or explanation of bills will not be charged to you.

You are expected to be truthful in all discussions with your attorney and to provide all relevant information and documentation to enable him or her to competently prepare your case.

You are entitled to be kept informed of the status of your case and to be provided with copies of correspondence and documents prepared on your behalf or received from the court or your adversary.

You have the right to be present at court conferences unless a judge orders otherwise.

You are entitled to make the ultimate decision on the objectives to be pursued in your case and to make the final decision regarding the settlement of your case.

Your attorney's written retainer agreement must specify under what circumstances he or she might seek to withdraw as your attorney for non-payment of legal fees. Should your attorney seek to do so, or should you discharge your attorney for any reason, you have the right to obtain the release of your file. If an action is pending, the court may give your attorney a "charge lien" which entitles your attorney to payment for services already rendered at the end of the case out of the proceeds of your judgment, if any. If no action is pending, and your withdrawing attorney retains possession of the file, the attorney must return it within 30 days of withdrawal, but may then commence proceedings against you to recover any unpaid fee.

You are under no legal obligation to sign a confession of judgment or promissory note, or to agree to a lien or mortgage on your home to cover legal fees. Your attorney's written retainer agreement must specify whether, and under what circumstances, such security may be requested. In no event may such security interest be obtained by your attorney without prior court approval and notice to your adversary. An attorney's interest in the marital residence cannot be foreclosed against you.

You are entitled to have your attorney's best efforts exerted on your behalf, but not particular results can be guaranteed.

Client's Initials _____

2

If, at any time, you believe that your attorney has engaged in unethical conduct, you can report the matter to the clerk of the Appellate Division of the Supreme Court, which oversees lawyer discipline.

If you entrust money with an attorney for an escrow deposit in your case, the attorney must safeguard the escrow in a special bank account. You are entitled to a written escrow agreement and may request that one or more interest-bearing accounts be used. You also are entitled to a written receipt and a complete record concerning the escrow. When the terms of the escrow agreement have been performed, the attorney must promptly make payment of the escrow to all persons who are entitled to it.

In the event of a fee dispute, you have the right to seek arbitration. Your attorney will provide you with the necessary information regarding arbitration in the event of a fee dispute, or upon your request.

Receipt Acknowledged:

SNITOW KANFER
HOLTZER & MILLUS, LLP

By: _____   Dec 19, 2012   _____   12/19/12
Franklyn H. Snitow            Date        Charnie Festinger            Date

3

**EXHIBIT M**

Windows Live Hotmail                                                    Page 1 of 1

*Windows Live™*       Home   Profile   People   Mail   Photos   More ▾   MSN ▾   | Search the web |

**Hotmail**          New  |  Delete  |  Mark as ▾  |  Move to ▾  |          ♔ Messenger ▾  |  Op

charnief@hotmail.com     Reply   Reply all   Forward  |

Inbox (86)           RE:

Junk (48)            From:  ♀ charnie festinger (charnief@hotmail.com)
                     Sent:  Tue 9/22/09 3:26 PM
Drafts
                     To:    KROINDY MALACH (ataramalach@aol.com)
Sent
Deleted              YOU ARE DOING OK WITH ME
AMY
                     I AM NOT DOING OK WITH ME.
IMPORTANT E-M...
LIFE                 I AM DOING MANAGING EVERYTHING I HAVE TO DEAL WITH
SENT MESSAGES ...    HAS NOTHING TO DO WITH YOU
Manage folders       KNEW YOU WOULD GIVE ME THE CASH TO COVER IT...NEVER
Add an e-mail        THOUGHT YOU WOULD "TAKE" IT...........BUT IF I HAVE MY OWN CCEL
account              EARNED MOENY I COULD EXPLAIN THE MONEY IN MY ACCOUNT. IF
                     I ALL OF A SUDDEN DEPSOTI CASH......AT SOME POINT I MIGHT
Related places       HAVE TO EXPLAIN WHERE THE MONEY CAME FROM. THAT IS WHAT
Today                I MEANT.... WHEN I GET CASH I NEVER EVER DEPSOT IT OR I WOULD
Contact list         HAVE TO EXPLAIN ONE DAY. WHATEVER.....I WOULD HAVE DONE IT
Calendar             ANYWAY......YOU KNOW THAT....
                     SORRY YOU FEEL LIKE A FAILURE WITH ME...U ARE FAR FROM IT
Get cashback     I AM JUST TOO OVERWHELMED.....................CAN'T DO I ANYMORE
using Bing.
try it now ›         ————————————————————————————————
Privacy
                     To: charnief@hotmail.com
                     Subject: Re:
                     From: ataramalach@aol.com
                     Date: Tue, 22 Sep 2009 21:22:20 +0000

