UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SAMUEL FESTINGER,

                Plaintiff,

        - against -

SNITOW KAMINETSKY ROSNER &
SNITOW, LLP, FRANKLYN H. SNITOW,
ELLIOT J. ROSNER, JUSTICE RACHEL A.
ADAMS, CHARNIE ROSENBAUM, JOHN
DOE #1 THROUGH #10, and JANE DOE #1
THROUGH #10,

                Defendants.

**ORDER**

20 Civ. 9784 (PGG) (JW)

PAUL G. GARDEPHE, U.S.D.J.:

      Pro se Plaintiff Samuel Festinger alleges that Defendants Snitow Kaminetsky

Rosner & Snitow, LLP ("SKRS"), Franklyn H. Snitow, and Elliot J. Rosner (collectively, the

"Firm Defendants") and Charnie Rosenbaum – Plaintiff's former wife – participated in and

conspired to participate in a pattern of racketeering activity during Plaintiff's divorce proceeding,

in violation of the Racketeering Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C.

§ 1962(c) and (d).  Plaintiff separately asserts claims against New York State Supreme Court

Justice Rachel A. Adams under 42 U.S.C. §§ 1983, 1985, 1986, and 1988 and New York law

based on her rulings while presiding over Plaintiff's divorce proceeding.

      The Firm Defendants, Rosenbaum, and Justice Adams moved to dismiss the

Complaint.  Plaintiff then moved to file an Amended Complaint.  (Firm Mot. (Dkt. No. 32);

Rosenbaum Mot. (Dkt. No. 21); Adams Mot. (Dkt. No. 27); Pltf. Mot. (Dkt. No. 63))  This Court

referred the motions to Magistrate Judge Kevin Nathaniel Fox for a Report and Recommendation

("R&R").  (Dkt. Nos. 23, 37)

In two separate R&Rs, Judge Fox recommends that the motions to dismiss filed by Justice Adams, the Firm Defendants, and Rosenbaum be granted, and that Plaintiff's motion to amend be denied.  (R&R (Dkt. No. 71) at 19; R&R (Dkt. No. 72) at 21)[1]  Plaintiff has filed objections to both R&Rs.  (Pltf. Obj. (Dkt. No. 74); Pltf. Obj. (Dkt. No. 75))  The R&Rs will be adopted as set forth below; the Complaint will be dismissed in its entirety; and Plaintiff's motion to amend will be denied.

## BACKGROUND

I.   FACTS[2]

A.   Events Prior to Divorce Proceedings

Plaintiff Festinger and Defendant Rosenbaum were previously married.  (Cmplt. (Dkt. No. 1) ¶ 32)  Plaintiff alleges that, during their marriage, Rosenbaum (1) "was successful in generating millions of dollars of wrongfully billed reimbursements" while working at the Children's Center for Early Learning between 2001 and 2014; (2) "owned and operated a laser hair removal clinic," where she was paid in cash "so as to avoid paying taxes"; and (3) operated and "drained the funds of" Rack Oil Corporation, which "resulted in huge tax liabilities."  (Id. ¶¶ 38, 46-48)

In 2012, Rack Oil was audited by the New York State Department of Taxation and Finance, and Rosenbaum "became extremely concerned that she may become a target in the

---

[1]  The page numbers of documents referenced in this order correspond to the page numbers designated by the Electronic Case Files ("ECF") system used in this District and in the Bankruptcy Court for the Eastern District of New York.

[2]  The following facts are drawn from the Complaint and are presumed true for purposes of resolving Defendants' motions to dismiss.  See Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 237 (2d Cir. 2007).

investigation." (Id. ¶ 28)  As a result, Rosenbaum told Plaintiff that she had hired Defendant Franklyn Snitow to "help her to escape from serious trouble."  (Id. ¶ 29)

Festinger alleges that – while Snitow was representing Rosenbaum during the audit of Rack Oil – he "aided and abetted Rosenbaum to hide her assets and to form alter ego entities with which to hide assets."  (Id. ¶ 31)  Plaintiff also alleges that, between 2012 and 2014, "Snitow guided Rosenbaum in defrauding Chase Manhattan Bank of a [$300,000] Home Equity Line of Credit" by "misrepresent[ing] her financial standing" so as to avoid paying back the full amount of the loan.  (Id. ¶ 35)

### B.   Divorce Proceedings

On January 29, 2013, Rosenbaum commenced divorce proceedings against Festinger in Supreme Court of the State of New York, Kings County.  Rosenbaum was represented by Snitow and Defendant Elliot J. Rosner.  (Id. ¶ 32; Divorce Cmplt. (Dkt. No. 19-2) at 8)[3]  Justice Adams was assigned to preside over the divorce proceedings.  (Cmplt. (Dkt. No. 1) ¶ 59)

Festinger alleges that, "[t]hroughout the divorce proceedings, Snitow and Rosner advised and guided Rosenbaum to fraudulently form and file Net Worth Statements which depicted Rosenbaum as barely putting bread on the table," even though Snitow, Rosner, and Rosenbaum "knew full well that [Rosenbaum] hid millions of dollars."  (Id. ¶ 33)  The purpose of these fraudulent misrepresentations was to "divest [Festinger] of his assets" and shift Rosenbaum's many liabilities to Festinger.  (Id. ¶¶ 33, 42)  Festinger also alleges that "the divorce proceeding was orchestrated by Snitow, Rosner and Rosenbaum as a cover up of flagrant

---

[3]  The Court takes judicial notice of the filings in Plaintiff's state court divorce proceedings "to establish the fact of such litigation and related filings."  Kramer v. Time Warner Inc., 937 F.2d 767, 774 (2d Cir. 1991).

fraudulent activities and a means to further various frauds and be able to keep the millions of defrauded proceeds."  (Id. ¶ 36)

   Festinger alleges that Rosenbaum's "liabilities were repeatedly brought to the attention of" Justice Adams during the divorce proceedings, but that she "ignored [his] many pleas to be heard . . . and . . . [his] many presentations demonstrating Rosenbaum's financial perjuries[,] . . . thereby depriv[ing] [Festinger of] due process on many occasions."  (Id. ¶¶ 39-40)

  **C.** <u>**Contempt Orders**</u>

   During the divorce proceedings, Rosenbaum moved by order to show cause to hold Festinger in contempt for violating Justice Adams' orders requiring him to provide Rosenbaum with "child and spousal support, counsel fees, and arrears."  Festinger submitted an affidavit in opposition, and Justice Adams heard oral argument on Rosenbaum's application. (Contempt Decision (Dkt. No. 28-2) at 2-3)

   On June 10, 2020, Justice Adams held Festinger in (1) civil contempt for failure to pay spousal support, child support, and counsel fees as required by her prior orders; and (2) criminal contempt for his willful non-compliance with those orders.  (Id. at 19-22)  Justice Adams imposed a criminal contempt sentence of two months' incarceration, but delayed execution of the sentence in light of the COVID-19 pandemic.[4]  (Id. at 22)  Justice Adams also imposed a civil contempt sentence of six months' incarceration, which Festinger could purge by making certain payments by August 17, 2020.  (Id.)

---

[4]  "[P]ursuant to [New York] Judiciary Law Section 751," Justice Adams later reduced the criminal contempt sentence to thirty days' incarceration.  (Sept. 8, 2020 Order (Dkt. No. 28-3) at 2)

Festinger did not make payments in accordance with the June 10, 2020 order. Accordingly, on September 8, 2020, Justice Adams issued an "Order of Commitment" directing the Sheriff of the City of New York to arrest Festinger on September 10, 2020 at 10:00 a.m., and ordering that Festinger serve a term of thirty days' imprisonment for criminal contempt, and six months' imprisonment for civil contempt unless he made the payments necessary to purge his contempt.[5]  (Commitment Order (Dkt. No. 28-4) at 2)

On September 3, 2020, a third-party creditor filed involuntary petitions against Festinger and Rosenbaum under Chapter 11 of the Bankruptcy Code.[6]  (Cmplt. (Dkt. No. 1) ¶ 52 n.1)  On September 9, 2020, Festinger "filed a Notice of Removal" purporting to remove his divorce proceedings to the U.S. Bankruptcy Court for the Eastern District of New York.  (Id. ¶¶ 53-56)  Festinger claims that, as a result of his Notice of Removal, the New York State Supreme Court, Kings County, "lost subject matter jurisdiction over any and all matters contained in the said removed Proceeding."  (Id. ¶ 57)

On September 10, 2020, Justice Adams held a conference to address the status of Festinger's contempt.  (Sept. 10, 2020 Tr. (Dkt. No. 28-5) at 3-4)  At the conference, Festinger's counsel represented that "today or yesterday," Festinger had filed and served his Notice of Removal.  (Id. at 4)  Defendant Rosner, who was representing Rosenbaum at the proceeding, responded as follows:

> The document that [Festinger], on his own, emailed apparently to all counsel last night is a nullity.  It has not been filed or served properly. . . . More than that, under [f]ederal [l]aw, you can't file a removal more than 30 days after the service of the state court action; we're seven years later.  The divorce is non-removable to

---

[5]  It appears that Festinger was not arrested as ordered, because he appeared remotely for a conference before Justice Adams on September 10, 2020.  (See Sept. 10, 2020 Tr. (Dkt. No. 28-5) at 8)  The record does not explain why he was not arrested at that time.
[6]  Festinger contends that the involuntary petitions were re-filed on September 9, 2020.  (Cmplt. (Dkt. No. 1) ¶ 52 n.1)

5

[f]ederal [c]ourt[;] there is no jurisdiction. . . . Obviously this is a desperate last dash to somehow [wrest] jurisdiction away.  It's a joke and it should be treated as such and this should have zero impact on what is going on this morning.

(Id. at 5)

As to Festinger's email regarding the Notice of Removal, Justice Adams stated:

[T]he emailing of documents by one of the part[ies] to chambers is, in this Court's estimation, an inappropriate, improper way to communicate with the Court.  This Court has no way of assessing the validity of emailed documents by [Festinger] who is, in the context of this case, represented by counsel.