                     Don't worry. Totally understand. Feel like a failure big time this year
                     and felt that at least w u I was doing ok and then seeing that I was
                     the last thing u needed made me crash but it doesn't matter.
                     Nothing really does. About the loan, I never took anything from u
                     and told u I wd give u the cash. But don't worry its done. Try to relax
                     tonite. C u Sent on the Now Network℠ from my Sprint® BlackBerry

                     From: charnie festinger
                     Date: Tue, 22 Sep 2009 15:09:10 -0400
                     To: KROINDY MALACH <ataramalach@aol.com>
                     Subject: RE:

                     NEVER THOUGHT YOU MEANT TO MAKE ME UPSET.

                     I DID FEEL YOUR LOVE...THEN I CAME DOWN AND A BIT LATER

**EXHIBIT N**

**Fill in this information to identify the case:**

United States Bankruptcy Court for the:

Eastern District of New York

Case number (*if known*): _____ Chapter **11**

CLERK
U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF
NEW YORK

2020 SEP -9 P 2: 11

RECEIVED/DB

☐ Check if this is an
amended filing

Official Form 105

# Involuntary Petition Against an Individual

12/15

Use this form to begin a bankruptcy case against an individual you allege to be a debtor subject to an involuntary case. If you want to begin a case against a non-individual, use the *Involuntary Petition Against a Non-Individual* (Official Form 205). Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write name and case number (if known).

## Part 1:   Identify the Chapter of the Bankruptcy Code Under Which Petition Is Filed

| 1. | Chapter of the Bankruptcy Code | *Check one:*<br>☐ Chapter 7<br>☑ Chapter 11 |
|----|----|----|

## Part 2:   Identify the Debtor

| 2. | Debtor's full name | CHARNIE<br>First name<br><br>Middle name<br><br>ROSENBAUM<br>Last name<br><br>Suffix (Sr., Jr., II, III) |
|----|----|----|
| 3. | Other names you know the debtor has used in the last 8 years<br><br>Include any assumed, married, maiden, or trade names, or *doing business as* names. | CHARNIE  FESTINGER<br>CHARNIE  BIRNHACK |
| 4. | Only the last 4 digits of debtor's Social Security Number or federal Individual Taxpayer Identification Number (ITIN) | ☑ Unknown<br><br>xxx – xx – ___ ___ ___ ___     OR     9 xx – xx – ___ ___ ___ ___ |
| 5. | Any Employer Identification Numbers (EINs) used in the last 8 years | ☑ Unknown<br><br>EIN  __ __ – __ __ __ __ __ __ __<br><br>EIN  __ __ – __ __ __ __ __ __ __ |

Official Form 105                    Involuntary Petition Against an Individual                    page 1

Debtor   CHARNIE ROSENBAUM _____   Case number (if known)_____

| | | Principal residence | Mailing address, if different from residence |
|---|---|---|---|
| 6. | Debtor's address | | |

**Principal residence**

1150   EAST 4 STREET
_____
Number     Street

_____

BROOKLYN                NY    11230
_____
City                          State    ZIP Code

KINGS
_____
County

**Principal place of business**

1150   EAST 4 STREET
_____
Number     Street

_____

BROOKLYN                NY    11230
_____
City                          State    ZIP Code

KINGS
_____
County

**Mailing address, if different from residence**

_____
Number     Street

_____

_____
City                          State    ZIP Code

---

**7.   Type of business**

☐   Debtor does not operate a business

*Check one if the debtor operates a business:*

☐   Health Care Business (as defined in 11 U.S.C. § 101(27A))
☐   Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))
☐   Stockbroker (as defined in 11 U.S.C. § 101(53A))
☐   Commodity Broker (as defined in 11 U.S.C. § 101(6))
☑   None of the above

---

**8.   Type of debt**

**Each petitioner believes:**

☑   **Debts are primarily consumer debts.** *Consumer debts* are defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."

☐   **Debts are primarily business debts.** *Business debts* are debts that were incurred to obtain money for a business or investment or through the operation of the business or investment.