(Id. at 6)  Justice Adams later reiterated that "the Court does not have any credible documentation to support the representation made on the record with regard to a bankruptcy and the impact of that bankruptcy on this proceeding."  (Id. at 14)

In a September 10, 2020 order, however, Justice Adams stayed Plaintiff's obligation to make certain payments "pending submission and sufficient clarification by the parties' counsel of any pending Bankruptcy Court actions of [Festinger] as debtor."[7]  (Sept. 10, 2020 Order (Dkt. No. 28-6) at 3)

In a September 17, 2020 order, Justice Adams (1) amended the June 10, 2020 contempt decision so that Plaintiff's incarceration was "limited to the court's criminal contempt finding only"; and (2) stayed "commitment and incarceration related to the court's June 10, 2020 civil contempt finding . . . pending resolution of the bankruptcy proceeding under Case No. 20-43271-nhl [in the U.S. Bankruptcy Court for the Eastern District of New York] and/or an order lifting any stay of the above matrimonial action."  (Sept. 17, 2020 Order (Dkt. No. 28-8) at 2) That same day, Justice Adams entered a second order of commitment against Plaintiff, amended

---

[7]  The September 10, 2020 order also provides that the "portion of the [September 8, 2020] commitment order directing full payment towards child support and . . . arrears . . . remains in full force and effect."  (Sept. 10, 2020 Order (Dkt. No. 28-6) at 3)

to reflect that it was based solely on her criminal contempt finding.[8]  (Id.; see also Cmplt. ¶ 65 (referencing September 17, 2020 order of commitment))

### D.    **Bankruptcy Court Proceedings**

As noted above, on September 9, 2019, a third-party creditor filed involuntary petitions against Festinger and Rosenbaum under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court for the Eastern District of New York.[9] See In re Charnie Rosenbaum, No. 20 Bk. 43271 (NHL), Dkt. No. 1 (Sept. 9, 2020); In re Samuel Festinger, No. 20 Bk. 43272 (NHL), Dkt. No. 1 (Sept. 9, 2020).  That same day, Plaintiff filed a "Notice of Removal" in the Bankruptcy Court for the Eastern District of New York, purporting to remove "all claims and causes of action asserted" in Festinger and Rosenbaum's divorce proceedings "from the Supreme Court of the State of New York . . . to the United States District Court for the Eastern District of New York."  (Notice of Removal (Dkt. No. 28-10) at 2); see also In re Charnie Rosenbaum, No. 20 Bk. 4371 (NHL), Dkt. No. 4 (Sept. 9, 2020); Rosenbaum v. Festinger, No. 20 Bk. 1103 (NHL), Dkt. No. 1 (Sept. 9, 2020).[10]

On September 15, 2020, Rosenbaum moved in Bankruptcy Court for an order lifting the "automatic stay" on the divorce proceedings as a result of Festinger's Notice of Removal, and remanding the divorce proceedings to state court.  See In re Charnie Rosenbaum,

---

[8]  Festinger does not contend that he was arrested or incarcerated as a result of the September 17, 2020 order.  Once again, the record does not disclose why the September 17, 2020 order did not result in his arrest.

[9]  As noted above, Festinger contends that the petitions were originally filed on September 3, 2019, but were re-filed on September 9, 2019.  (Cmplt. (Dkt. No. 1) ¶ 52 n.1)

[10]  Three proceedings involving Festinger and Rosenbaum were initiated on September 9, 2020, in the Bankruptcy Court for the Eastern District of New York:  the involuntary Chapter 11 petition against Rosenbaum; the involuntary Chapter 11 petition against Festinger; and an "adversary" proceeding purportedly removed from state court by Festinger.  See In re Charnie Rosenbaum, No. 20 Bk. 43271 (NHL); In re Samuel Festinger, No. 20 Bk. 43272 (NHL); Rosenbaum v. Festinger, No. 20 Bk. 1103 (NHL).

No. 20 Bk. 43271 (NHL), Dkt. No. 6 at 1 (Sept. 15, 2020); In re Samuel Festinger, No. 20 Bk. 43272 (NHL), Dkt. No. 5 at 1 (Sept. 15, 2020); In re Samuel Festinger, No. 20 Bk. 1103 (NHL), Dkt. No. 5 at 1-2 (Sept. 15, 2020).

   In an October 5, 2020 order, U.S. Bankruptcy Judge Nancy Lord remanded the matrimonial action between Festinger and Rosenbaum to Supreme Court of the State of New York, Kings County.  (Bankruptcy Court Remand Order (Dkt. No. 28-11) at 4)  Judge Lord held that remand was appropriate because (1) Festinger's Notice of Removal was "procedurally defective," given that it had been "filed with the Clerk of the United States Bankruptcy Court for the Eastern District of New York, and was not filed with the Clerk of the United States District Court for the Eastern District Court of New York," as required by Fed. R. Bk. P. 9027; (2) the Eastern District of New York court lacked subject matter jurisdiction over the Festinger-Rosenbaum divorce proceeding under the domestic relations exception to federal jurisdiction; (3) the Bankruptcy Court was required to abstain from hearing the divorce proceeding pursuant to 28 U.S.C. § 1334(c)(2); and (4) the Bankruptcy Court was exercising its discretion to abstain from hearing the divorce proceeding "'in the interest of justice, or in the interest of comity with State courts or respect for State law.'"  (Id. at 3-4 (quoting 28 U.S.C. § 1334(c)(1)))

   In an October 8, 2020 order, Judge Lord clarified that (1) "the filing of the bankruptcy petition against Rosenbaum . . . did not operate as a stay with respect to [the matrimonial action] . . . , except [as to] any determination of 'the division of property that is the property of the estate'" pursuant to 11 U.S.C. §§ 362(a)(3) and 362(b)(2)(A)(iv); and (2) "the filing of the bankruptcy petition against Festinger . . . operates as a stay pursuant to 11 U.S.C. § 362(a) except with respect to [actions to determine paternity, domestic support obligations, and

child custody or visitation rights, as] specified in 11 U.S.C. § 362(b)."  (Bankruptcy Court Stay

Order (Dkt. No. 28-12) at 3-4)

    Without explanation, Festinger alleges in the instant action that "in bankruptcy

court, . . . Rosner continued the fraud upon the court on behalf of Rosenbaum," and that "Snitow

and Rosner in collusion with Rosenbaum intended to skew the [bankruptcy] court's view of the

true facts of the cases."[11]  (Cmplt. (Dkt. No. 1) ¶ 43)

###   E.   <u>Remand and Incarceration</u>

    On November 24, 2020, Justice Adams held a status conference regarding

Festinger's contempt, and on December 1, 2020, she issued an order "reinstat[ing] the orders [o]f

commitment [against Festinger] for civil and criminal contempt" and issued an order for his

arrest.  (Dec. 1, 2020 Order (Dkt. No. 28-7) at 3; Arrest Warrant (Dkt. No. 28-7) at 5-6)

Festinger was arrested on January 13, 2021, and was incarcerated from January 14, 2021 to

January 28, 2021.  (Inmate Lookup Record (Dkt. No. 28-7) at 8-9)[12]

## II.   <u>PROCEDURAL HISTORY</u>

###   A.   <u>The Complaint</u>

    The Complaint in the instant action was filed on November 20, 2020, and asserts

a substantive civil RICO claim and a civil RICO conspiracy claim against the Firm Defendants

---

[11]  The Complaint references an October 1, 2020 conference before Judge Lord regarding
Rosenbaum's remand motion (<u>see</u> Cmplt. (Dkt. No. 1) ¶ 43; <u>id.</u> at 54), but does not identify any
specific fraudulent statements that Rosner or Snitow allegedly made at that proceeding.

[12]  The Court takes judicial notice of Plaintiff's incarceration, as Justice Adams has submitted
with her motion to dismiss a printout from the "Inmate Lookup Service" website – operated by
the New York City Department of Correction – and Plaintiff does not dispute the authenticity of
that printout.  <u>See</u>, <u>e.g.</u>, <u>Cangemi v. United States</u>, 13 F.4th 115, 124 n.4 (2d Cir. 2021) (taking
judicial notice of a record found on a governmen website in considering a motion to dismiss);
<u>United States v. Akinrosotu</u>, 637 F.3d 165, 168 (2d Cir. 2011) (taking judicial notice of inmate's
"projected date for . . . release from prison" on "the official website for the Bureau of Prisons").

and Rosenbaum under 18 U.S.C. § 1964(c) for violations of 18 U.S.C. § 1962(c) and (d).  (Id.

¶¶ 68-81)[13]

The Complaint alleges as follows:

Snitow Kaminetsky Rosner & Snitow, LLP; Franklyn H. Snitow; Elliot J. Rosner
and Charnie Rosenbaum, Sapphire Investment Group LLC, NJ, ABCR
Investments LLC, NJ, and Property Solutions NY LLC, NY . . . comprise two
distinct groups of persons that together form an enterprise within the meaning of
18 U.S.C. § 1961(4). . . .

Snitow Kaminetsky Rosner & Snitow, LLP; Franklyn H. Snitow; Elliot J. Rosner
and Charnie Rosenbaum, Sapphire Investment Group LLC, ABCR Investments
LLC, and Property Solutions NY LLC . . . also qualify as separate and distinct
enterprises within the meaning of 18 U.S.C. § 1961(4).

(Id. ¶¶ 71-72)

According to the Complaint, the Firm Defendants and Rosenbaum violated the

RICO statute by engaging in the following racketeering acts:

(1)     on January 29, 2013, the Firm Defendants and Rosenbaum committed
        mail fraud by "mailing, through the United States Postal Service . . . a
        summons and complaint to [Festinger], which complaint contained the
        false assertions detailed elsewhere in this complaint";[14]

(2)     on February 4, 2013, the Firm Defendants and Rosenbaum committed
        mail fraud by "mailing, through the United States Postal Service . . . [the]
        Motion [for] Contempt and other relief";[15]

(3)     On July 24, 2013, the Firm Defendants and Rosenbaum committed mail
        fraud by "mailing, through the United States Postal Service . . . an

---

[13]  While the Complaint does not cite to 18 U.S.C. § 1964(c), it is that provision that establishes a
private right of action for RICO violations.  See Hemi Grp., LLC v. City of New York, 559 U.S.
1, 6 (2010).  Given Plaintiff's pro se status, this Court construes the Complaint as asserting a
civil RICO claim pursuant to 18 U.S.C. § 1964(c).
[14]  The Complaint does not specify what "false assertions" are set forth in the January 29, 2013
complaint in the matrimonial action.
[15]  The Complaint does not provide any additional information regarding the February 4, 2013
motion.

ORDER TO SHOW CAUSE to [Festinger], which complaint contained the false assertions detailed elsewhere in this complaint."[16]

(Id. ¶¶ 75-78)

Plaintiff seeks the following relief as to the Firm Defendants and Rosenbaum: (1) a declaration that "the [divorce] proceedings, orders, [and] judgments[] are null and void, and violated Plaintiff[']s constitutional [rights] and [New York law]; (2) "[a]ctual and/or compensatory damages"; and (3) "any legal fees."  (Id. ¶¶ 79-80)

As to Justice Adams, the Complaint asserts claims under 42 U.S.C. §§ 1983, 1985, 1986, and 1988, and under New York law for abuse of process, injurious falsehood, civil conspiracy, and negligent and intentional infliction of emotional distress.  (Id. ¶¶ 82-92)  As to Justice Adams, the Complaint does not specify the actions that give rise to Plaintiff's claims. The Complaint merely asserts that Plaintiff was deprived of his rights under federal and state law "[a]s a direct result of the acts, omissions, and policies of the defendants."[17]  (Id. ¶¶ 83-92) Plaintiff seeks a declaration that "the proceedings, orders, [and] judgments[] generated [by Justice Adams]" between Plaintiff's filing of his Notice of Removal and Judge Lord's remand "are null and void and violated Plaintiff[']s constitutional [rights] and rights [under New York law]."  (Id. ¶ 93)  Plaintiff also seeks an award of "compensatory, consequential, exemplary and punitive damages [against Justice Adams] . . . in an amount to be determined at trial."  (Id.)