---

**9.   Do you know of any bankruptcy cases pending by or against any partner, spouse, or affiliate of this debtor?**

☑   No
☐   Yes. Debtor _____   Relationship _____
District _____ Date filed _____
MM / DD / YYYY
Case number, if known _____

Debtor _____   Relationship _____
District _____ Date filed _____
MM / DD / YYYY
Case number, if known _____

---

Debtor  **CHARNIE ROSENBAUM** _____   Case number (if known) _____

| Part 3: | Report About the Case |
|---|---|

**10. Venue**

Reason for filing in this court.

*Check one:*

☑ Over the last 180 days before the filing of this bankruptcy, the debtor has resided, had the principal place of business, or had principal assets in this district longer than in any other district.

☐ A bankruptcy case concerning debtor's affiliates, general partner, or partnership is pending in this district.

☐ Other reason. Explain. (See 28 U.S.C. § 1408.) _____

**11. Allegations**

Each petitioner is eligible to file this petition under 11 U.S.C. § 303(b).

The debtor may be the subject of an involuntary case under 11 U.S.C. § 303(a).

*At least one box must be checked:*

☑ The debtor is generally not paying such debtor's debts as they become due, unless they are the subject of a bona fide dispute as to liability or amount.

☐ Within 120 days before the filing of this petition, a custodian, other than a trustee, receiver, or agent appointed or authorized to take charge of less than substantially all of the property of the debtor for the purpose of enforcing a lien against such property, was appointed or took possession.

**12. Has there been a transfer of any claim against the debtor by or to any petitioner?**

☑ No

☐ Yes. Attach all documents that evidence the transfer and any statements required under Bankruptcy Rule 1003(a).

**13. Each petitioner's claim**

| Name of petitioner | Nature of petitioner's claim | | Amount of the claim above the value of any lien |
|---|---|---|---|
| BOAZ GAZIT | SERVICES RENDERED AND NOT PAID | $ | 100,000.00 |
| | | $ | |
| | | $ | |
| | Total | $ | 100,000.00 |

If more than 3 petitioners, attach additional sheets with the statement under penalty of perjury, each petitioner's (or representative's) signature under the statement, along with the signature of the petitioner's attorney, and the information on the petitioning creditor, the petitioner's claim, the petitioner's representative, and the attorney following the format on this form.

Debtor   <u>CHARNIE ROSENBAUM</u>                                 Case number (if known)_____

| Part 4: | Request for Relief |
| --- | --- |

Petitioners request that an order for relief be entered against the debtor under the chapter specified in Part 1 of this petition. If a petitioning creditor is a corporation, attach the corporate ownership statement required by Bankruptcy Rule 1010(b). If any petitioner is a foreign representative appointed in a foreign proceeding, a certified copy of the order of the court granting recognition is attached.

Petitioners declare under penalty of perjury that the information provided in this petition is true and correct. Petitioners understand that if they make a false statement, they could be fined up to $250,000 or imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571. If relief is not ordered, the court may award attorneys' fees, costs, damages, and punitive damages. 11 U.S.C. § 303(i).

**Petitioners or Petitioners' Representative**

✗ *Boaz Gazit*
_____
Signature of petitioner or representative, including representative's title

**BOAZ GAZIT**
_____
Printed name of petitioner

Date signed   09/03/2020
               MM / DD / YYYY

Mailing address of petitioner

**3807 AVENUE P**
_____
Number   Street

**BROOKLYN          NY      11234**
_____
City                State        ZIP Code

If petitioner is an individual and is not represented by an attorney:

Contact phone   **(917)945-1684**

Email   _____

Name and mailing address of petitioner's representative, if any

_____
Name

_____
Number   Street

_____
City                State        ZIP Code

**Attorneys**

✗ _____
Signature of attorney

_____
Printed name

_____
Firm name, if any

_____
Number   Street

_____
City                State        ZIP Code

Date signed   _____
               MM / DD / YYYY

Contact phone   _____   Email _____

Debtor   **CHARNIE ROSENBAUM** _____   Case number *(if known)* _____

---

✖ _____
Signature of petitioner or representative, including representative's title

_____
Printed name of petitioner

Date signed _____
            MM / DD /YYYY

**Mailing address of petitioner**

_____
Number   Street

_____
City                State          ZIP Code

**Name and mailing address of petitioner's representative, if any**

_____
Name

_____
Number   Street

_____
City       State ZIP Code

---

✖ _____
Signature of Attorney

_____
Printed name

_____
Firm name, if any

_____
Number   Street

_____
City                State          ZIP Code

Date signed _____
            MM / DD /YYYY

Contact phone _____   Email _____

---

✖ _____
Signature of petitioner or representative, including representative's title