---

[16]  The Complaint does not provide any additional information regarding the July 24, 2013 order to show cause, nor does it specify which "false assertions" were contained in that "complaint."
[17]  Although this portion of the Complaint (id. ¶¶ 82-92) uses the word "defendants," from context, it appears that the claims in these paragraphs are asserted against only Justice Adams.

B.    <u>Motions to Dismiss</u>

Rosenbaum, the Firm Defendants, and Justice Adams have each moved to dismiss the Complaint.  (Rosenbaum Mot. (Dkt. No. 21); Adams Mot. (Dkt. No. 27); Firm Mot. (Dkt. No. 32))

The Firm Defendants and Rosenbaum seek dismissal under Fed. R. Civ. P. 12(b)(6), arguing that the Complaint does not plead (1) a RICO "enterprise"; (2) an "enterprise" independent of the alleged racketeering acts; (3) fraud with the specificity required by Fed. R. Civ. P. 9(b); or (4) a "pattern" of racketeering activity.  The Firm Defendants and Rosenbaum further contend that Plaintiff's RICO claims – which are premised on acts of racketeering that allegedly took place in 2013 – are time-barred.  (Firm Mot. to Dismiss ("MTD") Br. (Dkt. No. 34) at 13-20; Rosenbaum MTD Br. (Dkt. No. 22-1) at 7-14)  The Firm Defendants and Rosenbaum also argue that the <u>Colorado River</u> abstention doctrine counsels in favor of staying this action in light of the ongoing state court divorce proceedings between Plaintiff and Rosenbaum.  (Firm MTD Br. (Dkt. No. 34) at 21-23; Rosenbaum MTD Br. (Dkt. No. 22-1) at 14-17)

Justice Adams has moved to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6), arguing, <u>inter alia</u>, that Plaintiff's claims against her are barred by (1) state sovereign immunity; (2) absolute judicial immunity; (3) the <u>Rooker-Feldman</u> doctrine; and (4) the <u>Younger</u> abstention doctrine.  (Adams MTD Br. (Dkt. No. 29) at 17-26)[18]

---

[18]  Under Rule 12(b)(6), Justice Adams further contends that (1) the Complaint does not plausibly allege any federal constitutional violations sufficient to sustain Plaintiff's Section 1983 claims; (2) the Complaint does not allege racial discrimination sufficient to support Plaintiff's Section 1985 and Section 1986 claims; (3) Section 1988 does not provide an independent cause of action; and (4) the Complaint does not plausibly allege any violation of state law.  (Adams MTD Br. (Dkt. No. 29) at 26-31)

Justice Adams also moves to dismiss under Fed. R. Civ. P. 12(b)(3) for improper venue, arguing that "[t]he events giving rise to Plaintiff's claims against Justice Adams occurred in Kings County Supreme Court, which is located in the Eastern District of New York." (Id. at 31)

### C.   Plaintiff's Motion to Amend

After Defendants filed their motions to dismiss, Plaintiff moved to file an Amended Complaint. (Pltf. Mot. (Dkt. No. 63)) The proposed Amended Complaint ("PAC") largely restates the Complaint's factual allegations but adds (1) as defendants, Rosenbaum's children and several corporations controlled by Rosenbaum, and alleges that these individuals and entities are part of the RICO enterprise (PAC (Dkt. No. 63) ¶¶ 18-20, 29-30); (2) several new alleged racketeering acts, including "extortion and conspiracy to commit extortion," submitting "false documents" to various entities, "litigation misconduct," obstruction of justice, and perjury (Id. ¶¶ 21, 26-30); and (3) a new claim against the Firm Defendants, Rosenbaum, Rosenbaum's children, and Justice Adams for "conspir[ing] against the Plaintiff to deprive him of his constitutional rights of due process." (Id. ¶¶ 31)

The PAC also alleges that Justice Adams committed "abuse of process" by

(1)   "issuing two orders [on September 10, 2020] that were not only inappropriate but unreasonable given the circumstances";

(2)   "inappropriately lifting a bankruptcy stay";

(3)   "ordering a criminal contempt and incarcerating the Plaintiff for up to 8 months in [Rikers] Island during the Covid-19 Pandemic"; and

(4)   "fail[ing] to adequately review and assess the validity of documents and/or submissions" made by the Firm Defendants and Rosenbaum.

(Id. ¶¶ 34-38) Finally, the PAC appears to add Justice Adams as a defendant for purposes of Plaintiff's RICO claims. (See id. ¶¶ 28, 41)

13

D.      **The Magistrate Judge's R&Rs**

This Court referred Defendants' motions to dismiss and Plaintiff's motion to
amend to Magistrate Judge Fox for an R&R.  (See Dkt. Nos. 23, 37)  Judge Fox issued two
separate R&Rs.  The first addresses Justice Adams' motion to dismiss and Plaintiff's motion to
amend his claims against her, and the second addresses the Firm Defendants' and Rosenbaum's
motions to dismiss and Plaintiff's motion to amend as to these parties.  (See R&R (Dkt. No. 71)
at 3, 19; R&R (Dkt. No. 72) at 3-4, 21)

In the R&R addressing claims against Justice Adams, Judge Fox recommends that
her motion to dismiss under Fed. R. Civ. P. 12(b)(6) be granted, and that Plaintiff's motion to
amend be denied.  (R&R (Dkt. No. 71) at 19)

As to Justice Adams' motion to dismiss under Fed. R. Civ. P. 12(b)(1), Judge Fox
concludes that the Rooker-Feldman doctrine does not warrant dismissal of the Complaint,
because "[n]o evidence exists in the record of a state-court judgment rendered before this action
commenced."  (Id. at 12)  Judge Fox also concludes that the Younger abstention doctrine does
not apply, as Justice Adams "does not assert that a parallel, pending state criminal proceeding
against the plaintiff exists or that state civil proceedings exist against the plaintiff that are akin to
criminal prosecutions."  (Id. at 13)

As to Justice Adams' motion to dismiss under Fed. R. Civ. P. 12(b)(3) for
improper venue, Judge Fox concludes that venue in this District is proper under 28 U.S.C.
§ 1391(b)(1) because each of the Firm Defendants resides in this District and all of the
Defendants are residents of New York.  (Id. at 17)

Judge Fox recommends granting Justice Adams' motion to dismiss under Fed. R.
Civ. P. 12(b)(6), however, because Justice Adams has absolute immunity from suit for her

judicial acts.  (Id. at 16)  In this regard, Judge Fox notes that "[i]t is clear from the face of the [C]omplaint that [P]laintiff's claims [against Justice Adams] are based on [her] judicial acts pursuant to her judicial power and authority, namely, making determinations and issuing orders in the matrimonial proceeding to which the plaintiff is a party."  (Id.)  Judge Fox further finds that Plaintiff's "conclusory allegation that his notice of removal deprived the New York court of subject matter jurisdiction is insufficient to show that [Justice Adams] acted in the complete absence of all jurisdiction."[19]  (Id. (quotation marks and citation omitted))

As to Plaintiff's motion to amend, Judge Fox finds that "the conclusory allegations against [Justice Adams] in the [PAC] are not sufficient to show that [her] acts were non-judicial in nature or that she acted in complete absence of all jurisdiction."  (Id. at 19) Accordingly, Judge Fox recommends that Plaintiff's motion to amend as to Justice Adams be denied as "futile[,] because [she] is shielded from suit by absolute judicial immunity."  (Id.)

In the second R&R, Judge Fox recommends that the Firm Defendants' and Rosenbaum's motions to dismiss be granted and that Plaintiff's motion to amend be denied. (R&R (Dkt. No. 72) at 21)

Judge Fox finds that Colorado River abstention does not apply here, as "the state-court action for divorce and this action are not parallel[,] because they do not involve substantially the same parties who are contemporaneously litigating substantially the same issue in another forum."  (Id. at 17)

Judge Fox recommends, however, that Plaintiff's RICO claims be dismissed as time-barred:

---

[19]  Judge Fox states that "no need exists to analyze [Justice Adams'] sovereign immunity argument," and he does not address her remaining arguments for dismissal under Fed. R. Civ. P. 12(b)(6).  (R&R (Dkt. No. 71) at 16)

> On the face of the [C]omplaint it is apparent that the four-year statute of
> limitations for a civil RICO violation based on mail and wire fraud . . . expired
> because in this action commenced on November 20, 2020, the plaintiff complains
> of the alleged mail fraud in connection with the divorce action against him that
> occurred in 2013.