_____
Printed name of petitioner

Date signed _____
            MM / DD /YYYY

**Mailing address of petitioner.**

_____
Number   Street

_____
City                State          ZIP Code

**Name and mailing address of petitioner's representative, if any**

_____
Name

_____
Number   Street

_____
City                State          ZIP Code

---

✖ _____
Signature of Attorney

_____
Printed name

_____
Firm name, if any

_____
Number   Street

_____
City                State          ZIP Code

Date signed _____
            MM / DD /YYYY

Contact phone _____   Email _____

---

**EXHIBIT O**

Fill in this information to identify the case:

United States Bankruptcy Court for the:

Eastern District of New York

Case number (if known): _____ Chapter __11__

CLERK
U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF
NEW YORK

2020 SEP -9 P 2:07

RECEIVED/DB☐ Check if this is an
amended filing

Official Form 105

# Involuntary Petition Against an Individual

12/15

Use this form to begin a bankruptcy case against an individual you allege to be a debtor subject to an involuntary case. If you want to begin a case against a non-individual, use the *Involuntary Petition Against a Non-Individual* (Official Form 205). Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write name and case number (if known).

## Part 1:   Identify the Chapter of the Bankruptcy Code Under Which Petition Is Filed

**1. Chapter of the Bankruptcy Code**

Check one:

☐ Chapter 7
☑ Chapter 11

## Part 2:   Identify the Debtor

**2. Debtor's full name**

SAMUEL
First name

_____
Middle name

FESTINGER
Last name

_____
Suffix (Sr., Jr., II, III)

**3. Other names you know the debtor has used in the last 8 years**

Include any assumed, married, maiden, or trade names, or *doing business as* names.

_____
_____
_____

**4. Only the last 4 digits of debtor's Social Security Number or federal Individual Taxpayer Identification Number (ITIN)**

☑ Unknown

xxx – xx – ___ ___ ___ ___      OR      9 xx – xx – ___ ___ ___ ___

**5. Any Employer Identification Numbers (EINs) used in the last 8 years**

☑ Unknown

EIN ___ ___ – ___ ___ ___ ___ ___ ___ ___

EIN ___ ___ – ___ ___ ___ ___ ___ ___ ___

Debtor   SAMUEL FESTINGER _____   Case number (if known) _____

| | |
|---|---|
| **6. Debtor's address** | **Principal residence** |

**Principal residence**

3721  18 AVE
_____
Number    Street

_____

BROOKLYN _____ NY    11218
_____
City                     State   ZIP Code

KINGS
_____
County

**Mailing address, if different from residence**

_____
Number    Street

_____

_____
City                          State   ZIP Code

**Principal place of business**

3721  18 AVE
_____
Number    Street

_____

BROOKLYN _____ NY    11218
_____
City                     State   ZIP Code

KINGS
_____
County

---

**7. Type of business**

☐ Debtor does not operate a business

*Check one if the debtor operates a business:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))
☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))
☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))
☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))
☑ None of the above

---

**8. Type of debt**

Each petitioner believes:

☑ **Debts are primarily consumer debts.** *Consumer debts* are defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."

☐ **Debts are primarily business debts.** *Business debts* are debts that were incurred to obtain money for a business or investment or through the operation of the business or investment.

---

**9. Do you know of any bankruptcy cases pending by or against any partner, spouse, or affiliate of this debtor?**

☑ No
☐ Yes. Debtor _____   Relationship _____

District _____ Date filed _____   Case number, if known_____
                                  MM / DD / YYYY

Debtor _____   Relationship _____

District _____ Date filed _____   Case number, if known_____
                                  MM / DD / YYYY

---

Debtor   SAMUEL FESTINGER _____   Case number (if known) _____

| Part 3: | Report About the Case |
|---|---|

**10. Venue**

Reason for filing in this court.

Check one:

☑ Over the last 180 days before the filing of this bankruptcy, the debtor has resided, had the principal place of business, or had principal assets in this district longer than in any other district.

☐ A bankruptcy case concerning debtor's affiliates, general partner, or partnership is pending in this district.

☐ Other reason. Explain. (See 28 U.S.C. § 1408.) _____

**11. Allegations**

Each petitioner is eligible to file this petition under 11 U.S.C. § 303(b).