(Id. at 18-19)  Although Plaintiff asserts that the Firm Defendants and Rosenbaum (1) filed false

financial statements and other documents as late as January 3, 2019, and (2) perpetrated a "'fraud

upon the court'" in the bankruptcy proceeding in 2020, Judge Fox concludes that under

applicable Supreme Court precedent, "the statute of limitations for the plaintiff's civil RICO . . .

claims" began running in 2013, when the alleged mail and wire fraud took place.  (Id. at 18-19)

According to Judge Fox, Plaintiff's RICO claims also fail because (1) Plaintiff

does not sufficiently plead "an association-in-fact enterprise"; (2) the only potential racketeering

acts aside from the time-barred mail and wire fraud are either "not contemplated by the [RICO]

statute" or not supported by any factual allegations; and (3) "with respect to mail and wire fraud,

the plaintiff failed to allege sufficient longevity to permit the purported members of the

enterprise to pursue the enterprise's purpose."  (Id. at 19-20)

As to Plaintiff's motion to amend, Judge Fox finds that the PAC – like the

Complaint – relies on alleged acts of mail and wire fraud that took place in 2013, and are time-

barred.  (Id. at 19)  Judge Fox also finds that the PAC does not "remedy the lack of . . . factual

allegations" demonstrating the existence of an association-in-fact enterprise.  (Id. at 20)

Accordingly, Judge Fox recommends that Plaintiff be denied leave to file an Amended

Complaint.  (Id. at 19-21)[20]

---

[20]  Judge Fox states that "[s]ince the plaintiff failed to state a claim against [the Firm Defendants
and Rosenbaum] for substantive violations of RICO, his [RICO] conspiracy claim fails to set
forth a conspiracy to commit such violations."  (Id. at 21)

E.      **Plaintiff's Objections**

Plaintiff filed objections to both R&Rs.  (See Pltf. Obj. (Dkt. No. 74); Pltf. Obj. (Dkt. No. 75))

As to Plaintiff's claims against Justice Adams, Plaintiff complains that Judge Fox "[d]isregard[ed] the legal standard used to determine" a motion to dismiss under Fed. R. Civ. P. 12(b)(6) by not construing the facts alleged in the Complaint "in the light most favorable to the plaintiff" and giving "absolutely no deference or any benefit of the doubt to Plaintiff." (Pltf. Obj. (Dkt. No. 74) at 1, 3-4)  Plaintiff also objects to Judge Fox's conclusion that Justice Adams is protected by absolute judicial immunity.  According to Plaintiff, Justice Adams' "pattern of improper conduct and biases was non-judicial in nature," and her "refusing this Plaintiff of essential Constitutional rights and the manner in which she did was also petty . . . [,] unethical . . . [,] and unworthy of her office."  (Id. at 5)

As to Plaintiff's claims against the Firm Defendants and Rosenbaum, Plaintiff likewise argues that Judge Fox "[d]isregard[ed] the legal standard used to determine" a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  (Pltf. Obj. (Dkt. No. 75) at 1)  Plaintiff also objects to Judge Fox's "[a]mbiguous discussion and conclusion pertaining to viability of federal claims, including the RICO statute [and] its statute of limitation[s]."[21]  (Id. at 2)

---

[21]  Plaintiff has submitted a "Reply" to the Firm Defendants' opposition to his objections.  The Reply contains new factual allegations.  (See Pltf. Obj. Reply (Dkt. No. 78))  Fed. R. Civ. P. 72 authorizes parties to file "specific written objections" to an R&R, and permits opposing parties to file responses "to another party's objections."  Fed. R. Civ. P. 72(b)(1)-(2).  Rule 72 does not provide for a reply, nor has this Court authorized Plaintiff to file a reply.  Acknowledging that Plaintiff is proceeding pro se, his pro se status does not excuse non-compliance with the relevant procedural rules.  See Edwards v. I.N.S., 59 F.3d 5, 8-9 (2d Cir. 1995).  Moreover, arguments and allegations made for the first time in a reply cannot be considered.  See, e.g., Graham v. Henderson, 89 F.3d 75, 82 (2d Cir. 1996) (declining to consider an argument raised for the first time in a pro se litigant's reply brief).

## DISCUSSION

I.    **LEGAL STANDARDS**

    A.    **Review of a Report and Recommendation**

A district court reviewing a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).  Where a timely objection has been made to a magistrate judge's recommendation, the district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id.

However, "[o]bjections that are merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original papers will not suffice to invoke de novo review." Phillips v. Reed Grp., Ltd., 955 F. Supp. 2d 201, 211 (S.D.N.Y. 2013) (citation, quotation marks, and alteration omitted).  "[T]o the extent . . . that the [objecting] party makes only conclusory or general arguments, or simply reiterates the original arguments, the Court will review the [R&R] strictly for clear error." DiPilato v. 7-Eleven, Inc., 662 F. Supp. 2d 333, 339 (S.D.N.Y. 2009) (citation and quotation marks omitted). Although "[t]he objections of parties appearing pro se are generally accorded leniency and should be construed to raise the strongest arguments that they suggest . . . [,] even a pro se party's objections to a[n] [R&R] must be specific and clearly aimed at particular findings in the magistrate's proposal, such that no party be allowed a second bite at the apple by simply relitigating a prior argument." Id. at 340 (citations and quotation marks omitted).

For portions of the R&R to which no objection is made, a court's review is limited to a consideration of whether there is any "clear error on the face of the record" that

precludes acceptance of the recommendations.  Wingate v. Bloomberg, No. 11-CV-188 (JPO), 2011 WL 5106009, at *1 (S.D.N.Y. Oct. 27, 2011) (citation and quotation marks omitted).

B.   **Rule 12(b)(6) Standard**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "In considering a motion to dismiss[,] . . . the court is to accept as true all facts alleged in the complaint," and must "draw all reasonable inferences in favor of the plaintiff."  Kassner, 496 F.3d at 237.  A complaint is inadequately pled "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557), and does not provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests,"  Port Dock & Stone Corp. v. Oldcastle Northeast Inc., 507 F.3d 117, 121 (2d Cir. 2007) (citing Twombly, 550 U.S. at 555).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice [to establish an entitlement to relief]."  Iqbal, 556 U.S. at 678.

In resolving a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court may "consider . . . the complaint and any documents attached thereto or incorporated by reference and documents upon which the complaint relies heavily."  Bldg. Indus. Elec. Contractors Ass'n v. City of N.Y., 678 F.3d 184, 187 (2d Cir. 2012) (citation and quotation marks omitted).[22]

A "pro se complaint . . . [is] interpret[ed] . . . to raise the 'strongest [claims] that [it] suggest[s].'"  Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011) (quoting Triestman v. Fed.

---

[22]  When considering a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), however, a court may "refer to evidence outside the pleadings."  Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).

Bureau of Prisons, 470 F.3d 471, 474-75 (2d Cir. 2006) (per curiam)).  "However, although pro

se filings are read liberally and must be interpreted 'to raise the strongest arguments that they

suggest,' a pro se complaint must still 'plead sufficient facts to state a claim to relief that is

plausible on its face.'"  Wilder v. U.S. Dep't of Veterans Affairs, 175 F. Supp. 3d 82, 87

(S.D.N.Y. 2016) (citations omitted).  Moreover, "the court need not accept as true 'conclusions

of law or unwarranted deductions of fact,'" Whitfield v. O'Connell, No. 09 Civ. 1925 (WHP),

2010 WL 1010060, at *4 (S.D.N.Y. Mar. 18, 2010) (quoting First Nationwide Bank v. Gelt

Funding Corp., 27 F.3d 763, 771 (2d Cir. 1994)), and "'[t]hreadbare recitals of the elements of a

cause of action, supported by mere conclusory statements, do not suffice,'" even where a

plaintiff is proceeding pro se, Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (quoting Iqbal, 556

U.S. at 678).

### C.   **Motion to Amend**

Under the Federal Rules of Civil Procedure, leave to amend should be "freely

give[n] . . . when justice so requires."  Fed. R. Civ. P. 15(a)(2).  District courts "ha[ve] broad

discretion in determining whether to grant leave to amend."  Gurary v. Winehouse, 235 F.3d 792,

801 (2d Cir. 2000).  "Where the possibility exists that [a] defect can be cured, leave to amend . . .

should normally be granted" at least once.  Wright v. Ernst & Young LLP, No. 97 CIV. 2189

(SAS), 1997 WL 563782, at *3 (S.D.N.Y. Sept. 10, 1997), aff'd, 152 F.3d 169 (2d Cir. 1998).

Leave to amend may properly be denied, however, in cases of "'undue delay, bad

faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by

amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of

the amendment, futility of amendment, etc.'"  Ruotolo v. City of New York, 514 F.3d 184, 191

(2d Cir. 2008) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)); see Murdaugh v. City of

20

New York, No. 10 Civ. 7218 (HB), 2011 WL 1991450, at *2 (S.D.N.Y. May 19, 2011)

("Although under Rule 15(a) of the Federal Rules of Civil Procedure leave to amend complaints

should be 'freely given,' leave to amend need not be granted where the proposed amendment is

futile." (citations omitted)).

## II.    STANDARD OF REVIEW FOR PLAINTIFF'S OBJECTIONS

As discussed above, Plaintiff has raised a variety of objections to Judge Fox's

R&Rs.  (See Pltf. Obj. (Dkt. No. 74); Pltf. Obj. (Dkt. No. 75))

Insofar as Plaintiff argues that Judge Fox applied an improper legal standard in

ruling on the motions to dismiss (see Pltf. Obj. (Dkt. No. 74) at 2-6; Pltf. Obj. (Dkt. No. 75) at 2-

6), this Court will conduct a de novo review.  The following portions of the R&Rs will likewise

be reviewed de novo, in light of Plaintiff's specific objections:  (1) Judge Fox's finding that

Plaintiff's claims against Justice Adams are barred by judicial immunity; (2) Judge Fox's finding

that Plaintiff's RICO claims are time-barred; and (3) Judge Fox's finding that the Complaint

does not sufficiently allege the existence of a RICO enterprise.  (See Pltf. Obj. (Dkt. No. 74) at 5;

Pltf. Obj. (Dkt. No. 75) at 6-8)

The remainder of Plaintiff's objections either complain of recommendations and

findings that Judge Fox did not make,[23] or are so conclusory or non-specific that they do not

suffice to invoke de novo review.  See DiPilato, 662 F. Supp. 2d at 339-40.  Accordingly, the

Court will review the remaining portions of the R&Rs for clear error.

---

[23]  For example, Plaintiff complains that Judge Fox ruled that Plaintiff had "'abandoned his claims pursuant to 42 [U.S.C.] Sections 1985, 1986, and 1988, abuse of process, injurious falsehood and civil conspiracy.'"  (Pltf. Obj. (Dkt. No. 74) at 8)  Judge Fox made no such finding.  Similarly, Plaintiff objects to Judge Fox's application of the statute of limitations to Plaintiff's Section 1983 claim.  (Id. at 10)  Judge Fox made no findings concerning this issue.

21

III.    **JUSTICE ADAMS' MOTION TO DISMISS**

    A.    **Venue**

        The Court finds no clear error in Judge Fox's finding that venue is proper.  (See R&R (Dkt. No. 71) at 17)  Under the general venue provision – 28 U.S.C. § 1391 – a civil action may be brought in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located."  28 U.S.C. § 1391(b)(1).  Justice Adams does not dispute that all Defendants are residents of New York, and that the Firm Defendants all reside in Manhattan, which is within this District.  (See Cmplt. (Dkt. No. 1) ¶¶ 8-13)  Accordingly, Justice Adams' motion to dismiss or transfer this action under Fed. R. Civ. P. 12(b)(3) will be denied.

    B.    **The *Rooker-Feldman* Doctrine**

        1.    **Applicable Law**

        "The Rooker-Feldman doctrine bars federal district courts from hearing cases that in effect are appeals from state court judgments, because the Supreme Court is the only federal court with jurisdiction over such cases." Dorce v. City of New York, 2 F.4th 82, 101 (2d Cir. 2021) (citing 28 U.S.C. § 1257).  The Second Circuit has articulated "four requirements that must be met for Rooker-Feldman to apply:  (1) 'the federal-court plaintiff must have lost in state court[;]' (2) 'the plaintiff must complain of injuries caused by a state-court judgment[;]' (3) 'the plaintiff must invite district court review and rejection of that judgment[;]' and (4) 'the state-court judgment must have been rendered before the district court proceedings commenced.'" Id. (quoting Hoblock v. Albany Cnty. Bd. of Elections, 422 F.3d 77, 85 (2d Cir. 2005)) (alterations in Dorce).