The debtor may be the subject of an involuntary case under 11 U.S.C. § 303(a).

*At least one box must be checked:*

☑ The debtor is generally not paying such debtor's debts as they become due, unless they are the subject of a bona fide dispute as to liability or amount.

☐ Within 120 days before the filing of this petition, a custodian, other than a trustee, receiver, or agent appointed or authorized to take charge of less than substantially all of the property of the debtor for the purpose of enforcing a lien against such property, was appointed or took possession.

**12. Has there been a transfer of any claim against the debtor by or to any petitioner?**

☑ No

☐ Yes. Attach all documents that evidence the transfer and any statements required under Bankruptcy Rule 1003(a).

**13. Each petitioner's claim**

| Name of petitioner | Nature of petitioner's claim | Amount of the claim above the value of any lien |
|---|---|---|
| BOAZ GAZIT | OUTSTANDING DEBT | $ 100,000.00 |
| | | $ |
| | | $ |
| | Total | $ 100,000.00 |

If more than 3 petitioners, attach additional sheets with the statement under penalty of perjury, each petitioner's (or representative's) signature under the statement, along with the signature of the petitioner's attorney, and the information on the petitioning creditor, the petitioner's claim, the petitioner's representative, and the attorney following the format on this form.

Debtor   **SAMUEL FESTINGER**                                              Case number *(if known)*_____

---

| **Part 4:** | **Request for Relief** |
| --- | --- |

Petitioners request that an order for relief be entered against the debtor under the chapter specified in Part 1 of this petition. If a petitioning creditor is a corporation, attach the corporate ownership statement required by Bankruptcy Rule 1010(b). If any petitioner is a foreign representative appointed in a foreign proceeding, a certified copy of the order of the court granting recognition is attached.

Petitioners declare under penalty of perjury that the information provided in this petition is true and correct.  Petitioners understand that if they make a false statement, they could be fined up to $250,000 or imprisoned for up to 5 years, or both.
18 U.S.C. §§ 152 and 3571. If relief is not ordered, the court may award attorneys' fees, costs, damages, and punitive damages. 11 U.S.C. § 303(i).

| **Petitioners or Petitioners' Representative** | **Attorneys** |
| --- | --- |
| ✗ _____ | ✗ _____ |
| Signature of petitioner or representative, including representative's title | Signature of attorney |
| **BOAZ GAZIT** | _____ |
| Printed name of petitioner | Printed name |
| Date signed  09/09/2020 | _____ |
| MM / DD / YYYY | Firm name, if any |
| | _____ |
| | Number    Street |
| Mailing address of petitioner | |
| **3807 AVE P** | _____ |
| Number   Street | City              State        ZIP Code |
| **BROOKLYN          NY      11234** | Date signed _____ |
| City              State        ZIP Code | MM / DD / YYYY |
| | Contact phone _____ Email _____ |
| **If petitioner is an individual and is not represented by an attorney:** | |
| Contact phone  **(917)945-1684** | |
| Email  _____ | |
| **Name and mailing address of petitioner's representative, if any** | |
| Name  _____ | |
| Number   Street | |
| _____ | |
| City              State        ZIP Code | |

Debtor   **SAMUEL FESTINGER**                            Case number (if known)_____

✖ _____
Signature of petitioner or representative, including representative's title

_____
Printed name of petitioner

Date signed   _____
              MM / DD / YYYY

**Mailing address of petitioner**

_____
Number   Street

_____
City                State           ZIP Code

**Name and mailing address of petitioner's representative, if any**

_____
Name

_____
Number   Street

_____
City        State ZIP Code

✖ _____
Signature of Attorney

_____
Printed name

_____
Firm name, if any

_____
Number   Street

_____
City                State           ZIP Code

Date signed   _____
              MM / DD / YYYY

Contact phone   _____   Email _____

✖ _____
Signature of petitioner or representative, including representative's title

_____
Printed name of petitioner

Date signed   _____
              MM / DD / YYYY

**Mailing address of petitioner**

_____
Number   Street

_____
City                State           ZIP Code

**Name and mailing address of petitioner's representative, if any**

_____
Name

_____
Number   Street

_____
City        State           ZIP Code

✖ _____
Signature of Attorney

_____
Printed name

_____
Firm name, if any

_____
Number   Street

_____
City                State           ZIP Code

Date signed   _____
              MM / DD / YYYY

Contact phone   _____   Email _____