"While the Second Circuit traditionally applied the [Rooker-Feldman] doctrine

'expansively,' and 'both to final state court judgments and to interlocutory state court orders,'

this practice was abrogated by the Supreme Court's decision in Exxon Mobil Corp. v. Saudi

Basic Indus. Corp., 544 U.S. 280 (2005)."  Reliability Inc. v. Doki, 20 Civ. 7109 (KPF), 2021

WL 3408589, at *7 (S.D.N.Y. Aug. 4, 2021) (quoting Green v. Mattingly, 585 F.3d 97, 101 (2d

Cir. 2009)).  The Second Circuit has since found that the doctrine does not apply where a

plaintiff "complains only of injuries caused by a state-court order that was interlocutory,

unappealable, and effectively reversed by a superseding order," and where the state-court

proceedings of which a plaintiff complains "were dismissed without a final order of disposition."

See Mattingly, 585 F.3d at 103.

### 2.    Analysis

Here, Plaintiff's claims against Justice Adams are premised on decisions that she

issued while presiding over Plaintiff's divorce proceedings.  (See Cmplt. (Dkt. No. 1) ¶ 40

(alleging that Justice Adams "ignored [Plaintiff's] many pleas to be heard in general and

specifically ignored [his] many presentations demonstrating Rosenbaum's financial perjuries[,]

. . . thereby depriv[ing] [Plaintiff of ] due process on many occasions"); id. ¶ 93 (seeking a

declaration that "the proceedings, orders, [and] judgments generated" by Justice Adams "are null

and void, and violated Plaintiff[']s constitutional . . . rights [and rights under New York law]")[24]

---

[24]  Plaintiff contends that the Firm Defendants and Rosenbaum "willfully and maliciously
conned [Justice] Adams to accept the[ir] gross misrepresentations," and that Justice Adams'
rulings were thus procured through fraud.  (See id. ¶¶ 39-43; see also Pltf. MTD Opp. Br. (Dkt.
No. 48) at 7-8))  Acknowledging these allegations, courts in this Circuit have "consistently held
that Rooker-Feldman applies notwithstanding claims that a state-court judgment was acquired
through fraud."  Gould v. Airway Office, LLC, 15 Civ. 7964 (PAE), 2016 WL 3948102, at *5
(S.D.N.Y. July 19, 2016); see also Kropelnicki v. Siegel, 290 F.3d 118, 128 (2d Cir. 2002)
("[W]e have never recognized a blanket fraud exception to Rooker-Feldman." (quotation marks
and citation omitted)).

Although the Complaint does not list the specific rulings that Plaintiff challenges – construing the Complaint liberally – it appears that Plaintiff disputes the following orders issued by Justice Adams:

(1)     the June 10, 2020 order finding Plaintiff in civil and criminal contempt for not complying with Justice Adams' previous orders requiring Plaintiff to pay Rosenbaum spousal support, child support, and counsel fees;

(2)     the September 8, 2020 order of commitment based on Justice Adams' civil and criminal contempt findings;

(3)     the September 10, 2020 order in which Justice Adams refused to stay all of Plaintiff's payment obligations in light of the pending bankruptcy proceeding;

(4)     the September 17, 2020 order amending the June 10, 2020 contempt order; and

(5)     the September 17, 2020 order of commitment, as modified to reflect that Plaintiff's incarceration was based only on Justice Adams' criminal contempt finding.

(See Cmplt. (Dkt. No. 1) ¶¶ 59-67; id., Ex. F, at 45-48 (June 10, 2020 Contempt Decision))[25]

Judge Fox concludes that the Rooker-Feldman doctrine does not bar any of Plaintiff's claims against Justice Adams, because "[n]o evidence exists in the record of a final

---

[25]  In his brief opposing Justice Adams' motion to dismiss, Plaintiff complains about her "Preclusion Order," which prevented Plaintiff from introducing certain evidence at the divorce proceeding.  Plaintiff claims that he was "forced to cross examine [Rosenbaum] [him]self and to proceed to trial Pro Se."  (Pltf. MTD Opp. Br. (Dkt. No. 48) at 9; Preclusion Order (Dkt. No. 48-9) at 4-5; see also Dkt. No. 48-10 (transcript of divorce proceedings on November 24, 2014) (Justice Adams noting that Plaintiff "had many weeks to retain counsel of [his] choosing," and that any lawyer representing Plaintiff would be required to file a notice of appearance))

Judge Fox properly declined to consider these complaints, as courts are "not required to consider new allegations made in an opposition brief, even in cases involving pro se plaintiffs."  Mitchell v. Macy's, Inc., 17 Civ. 1845 (AT) (SN), 2018 WL 9918137, at *8 (S.D.N.Y. Sept. 25, 2018) (citing Jean-Laurent v. Wilkerson, 461 F. App'x 18, 21 (2d Cir. 2012)).  In any event, as discussed below, judicial immunity bars Plaintiff's claims to the extent they are based on Justice Adams' "Preclusion Order" and her ruling regarding Plaintiff's representation at trial.

state-court judgment rendered before this action commenced." (R&R (Dkt. No. 71) at 12) This

Court finds no clear error in that decision.

Ordinarily, contempt orders are sufficiently final to warrant application of the

Rooker-Feldman doctrine. See, e.g., Skipp v. Conn. Judicial Branch, No. 3:14-cv-00141 (JAM),

2015 WL 1401989, at *2, *5-6 (D. Conn. Mar. 26, 2015) (holding that Rooker-Feldman doctrine

barred review of contempt orders in a family court proceeding); Mulready v. Mulready, Civil

No. 3:006CV00934(AWT), 2007 WL 1757055, at *4 (D. Conn. June 19, 2007) (same). Here,

however, Justice Adams' June 10, 2020 contempt finding was modified in the September 10,

2020 and September 17, 2020 orders, which were issued in response to the Chapter 11

bankruptcy proceeding brought against Festinger and Rosenbaum.[26] The September 10, 2020

order also requested "submission[s] and sufficient clarification by the parties' counsel of any

pending Bankruptcy Court actions of [Festinger] as debtor" (see Sept. 10, 2020 Order (Dkt. No.

28-6) at 3), and both the September 10 and 17 orders stayed certain aspects of Festinger's

payment obligations in light of the bankruptcy proceeding. (See id.; Sept. 17, 2020 Order (Dkt.

No. 28-8) at 2) Moreover, Festinger does not contend that he was arrested or incarcerated as a

result of any order issued by Justice Adams between June 10, 2020 and September 17, 2020.

Indeed, Festinger appeared for conferences before Justice Adams on at least September 10, 2020

and November 24, 2020. (See Sept. 10, 2020 Tr. (Dkt. No. 28-5) at 8 (transcript indicating that

Festinger was appearing remotely); Dec. 1, 2020 Order (Dkt. No. 28-7) at 3 (stating that

Festinger "affirmed on the record on November 24, 2020 that he was appearing virtually from a

Staples parking lot in Connecticut")) Finally, Justice Adams represents that, "[o]n December 1,

---

[26] In the original June 10, 2020 contempt decision, Justice Adams also stayed Festinger's
incarceration "[i]n light of the COVID-19 pandemic." (Contempt Decision (Dkt. 28-2) at 22-23)

2020, [she] <u>reinstated</u> the orders of commitment for civil and criminal contempt," and "Plaintiff

was subsequently incarcerated from January 13, 2021 to January 28, 2021."  (Adams MTD Br.

(Dkt. No. 29) at 12 n.4 (emphasis added)).

   In sum, it is not clear that any of the orders cited by Festinger in the Complaint –

all of which were issued by Justice Adams between June 10, 2020 and September 17, 2020 –

were similar to the type of final, appealable "state-court judgment" that implicates the <u>Rooker-</u>

<u>Feldman</u> doctrine.  <u>Dorce</u>, 2 F.4th at 101.  Accordingly, this Court finds no clear error in Judge

Fox's determination that <u>Rooker-Feldman</u> does not bar Plaintiff's claims.  <u>Cf.</u> <u>Mattingly</u>, 585

F.3d at 103 (holding that <u>Rooker-Feldman</u> doctrine was not implicated where the plaintiff

challenged a temporary order of removal issued by the Family Court of the State of New York,

where that order was "interlocutory, unappealable, and effectively reversed by a superseding

order").  Justice Adams' motion to dismiss on these grounds will therefore be denied.

  **C.**  **The *Younger* Abstention Doctrine**

   **1.**  **Applicable Law**

   Although federal courts have a "virtually unflagging obligation . . . to exercise the

jurisdiction given to them," <u>Colorado River Water Conserv. Dist. v. United States</u>, 424 U.S. 800,

817 (1976), the <u>Younger</u> abstention doctrine provides a narrow exception to that general rule.

<u>See</u> <u>Younger v. Harris</u>, 401 U.S. 37, 53-54 (1971).  Under that doctrine, "district courts should

abstain from exercising jurisdiction . . . in three 'exceptional circumstances' involving

(1) 'ongoing state criminal prosecutions,' (2) 'certain civil enforcement proceedings,' and (3)

'civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to

perform their judicial functions.'"  <u>Falco v. Justices of the Matrimonial Parts of the Sup. Ct. of</u>

Suffolk Cnty., 805 F.3d 425, 427 (2d Cir. 2015) (quoting Sprint Commc'ns, Inc. v. Jacobs, 571

U.S. 69, 78 (2013)).

      The Second Circuit has held that Younger abstention applies only to claims for

declaratory and injunctive relief and "is not appropriate with respect to [a] claim for money

damages." Kirschner v. Klemons, 225 F.3d 227, 238 (2d Cir. 2000); see also Bukowski v.

Spinner, 709 F. App'x 87, 88 (2d Cir. 2018) (applying Kirschner).

      **2.**   **Analysis**

      Judge Fox concludes that Younger abstention does not apply to Plaintiff's claims

against Justice Adams. Judge Fox notes that Justice Adams "does not assert that a parallel,

pending state criminal proceeding against the plaintiff exists . . . [,] that state civil proceedings

exist against the plaintiff that are akin to criminal prosecutions," or that Plaintiff is

"challeng[ing] the process by which New York compels compliance with the judgment of its

courts[,] [thus] implicating a state[] interest in enforcing the orders and judgments of its courts."

(R&R (Dkt. No. 71) at 13)

      The Second Circuit has, however, applied Younger abstention to claims based on

ongoing New York divorce and child custody proceedings. In Falco v. Justices of the

Matrimonial Parts of the Supreme Court of Suffolk County, for example, plaintiff "sued his wife

for divorce and sought custody of their two children in New York State Supreme Court, Suffolk

County." Falco, 805 F.3d at 426. Under New York law, a state court engaged in a child custody

proceeding may appoint an attorney to represent the children, and in that case, "the State court

ultimately ordered Falco and his wife each to pay half of the attorney's retainer and fees, subject

to reallocation at trial." Id. "When Falco failed to comply with the order, the State court ordered

him to show cause why he should not be held in contempt." Id. "During the course of the

divorce proceedings, [plaintiff] commenced an action in federal court under 42 U.S.C. § 1983

challenging the constitutionality of the New York laws that authorize State judges to order

parents to pay for attorneys appointed for their children."  Id. at 427.  The district court dismissed

the complaint, invoking the Younger abstention doctrine.  Id.

        The Second Circuit affirmed, holding that the case "clearly" falls within the third

category of cases implicated by the Younger abstention doctrine – namely, "pending State civil

proceedings involving orders 'uniquely in furtherance of the state courts' ability to perform their

judicial functions.'"  Id. at 428 (quoting Sprint, 571 U.S. at 73).  The Second Circuit explained

that plaintiff's lawsuit "implicates the way that New York courts manage their own divorce and

custody proceedings," and that "orders relating to the selection and compensation of court-

appointed counsel for children are integral to the State court's ability to perform its judicial

function in divorce and custody proceedings."  Id. at 427-28.  The Second Circuit went on to

hold that the district court had "correctly abstained from exercising federal jurisdiction."  Id. at

428.

        Under Falco, the Younger abstention doctrine applies to Plaintiff's claims, insofar

as he seeks declaratory or injunctive relief.  (See Cmplt. (Dkt. No. 1) ¶ 51 (seeking "declaratory

judgment for prospective relief, and declaratory relief declaring the proceeding in the state court

relevant to this action a nullity"); id. ¶ 79 (seeking a declaration that "the proceedings, orders,

[and] judgments" in the divorce proceeding "are null and void, and violated Plaintiff[']s

constitutional [rights] and . . . rights [under New York law]"); (id. ¶ 93 (seeking a declaration

that "the proceedings, orders, [and] judgments[] generated [by Justice Adams] . . . are null and

void, and violated Plaintiff[']s constitutional [rights] and . . . rights [under New York law]"))

On November 20, 2020, when Plaintiff commenced the instant lawsuit, Justice

Adams' criminal contempt order was in effect, although it appears that Plaintiff had not yet been

arrested as a result of that order.  Her finding of civil contempt had been temporarily stayed as a

result of the bankruptcy actions involving Plaintiff and Rosenbaum.  (See Dec. 1, 2020 Order

(Dkt. No. 28-7) at 3)  On December 1, 2020 – after Plaintiff filed the November 20, 2020

Complaint in the instant action – Justice Adams reinstated both the civil and criminal contempt

orders and issued a warrant for Plaintiff's arrest.  (Id.; Arrest Warrant (Dkt. No. 28-7) at 5-6)  In

seeking to invalidate Justice Adams' contempt orders – as well as the child support and counsel

fee awards underlying those orders – Plaintiff seeks to interfere with the state court's "ability to

perform its judicial function in divorce . . . proceedings."  Falco, 805 F.3d at 428; see also Parent

v. New York, 485 F. App'x 500, 503-04 (2d Cir. 2012) (holding that Younger abstention

doctrine barred plaintiff's claims for declaratory judgment regarding his "ongoing . . . divorce

action"); Perso v. Perso, 19-CV-2858 (JMA) (SIL), 2019 WL 4415399, at *3 (E.D.N.Y. Sept. 13,

2019) (applying Younger abstention doctrine where plaintiff asked the district court "to intervene

in plaintiff's ongoing state court divorce and child support proceedings"); Tomcyzk v. N.Y.

Unified Ct. Sys., 19-CV-2753 (JS) (AYS), 2019 WL 2437849, at *3 (E.D.N.Y. June 10, 2019)

(holding that Younger abstention doctrine barred claims for declaratory and injunctive relief

"that would cause [the court] to intervene in [p]laintiff's ongoing state-court divorce and child

support proceedings"); Mulready, 2007 WL 1757055, at *2-3 (holding that Younger abstention

doctrine barred challenges to ongoing child support and related contempt proceedings to the

extent that plaintiff had not exhausted appellate review of the contempt orders); Lomtevas v.

New York State, No. 03-CV-2359 (FB), 2003 WL 22937688, at *2 (E.D.N.Y. Nov. 13, 2003)

(applying <u>Younger</u> abstention doctrine where plaintiff challenged aspects of "ongoing state court proceeding" to determine plaintiff's child support obligations).[27]

       In sum, Plaintiff's claims arise from "'civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions.'"[28]   <u>Falco</u>, 805 F.3d at 427 (quoting <u>Sprint</u>, 571 U.S. at 78).   Accordingly, <u>Younger</u> abstention applies, and to the extent that Plaintiff seeks injunctive or declaratory relief, his claims will be dismissed as to all Defendants.[29]

---

[27]  Plaintiff has not argued that any exception to <u>Younger</u> abstention applies, and this Court finds that no exception is applicable.  The "so-called bad faith exception" applies where "the party bringing the state action . . . [has] no reasonable expectation of obtaining a favorable outcome." <u>Diamond "D" Const. Corp. v. McGowan</u>, 282 F.3d 191, 198-99 (2d Cir. 2002) (quotation marks and citations omitted).  Plaintiff has not alleged that the divorce action was brought without any "reasonable expectation of obtaining a favorable outcome," or that it was "brought to retaliate for or to deter constitutionally protected conduct."  <u>Id.</u> (quotation marks and citations omitted). Similarly, Plaintiff has not alleged that there is "no state remedy available to meaningfully, timely, and adequately remedy the alleged constitutional violation."  Accordingly, he cannot invoke the "extraordinary circumstances" exception.  <u>Id.</u> at 201.

[28]  It is not clear from the record whether Justice Adams' criminal contempt order initiated formal criminal contempt proceedings against Plaintiff.  <u>See</u>, <u>e.g.</u>, <u>Abrahams v. DiBlasi</u>, No. 02 Civ. 8519 (RMB) (MDF), 2003 WL 1846305, at *2 (S.D.N.Y. Apr. 8, 2003) (explaining that "under New York Judiciary Law § 750, a New York State Supreme Court justice may institute criminal contempt proceedings against a party who disobeys its mandate" (quotations, citations, and alterations omitted)).  Assuming <u>arguendo</u> that Justice Adams' order initiated a formal criminal contempt proceeding – and that Plaintiff is challenging that action – <u>Younger</u> abstention would likewise apply.  <u>See</u> <u>Bobrowsky v. Yonkers Courthouse</u>, 777 F. Supp. 2d 692, 710 (S.D.N.Y. 2011) (holding that <u>Younger</u> abstention barred claims premised on plaintiff's state "criminal contempt case").

[29]  For purposes of her <u>Younger</u> abstention argument, Justice Adams has not cited to a specific subsection of Rule 12(b).  This Court construes her argument as having been brought under Rule 12(b)(1).  <u>See</u> <u>Steel Co. v. Citizens for a Better Env't</u>, 523 U.S. 83, 100 n.3 (1998) (noting that Supreme Court has treated "<u>Younger</u> abstention . . . as jurisdictional"); <u>Spargo v. N.Y. State Comm'n on Judicial Conduct</u>, 351 F.3d 65, 74 (2d Cir. 2003) (describing <u>Younger</u> abstention as "a prudential limitation on the court's exercise of jurisdiction grounded in equitable considerations of comity"); <u>see also</u> <u>McDonald v. Esposito</u>, 20-CV-828 (RPK) (RML) (E.D.N.Y. Mar. 18, 2021) ("A motion to dismiss based on the . . . <u>Younger</u> abstention doctrine is assessed under the same standard as a motion to dismiss for lack of subject matter jurisdiction under [Rule 12(b)(1)]."); <u>City of New York v. Milhelm Attea & Bros., Inc.</u>, 550 F. Supp. 2d 332, 341

### D.    Judicial Immunity

#### 1.    Applicable Law

Under the doctrine of judicial immunity, "judges are absolutely immune from civil suit for damages for any actions taken within the scope of their judicial responsibilities." Nieves v. Ward, 22-CV-1382 (LTS), 2022 WL 623896, at *2 (S.D.N.Y. Mar. 3, 2022) (citing Mireles v. Waco, 502 U.S. 9, 11-12 (1991)).  "[E]ven allegations of bad faith or malice cannot overcome judicial immunity."  Bliven v. Hunt, 579 F.3d 204, 209 (2d Cir. 2009).

"There are only two sets of circumstances in which judicial immunity does not apply:  (1) when a judge takes action that is outside the judge's judicial capacity, or (2) when a judge takes action[] that, although judicial in nature, is in the absence of all jurisdiction." Nieves, 2022 WL 623896, at *2 (citing Mireles, 502 U.S. at 11-12).  Generally, "acts arising out of, or related to, individual cases before the judge are considered judicial in nature."  Bliven, 579 F.3d at 210.  "[T]he scope of [a] judge's jurisdiction must be construed broadly where the issue is the immunity of the judge."  Stump v. Sparkman, 435 U.S. 349, 356 (1978).

While "judicial immunity is not a bar to prospective injunctive relief against a judicial officer acting in her judicial capacity," Pulliam v. Allen, 466 U.S. 522, 541-42 (1984), judicial immunity precludes claims for damages and "claims for declaratory relief that are retrospective in nature," Wilson v. Wilson-Polson, No. 09 Civ. 9810 (PGG), 2010 WL 3733935, at *9 (S.D.N.Y. Sept. 23, 2010); see also Triestman v. McGinty, 804 F. App'x 98, 99 (2d Cir. 2020) ("[J]udicial immunity bars any claim for retrospective declaratory relief.").

---

(E.D.N.Y. 2008) ("A motion to dismiss based on the abstention doctrine is also considered as a motion made pursuant to Rule 12(b)(1).").

2.      **Analysis**

Judge Fox did not err in concluding that judicial immunity bars Plaintiff's claims against Justice Adams.[30]

Plaintiff complains about rulings that Justice Adams made while presiding over his divorce proceeding.  For example, Plaintiff contends that Justice Adams "ignored [his] many pleas to be heard in general[,] . . . ignored [his] many presentations demonstrating Rosenbaum's financial perjuries," and improperly issued contempt and commitment orders against him. (Cmplt. (Dkt. No. 1) ¶¶ 40, 59-66)  All of the conduct cited by Plaintiff is "judicial in nature," see Bliven, 579 F.3d at 210, and within the scope of Justice Adams' jurisdiction.  For example, the divorce proceeding is within the subject matter jurisdiction of Justice Adams as a New York State Supreme Court Justice, and Supreme Court Justices are authorized under New York law to impose civil contempt sanctions, and to initiate criminal contempt proceedings, against litigants who do not comply with their orders.  See Lerner v. Drager, No. 10 Civ. 7928 (RJH) (FM), 2011 WL 1682348, at *5 (S.D.N.Y. Apr. 18, 2011) ("[T]he Supreme Court is New York State's court of general jurisdiction and is vested with exclusive subject matter jurisdiction over divorce actions." (citing N.Y. Const. art. VI, § 7; Graves v. Graves, 675 N.Y.S.2d 843, 846 (Sup. Ct. 1998))), report and recommendation adopted, 2011 WL 2150555 (S.D.N.Y. May 31, 2011); N.Y.

---

[30]  Although the Complaint purports to seek a "declaratory judgment for prospective relief" (Cmplt. (Dkt. No. 1) ¶ 51), Plaintiff later explains that he seeks a declaration that "the proceedings, orders, [and] judgments" issued during Plaintiff's divorce proceedings "are null and void, and violated" his constitutional rights and rights under New York law.  (Id. ¶ 79)  Such a declaration is retrospective in nature and is barred by judicial immunity.  See MacPherson v. Town of Southampton, 664 F. Supp. 2d 203, 212 (E.D.N.Y. 2009) (concluding that plaintiff's claims were retrospective to the extent that plaintiff sought "a declaration that the Justices' past enforcement of the Town's rental law has violated the Constitution").  To the extent that Plaintiff seeks prospective relief regarding the divorce proceedings – as discussed above – any such claim will be dismissed pursuant to the Younger abstention doctrine.

Judiciary L. §§ 750, 753 (authorizing civil and criminal contempt sanctions).  In sum, the actions

of Justice Adams cited in the Complaint were "taken in [her] judicial capacity."  Mireles, 502

U.S. at 12.

Plaintiff argues, however, that Justice Adams acted "in the complete absence of

all jurisdiction."  See id.; (Cmplt. (Dkt. No. 1) ¶ 57 (alleging that, when Plaintiff filed his Notice

of Removal purporting to remove the divorce proceeding to Bankruptcy Court, "the New York

State Supreme Court, County of Kings, lost subject matter jurisdiction over any and all matters

contained in the . . . removed [divorce] [p]roceeding"))  But as Judge Lord explains in remanding

the case, the Bankruptcy Court lacked subject matter jurisdiction to adjudicate the terms of

Plaintiff's divorce with Rosenbaum, or to determine his support payments.  (See Bankruptcy

Court Remand Order (Dkt. No. 28-11) at 3); see also Am. Airlines, Inc. v. Block, 905 F.2d 12,

14 (2d Cir. 1990) (federal courts lack subject matter jurisdiction "to grant a divorce or

annulment, determine support payments, or award custody of a child" (quotation marks and

citation omitted)).

And as Judge Lord states in her October 8, 2020 order, the Chapter 11 involuntary

bankruptcy petitions filed against Plaintiff and Rosenbaum did not automatically stay the entirety

of Plaintiff's divorce proceeding.  (See Bankruptcy Court Stay Order (Dkt. No. 28-12) at 4)

While the divorce proceeding was stayed as to "the division of property that is the property of

[Plaintiff's and Rosenbaum's] estate," there was no stay as to (1) "the commencement or

continuation of a civil action or proceeding . . . for the establishment or modification of an order

for domestic support obligations," or (2) "the collection of a domestic support obligation from

property that is not property of the estate."  See 11 U.S.C. § 362(b)(2)(A)(ii), (b)(2)(A)(iv).

Justice Adams' September 8, 10, and 17, 2020 orders do not address the division of property.

They instead find Plaintiff in contempt of earlier orders directing Plaintiff to satisfy his spousal and child support obligations.  (See Commitment Order (Dkt. No. 28-4) at 2; Sept. 10, 2020 Order (Dkt. No. 28-6) at 2-3; Sept. 17, 2020 Order (Dkt. No. 28-8) at 2)

The Court concludes that Justice Adams did not act "in the complete absence of all jurisdiction" in presiding over Plaintiff's divorce proceeding and in issuing the contempt and commitment orders cited in the Complaint.  Mireles, 502 U.S. at 12.  And because Justice Adams' conduct is within the "scope of [her] judicial responsibilities," she is absolutely immune from a suit for damages or retroactive declaratory relief based on those actions.  Nieves, 2022 WL 623896, at *2.  Accordingly, Plaintiff's claims against Justice Adams will be dismissed.

## IV.    THE FIRM DEFENDANTS' AND ROSENBAUM'S MOTIONS TO DISMISS

### A.    Statute of Limitations for Plaintiff's RICO Claims

#### 1.    Applicable Law

The RICO statute "makes it criminal 'to conduct' an 'enterprise's affairs through a pattern of racketeering activity,' . . . defined as behavior that violates certain other laws, either enumerated federal statutes or state laws addressing specified topics and bearing specified penalties."  Rotella v. Wood, 528 U.S. 549, 552 (2000) (quoting 18 U.S.C. § 1962(c); citing id. § 1961(1))  "RICO provides for civil actions . . . by which '[a]ny person injured in his business or property' by a RICO violation may seek treble damages and attorney's fees."  Id. (quoting 18 U.S.C. § 1964(c)).

Civil "RICO claims are subject to a four-year statute of limitations," Koch v. Christie's Int'l PLC, 699 F.3d 141, 148 (2d Cir. 2012), which begins to run when a plaintiff first

discovers the injury stemming from the RICO violation.  See Rotella, 528 U.S. at 554.[31]

Accordingly, "[i]n a RICO case, the first step in the statute of limitations analysis is to determine

when the plaintiff sustained the alleged injury for which the plaintiff seeks redress."  Koch, 699

F.3d at 150.  "The court then determines when the plaintiff 'discovered or should have

discovered the injury and begin[s] the four-year statute of limitations period at that point.'"  Id.

(quoting In re Merrill Lynch Ltd. P'ships Litig., 154 F.3d 56, 59 (2d Cir. 1998)).

### 2.    Analysis

Judge Fox finds that Plaintiff's RICO claims against the Firm Defendants and

Rosenbaum are time-barred, because (1) Plaintiff's RICO claims are premised on certain 2013

filings made in his divorce proceeding; and (2) Plaintiff alleges "that he knew [at the time] that

[D]efendants' 2013 filings in the matrimonial action were fraudulent."  (R&R (Dkt. No. 72) at

19)  Judge Fox concludes that the statute of limitations for Plaintiff's RICO claims expired

before he commenced this action in November 2020.  (Id. at 18-19)  This Court finds no error in

Judge Fox's conclusion.

The Complaint alleges that the following constitute predicate acts of mail fraud

for purposes of Plaintiff's RICO claims:

(1)    "[o]n or about January 29, 2013," the Firm Defendants and Rosenbaum
        "caused the mailing . . . [of] a summons and complaint to [Plaintiff],
        which . . . contained . . . false assertions" regarding Rosenbaum's assets
        and liabilities;

(2)    "[o]n or about February 4, 2013," the Firm Defendants and Rosenbaum
        "caused the mailing . . . [of a] Motion [for] Contempt and other relief";
        and

---

[31]  The Supreme Court has rejected the "last predicate act" rule for purposes of the civil RICO
statute of limitations, under which the statute of limitations would begin to run only after the last
predicate act of racketeering was committed.  See Klehr v. A.O. Smith Corp., 521 U.S. 179, 187
(1997).

    (3)    "[o]n or about July 24, 2013," the Firm Defendants and Rosenbaum "caused the mailing . . . [of] an ORDER TO SHOW CAUSE to [Plaintiff], which . . . contained . . . false assertions" regarding Rosenbaum's assets and liabilities.

(Cmplt. (Dkt. No. 1) ¶¶ 76-78) (emphasis in original)

        Assuming <u>arguendo</u> that the Complaint alleges these acts with the necessary specificity, any injury that Plaintiff suffered as a result of these acts was sustained in 2013, when the Firm Defendants and Rosenbaum first "orchestrated" the divorce proceeding "as a cover up of flagrant fraudulent activities," and in an attempt to "shift[]" to Plaintiff Rosenbaum's "back taxes, vendor debts[,] and many more obligations."  (<u>Id.</u> ¶¶ 37, 42)  Plaintiff pleads that he was aware of the fraud the divorce proceedings were designed to "cover up" as early as 2012, when Rosenbaum "told [him] that she assume[d] that the attorney named Franklyn Snitow [would] help her to escape from serious trouble."  (<u>Id.</u> ¶¶ 29-30)  Plaintiff further pleads that he was served with the allegedly fraudulent court filings in 2013, after the divorce proceeding was initiated on January 29, 2013.  (<u>Id.</u> ¶¶ 76, 78)  Accepting Plaintiff's account, he discovered and was injured by the Firm Defendants' and Rosenbaum's "[p]attern of [r]acketeering [a]ctivity" – the fraudulent court filings – in 2013.  (<u>See</u> <u>id.</u> ¶¶ 75-78)

        According to Plaintiff, Judge Fox erred in finding his claims time-barred, because the Complaint alleges a "series of continuing wrongs" that tolled the statute of limitations, and Plaintiff's injury only "matured" when Justice Adams "issued her final [o]rder dated June 14, 2021."  (Pltf. Obj. (Dkt. No. 75) at 7-8)  As discussed above, however, the Supreme Court has rejected the "last predicate act" rule for civil RICO claims, and the statute of limitations is not tolled for "continuing wrongs."  <u>See</u> <u>Klehr</u>, 521 U.S. at 187 (explaining that the "last predicate act" rule "in principle, lengthens the limitations period dramatically" and "creates a limitations period that is longer than Congress could have contemplated").  And Plaintiff's injuries

"matured" long before Justice Adams' June 14, 2021 order.  Indeed, the November 2020 Complaint alleges that Plaintiff "was directly harmed, . . . including with emotional trauma," as the result of the Firm Defendants' and Rosenbaum's allegedly fraudulent divorce proceeding, which was filed in January 2013.  (Cmplt. (Dkt. No. 1) ¶ 81)

In sum, Judge Fox correctly concluded that the four-year statute of limitations for Plaintiff's civil RICO claims against the Firm Defendants and Rosenbaum began to run in 2013. Given that the instant lawsuit was not filed until 2020, Plaintiff's civil Rico claims are time-barred and will be dismissed.

**B.**      **The Alleged RICO Enterprise**

Even if Plaintiff's civil RICO claims were not time-barred, they would be dismissed for failure to adequately plead a RICO enterprise.

**1.**      **Applicable Law**

"In order to state a claim under [18 U.S.C.] § 1962(c), a plaintiff must allege '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'"  Democratic Nat'l Comm. v. Russian Fed., 392 F. Supp. 3d 410, 438 (S.D.N.Y. 2019) (quoting DeFalco v. Bernas, 244 F.3d 286, 306 (2d Cir. 2001)).  Where the alleged enterprise is a "group of individuals associated in fact," see 18 U.S.C. § 1961(4), such an enterprise "must have at least three structural features:  [1] a purpose, [2] relationships among those associated with the enterprise, and [3] longevity sufficient to permit these associates to pursue the enterprise's purpose."  Boyle v. United States, 556 U.S. 938, 946 (2009).

An association-in-fact enterprise must also "have an existence separate and apart from the racketeering activity itself."  Democratic Nat'l Comm., 392 F. Supp. 3d at 439 (citing United States v. Cain, 671 F.3d 271, 289 n.7 (2d Cir. 2012)); see also First Capital Asset Mgmt.,

Inc. v. Satinwood, Inc., 385 F.3d 159, 173 (2d Cir. 2004) ("The enterprise must be separate from the pattern of racketeering activity.").  "Thus, RICO requirements are most easily satisfied when the enterprise is a formal legal entity."  First Capital Asset Mgmt., 385 F.3d at 173.  A RICO plaintiff may also show the existence of an association-in-fact enterprise by alleging "a discrete economic association existing separately from the racketeering activity," however.  Id. (quotation marks and citation omitted).

        2.    **Analysis**

        Judge Fox concludes that the Complaint does not adequately allege the existence of an association-in-fact enterprise as required to state a claim for civil RICO.  (See R&R (Dkt. No. 72) at 20)

        The Complaint alleges that

> Snitow Kaminetsky Rosner & Snitow, LLP; Franklin H. Snitow; Elliot J. Rosner and Charnie Rosenbaum, Sapphire Investment Group LLC, NJ, ABCR Investments LLC, NJ, and Property Solutions NY LLC, NY . . . comprise two distinct groups of persons that together form an enterprise within the meaning of 18 U.S.C. § 1961(4).

(Cmplt. (Dkt. No. 1) ¶ 71)  Plaintiff further alleges that

> Snitow Kaminetsky Rosner & Snitow, LLP; Franklin H. Snitow; Elliot J. Rosner and Charnie Rosenbaum, Sapphire Investment Group LLC, ABCR Investments LLC, and Property Solutions NY LLC . . . also qualify as separate and distinct enterprises within the meaning of 18 U.S.C. § 1961(4).

(Id. ¶ 72)

        The Complaint includes no other allegations regarding the structure or operation of the alleged association-in-fact enterprises.  It does not provide "any solid information regarding the 'hierarchy, organization, and activities' of th[ese] alleged association-in-fact enterprise[s]" from which this Court "could fairly conclude that their 'members functioned as a unit.'"  First Capital Asset Mgmt., 385 F.3d at 174-75 (quoting United States v. Coonan, 938

F.2d 1553, 1560-61 (2d Cir. 1991); Nasik Breeding & Rsch. Farm Ltd. v. Merck & Co., 165 F.

Supp. 2d 514, 539 (S.D.N.Y. 2001)).  Indeed, the Complaint does not provide any information

regarding the "relationships among those associated with the enterprise," as is required to state a

civil RICO claim.  Boyle, 556 U.S. at 946.  Nor does the Complaint "explain each participant's

role in the alleged course of fraudulent or illegal conduct."  First Capital Asset Mgmt., 385 F.3d

at 175.

       As to "Sapphire Investment Group LLC, NJ, ABCR Investments LLC, NJ, and

Property Solutions NY LLC, NY" (see Cmplt. (Dkt. No. 1) ¶¶ 71-72), they are not mentioned

again.[32]  The Complaint does not describe how these corporations were involved in any alleged

enterprise, or how Rosenbaum and the Firm Defendants used these corporations to effect the

"common purpose . . . of defrauding and causing injury to the Plaintiff."  (Cmplt. (Dkt. No. 1) ¶

19)

       In sum, Plaintiff's vague and conclusory allegations regarding the Firm

Defendants' and Rosenbaum's alleged RICO enterprise "frustrate . . . efforts to identify its

membership, its structure (formal or informal), or its functional unity."  Bernstein v. Misk, 948

F. Supp. 228, 235 (E.D.N.Y. 1997) (association-in-fact enterprise not sufficiently pled where

"the 'enterprise' . . . consist[ed] of '[two named defendants], various other individuals and their

various related companies'").  Because the Complaint does not plausibly allege the existence of a

RICO enterprise, Plaintiff's civil RICO claims will be dismissed under Fed. R. Civ. P. 12(b)(6).

       Plaintiff's civil RICO claims also fail because the Complaint does not allege a

RICO enterprise that has "an existence separate and apart from the racketeering activity itself."

---

[32]  Based on Plaintiff's other submissions, it appears that these entities might be controlled by
Rosenbaum.  (See, e.g., PAC (Dkt. No. 63) ¶ 19 (alleging that the "defendant Corporations[] are
a series of corporations . . . which netted [Rosenbaum] millions of dollars of profit"))

Democratic Nat'l Comm., 392 F. Supp. 3d at 439.  Plaintiff has not alleged that Rosenbaum and

the Firm Defendants formed any sort of coherent entity beyond simply working together to

perpetrate the allegedly fraudulent divorce proceeding and related mail and wire fraud.  (See

Cmplt. (Dkt. No. 1) ¶ 19).  "'RICO is not violated every time two or more individuals commit

one of the predicate crimes listed in the statute.'"  Moss v. BMO Harris Bank, N.A., 258 F. Supp.

3d 289, 304 (E.D.N.Y. 2017) (quoting D. Penguin Bros. v. City Nat'l Bank, 587 F. App'x 663,

668 (2d Cir. 2014)).

        Here, the Complaint does not allege the existence of any entity, formal or

informal, distinct from the Firm Defendants' and Rosenbaum's alleged racketeering acts.

Accordingly, Plaintiff's civil RICO claims will also be dismissed for this reason.  See, e.g., id.

(dismissing civil RICO claim where the complaint only alleged that "the defendants had 'worked

together in some respects to steal . . . plaintiffs' funds'"); Kottler v. Deutsche Bank AG, 607 F.

Supp. 2d 447, 458-59 (S.D.N.Y. 2009) (complaint alleged that defendant lawyers and

accountants "came together strictly for the purpose of creating the[] allegedly fraudulent tax

shelters" that harmed plaintiffs; dismissing civil RICO claim because "[t]he enterprise and the

pattern" of racketeering activities were "one and the same").[33]

---

[33]  The defects identified above are fatal to both Plaintiff's substantive civil RICO claim and his
civil RICO conspiracy claim.  See Discon, Inc. v. NYNEX Corp., 93 F.3d 1055, 1064 (2d Cir.
1996) ("Any claim under § 1962(d) based on conspiracy to violate the other subsections of
section 1962 necessarily must fail if the substantive claims are themselves deficient" (quotation
marks and citation omitted)), vacated on other grounds, 525 U.S. 128 (1998); see also First
Capital Asset Mgmt., 385 F.3d at 182 (citing Discon).

**V.**     **PLAINTIFF'S MOTION TO AMEND**

Judge Fox recommends that Plaintiff be denied leave to amend (see R&R (Dkt.
No. 71) at 19; R&R (Dkt. No. 72) at 21), noting that the PAC does not remedy any of the
deficiencies in the Complaint discussed above.

As to Justice Adams, the PAC is more specific in identifying the orders about
which Plaintiff complains.  (See PAC ¶¶ 34-38)  But Plaintiff's new allegations do not change
the fact that Justice Adams issued these orders in her judicial capacity, as part of the then
ongoing divorce proceedings.  Accordingly, Younger abstention and judicial immunity bar
Plaintiff's amended claims against Justice Adams for the reasons discussed above.  And while
the PAC adds (1) Justice Adams as a Defendant in Plaintiff's civil RICO claims; and (2) a new
claim against her for "conspir[ing] . . . to deprive [Plaintiff] of his constitutional rights of due
process" (id. ¶¶ 28, 31, 41), Younger abstention and judicial immunity apply with equal force to
these new claims.

As to Plaintiff's amended civil RICO claims against the Firm Defendants and
Rosenbaum, the PAC suffers from the same defects discussed above.  While Plaintiff adds new
Defendants to his civil RICO claims – Rosenbaum's children (see id. ¶ 18) – the PAC makes no
effort to explain the structure of any association-in-fact enterprise, nor does it identify a RICO
enterprise separate from the racketeering acts alleged.  Indeed, the PAC does not even attempt to
define the RICO enterprise.

To the extent that the PAC asserts a new claim against the Firm Defendants,
Rosenbaum, and Rosenbaum's children for "conspir[ing] against the Plaintiff to deprive him of
his constitutional rights of due process" (see id. ¶ 31), any such claim would not survive a
motion to dismiss.  While the PAC does not articulate the legal basis for this claim, Plaintiff

appears to assert that these Defendants conspired to deprive Plaintiff of his right to due process under the Fourteenth Amendment, in violation of 42 U.S.C. § 1983. But the PAC does not make any effort to plead facts demonstrating that the Firm Defendants, Rosenbaum, and Rosenbaum's children were acting under color of state law when they conspired to deprive Plaintiff of due process, as is necessary to state a claim under Section 1983. See Ciambriello v. Cnty. of Nassau, 292 F.3d 307, 324-25 (2d Cir. 2002). Nor does the PAC identify any specific entitlements that Plaintiff was deprived of without due process, as is necessary to state a due process violation. See Green v. Bauvi, 46 F.3d 189, 194 (2d Cir. 1995) ("The two threshold questions in any § 1983 claim for denial of procedural due process are whether the plaintiff possessed a liberty or property interest protected by the United States Constitution or federal statutes and, if so, what process was due before the plaintiff could be deprived of that interest.").

Plaintiff's motion to amend will be denied on grounds of futility, because none of the claims asserted in the PAC would survive a motion to dismiss.

## CONCLUSION

Judge Fox's R&Rs are adopted as set forth above; Defendants' motions to dismiss are granted; and Plaintiff's motion to amend is denied. The Clerk of Court is directed to terminate the motions (Dkt. Nos. 21, 27, 32, 63) and to close this case.

Dated: New York, New York
      March 28, 2022

SO ORDERED.

Paul G. Gardephe
United States District Judge